# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 19-40267-jpg |
| | ) | |
| California Palms, LLC, | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |
| | ) | Judge John P. Gustafson |

**MOTION OF PENDER CAPITAL ASSET BASED LENDING FUND I, L.P.
TO PROHIBIT DEBTOR'S USE OF CASH COLLATERAL OF
PENDER CAPITAL ASSET BASED LENDING FUND I, L.P.**

Pender Capital Asset Based Lending Fund I, L.P. ("Movant") by and through its

undersigned counsel, hereby moves this Court pursuant to sections 361(1), 363(c)(2) and 363(e)

of the Bankruptcy Code[1] for an order prohibiting Debtor California Palm LLC's ("Debtor") use

of the cash collateral of Movant.

Movant is Debtor's sole secured creditor. Indeed, it is Debtor's only real creditor. The

only unsecured creditors are utilities providers (who are supposed to be paid by Debtor's

affiliated lessee, California Palms Addiction Recovery Campus, Inc. ("CaliParc")) and two

attorneys who jointly represent Debtor, Sebastian Rucci[2] ("Rucci" and together with Debtor and

CaliParc, the "Settlement Defendants"), and CaliParc in the state court foreclosure action styled

as *California Palms, LLC, et al. v. Pender Capital Asset Based Lending Fund I, LP, et al.*, Case

No: 2018-cv-01015 (the "Foreclosure Action"), pending in the Mahoning County Common Pleas

---

[1] Unless otherwise indicated, all section references are to the current version of title 11 of the
United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") and all rule references are
to the current Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

[2] Attorney Sebastian Rucci, Debtor's proposed counsel, is Debtor's sole member. He personally
guarantees Movant's loan to Debtor. He also is a (and perhaps the only) shareholder of CaliParc.
Attorney Rucci has not filed any application for this retention in this case. If he does, Movant
will oppose such retention for lack of disinterestedness and conflicts with the interest of Debtor.

33157841.3\157569-00001

Court, Mahoning County, Ohio (the "State Court"). This matter is essentially a two-party dispute.

Not only that, but it is a two-party dispute in which Debtor's claims – including those presented to this Court in the Plan – have already been resolved. Debtor raised most of them in the Foreclosure Action; then settled those claims and released the rest as part of the Settlement Agreement attached as Exhibit 4[3] to Debtor's Plan of Reorganization. Debtor, CaliParc, and Rucci even acknowledged that Movant's debt and loan documents are valid and enforceable.

As detailed in the attached Memorandum in Support, incorporated herein, Movant's debt is secured by a mortgage over Debtor's sole asset, which includes an absolute assignment of rents in Movant's favor. Although Movant believes that CaliParc has continually been in default of its $50,000 per month rental payment to Debtor, if Debtor now holds or later receives any rents or other cash collateral (as defined in Section 363(a)), Debtor must obtain this Court's permission or Movant's consent to use such cash collateral. Neither has been sought or given.

Dated: March 12, 2019

Respectfully submitted,
/s/ *Nancy A. Valentine*
Nancy A. Valentine (0069503)
Miller Canfield Paddock & Stone, PLC
1100 Superior Avenue East, Suite 1750
Cleveland, Ohio 44114
(216) 716-5040 (direct phone)
(216) 716-5044 (company)
(216) 716-5043 (fax)
valentinen@millercanfield.com
*Attorneys for Pender Capital Asset Based Lending Fund I, L.P.*

---

[3] Debtor's Exhibit 4 omits all exhibits to the Settlement Agreement, including those exhibits that were fully executed and delivered at the time of execution of the Settlement Agreement. Those include a Subordination of the Lease between Debtor and CaliParc, and Debtor's and Rucci's Acknowledgment and Agreement verifying that Movant's loan documents are valid and enforceable, among others.

## MEMORANDUM IN SUPPORT

Debtor owns a single real estate asset that it does not operate. It filed this Chapter 11 case to avoid imminent entry of an Agreed Judgment and Decree of Foreclosure (the "proposed Foreclosure Judgment") and Stipulated Order Appointing Receiver (the "Receiver Order") by the State Court in the Foreclosure Action.[4] Debtor itself initiated the Foreclosure Action, alleging that Movant had not fully funded its $4 million loan—precisely as Debtor asserted here.

After protracted litigation, Debtor, CaliParc, and Rucci – himself an attorney – entered into the Settlement Agreement[5] with the advice and assistance of two other sophisticated attorneys. Under the Settlement Agreement, Debtor, CaliParc, and Rucci released all claims against Movant as of November 8, 2018.[6] When Debtor, Rucci and CaliParc did not meet their obligations under the Settlement Agreement, Movant sought the entry of the proposed Foreclosure Judgment, precisely as contemplated by the Settlement Agreement.[7] The Settlement Agreement itself, entry of the proposed Foreclosure Judgment and Receiver Order if Debtor failed to perform, and disposition of certain funds to resolve Debtor's claim that Movant had not fully funded its loan, were all contemplated by a stipulated order entered by the State Court on

---

[4] On February 11, 2019, following default by the Settlement Defendants, Movant filed *Pender Capital's Motion for Entry of Agreed Judgment and Decree of Foreclosure and Stipulated Order Appointing Receiver* in the State Court (*See Appendix to Motion of Pender Capital Asset Based Lending Fund I, L.P. to Prohibit Debtor's Use of Cash Collateral of Pender Capital Asset Based Lending Fund I, L.P.* (the "Appendix") filed contemporaneously herewith at Tab 11. The State Court then issued that certain *Notice of Assignment* dated February 12, 2019 providing that the Court would rule on such Motion without a hearing on "Thursday, February 28, 2019 at 8:00 am". *See* Appendix, Tab 12.

[5] *See*, Appendix, Tab 5, *Settlement Agreement and Release* dated and effective November 8, 2018.

[6] *Id.*, § 11.

[7] *See,* Appendix, Tab 5, §§ 4, 8 and 9 and Tab 11.

33157841.3\157569-00001

November 14, 2018.[8]  Accordingly, the State Court issued a Notice of Assignment on February 12, 2019 that it was scheduling a non-oral hearing on Movant's request to enter the proposed Foreclosure Judgment and Receiver Order on February 28, 2019.[9]

Debtor filed its Petition on February 27, 2019, one day before the State Court's hearing. Even though Debtor owns but a single real estate asset, has no other secured creditors, and has no other real unsecured creditors other than attorneys shared with Rucci and CaliParc (because the utilities providers are properly paid by CaliParc under its Lease[10]), Debtor filed its Petition as though it were the actual operator of the real estate instead of a mere holder for investment purposes.  In truth, this is a two-party case.

Regardless, by the time the Petition had been filed, any and all claims that Debtor, Rucci or CaliParc may have had against Movant had been resolved for several months.  Most critical to this Motion, Debtor acknowledged that the Note indebtedness is valid and enforceable, and that the Loan Documents (including the lien of the Mortgage) (each defined below) are valid and enforceable.  As a result, any rents or other cash collateral held or received by Debtor, whether paid by CaliParc or any other tenant, cannot be used by Debtor without taking the steps to obtain authority to use cash collateral and otherwise comply with the requirements of the Bankruptcy Code related to the use of cash collateral. Movant requests an order prohibiting any use of its cash collateral.

---

[8] *See*, Appendix, Tab 6, *Stipulation and Agreed Order Regarding Settlement Agreement, Motion to Appoint Receiver, Pender's Fees, and Escrows and Holdbacks.*

[9] *See,* Appendix, Tab 12.

[10] *See* Appendix, Tab 9, § 6 and Tab 10, Lease Subordination Agreement (CaliParc with consent of Debtor and former owner of the property and original lessee under the lease, California Palms Hotel, Inc., subordinated lease to Movant's Mortgage and any other liens and security interests). As of the date of the filing of this Motion, first half 2018 real estate taxes due on March 8, 2019 have not been paid.

## BACKGROUND

1.      On February 27, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. No statutory committee, trustee or examiner has been appointed in this case.

2.      To date, the Debtor has not filed a motion with this Court requesting the authority to use cash collateral, and this Court has not issued any orders authorizing the use of cash collateral.  The Debtor has not sought Movant's consent to use Movant's cash collateral.

3.      On or about March 12, 2018, Debtor entered into a commercial loan (the "Loan") with Movant wherein Movant lent $4,000,000.00 to Debtor.  To evidence the Loan, Debtor executed and delivered a *Promissory Note* payable to Movant (the "Note")[11] in the original principal amount of $4,000,000.00.  Movant is the holder of the Note.

4.      To secure repayment of the Note, Debtor executed and delivered that certain *Open-End Mortgage, Assignment of Rents and Security Agreement* (the "Mortgage")[12] that was recorded on March 15, 2018 in Volume 6267, Page 1123, as Document No. 201800005457, Mahoning County records and Mr. Rucci executed and delivered the Guaranty[13] (together with the Note, Mortgage and related loan documents, the "Loan Documents") whereby credit was extended to Debtor, to refinance the Mortgaged Property (as defined and more fully described in the Mortgage) that is Debtor's sole asset.

5.      Debtor defaulted under the Note and other Loan Documents by, among other defaults, failing to make its monthly interest payments under the Note.  The Note provides that

---

[11] *See* Appendix, Tab 1.

[12] *See* Appendix, Tab 2.

[13] *See* Appendix, Tab 3.

33157841.3\157569-00001

the full amount of Debtor's indebtedness is immediately due if Debtor fails to pay any part of the indebtedness when due.

6.      Following extended litigation, on or about November 8, 2018, Debtor, Rucci and CaliParc, with the advice and assistance of sophisticated legal counsel, entered into the Settlement Agreement.  In the Settlement Agreement, Debtor, Rucci, and CaliParc released all claims against Movant as November 8, 2018.[14]

7.      When they signed the Settlement Agreement, Debtor, Rucci, and CaliParc also executed that certain Agreement and Acknowledgement (the "Acknowledgment").[15]   The Acknowledgment confirms execution, authenticity, validity, and enforceability of the Note, Mortgage, and Guaranty; the lien priority of the Mortgage; and the validity of the $4 million indebtedness evidenced by the Note, among other things.[16]

8.      Pursuant to the Mortgage, Movant has all right, title, and interest in "the Leases, including [Debtor's] right, power and authority to modify the terms of any such Lease, or extend or terminate any such Lease.  It is the intention of [Debtor] to establish a present, absolute and irrevocable transfer and assignment of the Lease to be immediately effective and to constitute an absolute present assignment and not an assignment for security only."[17] Additionally, the Mortgage provides that "[Debtor] absolutely and unconditionally assigns and transfers to [Movant] all Rents.  It is the intention of [Debtor] to establish a present, absolute and irrevocable

---

[14] *See* Appendix, Tab 5, §11)

[15] *See* Appendix, Tab 8.

[16] *Id.*

[17] *See* Appendix, Tab 2, Mortgage, p. 7, § 4(a).

33157841.3\157569-00001

transfer and assignment to [Movant] of all Rents and to authorize and empower [Movant], to collect and receive all Rents without the necessity of further action on the part of [Debtor].[18]

9.      Under Section 3(b) of the Mortgage, "[a]fter the occurrence of an Event of Default, [Debtor] authorizes [Movant] to collect, sue for and compromise Rents and directs each tenant of the Mortgaged Property to pay all Rents to, or as directed by, [Movant]."  Further, under Section 3(d) of the Mortgage, "[i]f an Event of Default has occurred and is continuing, [Movant] may  enter upon and take and maintain full control of the Mortgage Property in order to perform all acts that Movant in its discretion determines to be necessary or desirable for the operation and maintenance of the Mortgaged Property, including the execution, cancellation or modification of the Leases, the collection of Rents, ….for the purposes of enforcing the assignment of Rents pursuant to  Section 3(a), …, or for such other purposes as Movant in its discretion may deem necessary or desirable[,]" among other remedies available to Movant under the Mortgage.  *See* Mortgage, §3; *see also* §§4 [Assignment of Leases], 22 [Events of Default], and 44 [Acceleration; Remedies], among other provisions.

10.     Pursuant to the Note, as acknowledged by Debtor, Movant is owed not less than the principal amount of $4,000,000.

11.     Under the Settlement Agreement and related exhibits, and as of October 1, 2018 and the Petition Date, Movant is owed not less the following:[19]

---

[18] *See* Appendix, Tab 2, Mortgage, p. 5, § 3(a).

[19] The credits listed for Holdbacks, Tax Escrow, and Insurance Escrow consist of funds that the State Court authorized Movant to take possession of and apply against the Loan balance pursuant to that certain *Stipulation and Agreed Order Regarding Settlement Agreement, Motion to Appoint Receiver, Pender's Fees, and Escrows and Holdbacks* entered November 14, 2018. They are restated here for clarity, and are not intended to provide double-credit to Debtor and Rucci (*i.e.,* the "Total" above is after applying those funds based on the State Court's November 14th Order, and is not further reduced by that application).  Movant would also note that the *Continued on next page.*

| Principal | $ 4,000,000.00 |
|---|---|
| Interest | 280,000.00 |
| Default interest | 106,666.67 |
| Prepayment Premium | 233,333.33 |
| Attorneys' Fees and Costs | 25,000.00 |
| Credit - Holdbacks | (420,000.00) |
| Credit - Tax Escrow | (25,000.00) |
| Credit - Insurance Escrow | (20,000.00) |
| Credit - Deposit | (10,000.00) |
| Total | $ 4,170,000.00 |

plus additional attorneys' fees not included above. Additional attorneys' fees, property protection advances and costs to be expended until paid in full, along with interest at the rate of 22% per annum (equal to $2,444.44 per diem) from and after October 1, 2018, continue to accrue.[20]

12. On information and belief, the Debtor may receive rents from CaliParc or other tenants at the Mortgaged Property.[21]

13. On information and belief, the Debtor's only sources of cash, if any, are the rents paid for use of the Mortgaged Property, which are subject to Movant's liens and security interests.

14. As verified by Debtor's Plan, CaliParc (not Debtor) is the sole entity who will receive the actual revenues derived from patient and healthcare-related activities at the Mortgaged Property. Debtor's income is based entirely on rental payments made by CaliParc. Debtor's $9 million valuation as calculated in its Appraisal – which is from May 2017, not

---

*Continued from previous page.*
various credits above, along with origination fees, due diligence expenses, and closing costs, account for the difference between the $4,000,000 initial principal amount and the amount that Debtor alleges was "funded" in its Plan (or would, if Debtor's math were correct).

[20] *See* Appendix, Tab 5, Exhibit 4, p. 3.

[21] *See* Appendix, Tab 9, *Lease Agreement*, § 3 (lease term is five years commencing on April 1, 2017 and ending May 21, 2022 with rent of $10,000 per month in the first year and $50,000 per month in the subsequent years).

2019[22] – is based on the Income Capitalization Approach, assumes that Debtor is receiving annual net income of $1,044,518, and applies certain assumptions regarding costs of sale and a 20% discount rate (when 15% to 35% was purportedly recommended to the appraiser by market participants). Under the Lease, however, Debtor is only entitled to $600,000 annually in gross rental payments from its affiliate CaliParc; and Debtor's Petition and Plan indicate that Debtor currently has no cash and is not collecting rent from CaliParc at all. Needless to say, annual income of $0 is a far cry from the annual assumed net income of $1,044,518 upon which the Appraisal is based.[23] A more reliable indicator of value may be the Mahoning County Auditor's valuation, which places the land value at $393,350 and the improvements value at $1,815,680, for a total value of $2,209,030.[24] Movant holds a debt of well over $4 million, and is therefore not adequately protected by its security interest in the Mortgaged Property alone.

15.     The Debtor has not yet provided Movant with adequate protection, cannot provide adequate protection and has not requested the consent of Movant for the use of its cash collateral.

## I.     JURISDICTION AND VENUE

16.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this proceeding and for this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2). Bankruptcy Code sections 361(1), 363(c)(2) and 363(e) provide the statutory basis for the relief sought herein.

---

[22] The 2019 "Appraisal" submitted by Debtor is a "Review Appraisal of Real Property" that merely considers whether the conclusions drawn by the actual May 16, 2017 Appraisal seem reasonable, while assuming all facts stated therein. Various elements of the Appraisal, including those described above, indicate that its valuation is unreliable at best. *See* Appendix, Tabs 13-14.

[23] *See, e.g.,* Appendix, Tab 13, p. 47.

[24] *See* Appendix, Tab 15.

33157841.3\157569-00001

## II. RELIEF REQUESTED

17. Movant seeks the entry of an order prohibiting use of Movant's cash collateral by the Debtor.

## III. LAW AND ARGUMENT

### A. Debtor's Use of Cash Collateral is not Authorized

18. Section 363(c)(2) of the Bankruptcy Code provides that the Debtor may not use cash collateral unless each party having an interest in cash collateral consents or the court, after notice and hearing, authorizes such use. 11 U.S.C. § 363(c)(2).

19. Movant has an interest in the cash collateral being generated from the Lease and any other tenants or lessees because of the terms of Mortgage and Debtor's multiple defaults under the Loan Documents. Movant did not consent to Debtor's use of cash collateral. Nor has this Court, after notice and hearing, authorized the use of cash collateral by the Debtor. Thus, Debtor's use of any Rents, other income from the Mortgaged Property or their proceeds, is improper.

20. Additionally, section 363(c)(4) of the Bankruptcy Code requires cash collateral be segregated and accounted for by the Debtor. 11 U.S.C. § 363(c)(4). Upon information and belief, the Debtor has not segregated Rents received from the Mortgaged Property nor has it properly accounted for such rents.

21. Section 363(e) of the Bankruptcy Code permits Movant to come before this Court and seek a protective order barring Debtor from using cash collateral. 11 U.S.C. § 363(e).

22. Debtor should be prohibited from using cash collateral and any request for use of cash collateral to the Court by Debtor should be denied for the reasons set forth in the Stay Motion and this Motion.

## IV. <u>NOTICE</u>

23.     Notice of this Motion has been provided in accordance with Bankruptcy Rule 4001(b)(1) to (i) the Debtor; (ii) the Debtor's counsel; (iii) the Office of the United States Trustee for Region IX; (iv) the creditors included on the list of the Debtor's creditors filed pursuant to Rule 1007(d); and (v) all other parties requesting service of papers and notice of pleadings.

WHEREFORE**,** Movant requests this Court enter an order, a proposed form of which is attached, (1) prohibiting the Debtor's use of Movant's cash collateral, in this instance any rents or other income from the Mortgaged Property or proceeds therefrom received by the Debtor; and (b) granting such other and further relief to which Movant may be justly entitled.

Dated: March 12, 2019

Respectfully submitted,
/s/ *Nancy A. Valentine*
Nancy A. Valentine (0069503)
Miller Canfield Paddock & Stone, PLC
1100 Superior Avenue East, Suite 1750
Cleveland, Ohio 44114
(216) 716-5040 (direct phone)
(216) 716-5044 (company)
(216) 716-5043 (fax)
valentinen@millercanfield.com

*Attorneys for Pender Capital Asset Based*
*Lending Fund I, L.P.*

## Certificate of Service

      I hereby certify that on March 12, 2019, a true and correct copy of the foregoing Motion to Prohibit Debtor's Use of Cash Collateral of Pender Capital Asset Based Lending Fund I, L.P. was served upon the following in the manner indicated:

Via the Court's Electronic Case Filing System:

Sebastian Rucci      SebRucci@gmail.com
United States Trustee  (Registered address)@usdoj.gov
Tiiara N. A. Patton ust401     tiiara.patton@usdoj.gov

And by First Class, U.S. Mail, postage prepaid, on the following as listed on the Debtor's list of its 20 largest unsecured claims:

Hypercore
P.O. Box 840964
Dallas, TX 75284-0964

Law Office of Jeff Kurz
42 N. Phelps Street
Youngstown, OH 44503-1130

Vonage Business
3200 Windy Hill Rd, St 200
East Atlanta, GA 30339-5640

AT&T
P.O. Box 5019
Carol Stream, IL 60197-5019

Law Off Robert Schuerger
81 S. 5th Street, Suite 400
Columbus, OH 43215-4323

Ohio Edison
76 S. Main Street
Akron, OH 44308-1817

Youngstown Water Dept.
P.O. Box 6219
Youngstown, OH 44501-6219

Dominion Energy
P.O. Box 26785
Richmond, VA 23261-6785

Law Office of James Vitullo
5232 Nashua Drive
Austintown, OH 44515-5122

/s/ *Nancy A. Valentine*
Nancy A. Valentine (0069503)
*Attorneys for Pender Capital Asset Based*
*Lending Fund I, L.P.*

33157841.3\157569-00001