**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

In re:                                                    )   Case No. 19-40267-jpg
                                                          )
    California Palms, LLC,                      )
                                                          )   Chapter 11
    Debtor.                                    )
                                                          )
                                                          )   Judge John P. Gustafson
                                                          )

**RESPONSE OF PENDER CAPITAL ASSET BASED LENDING FUND I, L.P.**
**TO THE MOTION FOR AN ORDER AUTHORIZING REJECTION OF EXECUTORY**
**CONTRACT [DOC. NO. 47]**

Pender Capital Asset Based Lending Fund I, L.P. ("Pender") hereby files its Response

(the "Response") to Debtor's Motion for an Order Authorizing Rejection of Executory Contract

[Doc. No. 47] (the "Motion"). In support of its Response, Movant states as follows:

**Background**

Debtor filed his *Motion for an Order Authorizing Rejection of Executory Contract* on

April 19, 2019. Doc No. 47. The Motion, through "rejection," seeks to rewrite the clear terms of

the Settlement Agreement and authorize payment to Pender of $3.7 million. In fact, Debtor

dedicates most of his Motion to alleging facts which are irrelevant to the issue of rejection. It is

clear that the Motion is simply another attempt by Debtor to re-hash the settled State Court

Action and the claims made in Debtor's adversary complaint.

There is no factual or legal basis to support rejection, or Debtor's requested relief. First,

the Settlement Agreement is not an executory contract. Second, and in the alternative, rejection

does not benefit the Debtor's estate. Third, section 365(c)(2) does not apply to the Settlement

Agreement and therefore does not justify rejection.

## Argument

*A.    Applicable Law*

Section 365 of the Bankruptcy Code governs the assumption and rejection of executory contracts and unexpired leases. 11 U.S.C. § 365. The term "executory contract" is not explicitly defined in the Bankruptcy Code. *See Terrell v. Albaugh (In re Terrell)*, 892 F.2d 469, 471 (1989); *Chattanooga Mem'l Park v. Still (In re Jolly)*, 574 F.2d 349, 350 (1978). Generally, a contract is executory where "the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." *Rieser v. Dayton Country Club Co. (In re Magness)*, 972 F.2d 689, 694 (6th Cir. 1992) (citing Professor V. Countryman, *Executory Contracts in Bankruptcy*, *Part I*, 57 Minn.L.Rev. 439, 460 (1973)); *see also Terrell*, 892 F.2d at 471 ("Congress intended the term to be defined as a contract 'on which performance remains due to some extent on both sides.'") (internal citation omitted); *Jolly*, 574 F.2d at 350-51. However, in the context of rejection, the Sixth Circuit applies the functional approach, which requires courts to "work backward, proceeding from an examination of the purposes rejection is expected to accomplish. If those objectives have already been accomplished, or if they can't be accomplished through rejection, then the contract is not executory within the meaning of the Bankruptcy Act." *Jolly*, 574 F.2d at 351; *Magness*, 972 F.2d at 694 (noting that *Jolly* had found the Countryman test "helpful but not controlling in the resolution of what is an executory contract").

Rejection of an executory contract constitutes a breach of the contract which is deemed to have occurred "immediately before the date of the filing of the petition." 11 U.S.C. § 365(g)(1). "Courts consistently have held that rejection of an executory contract ***does not unwind***

2

*transactions that already have been consummated* – or void property rights that already have been obtained – under the contract prior to rejection." *In re Bachinski*, 393 B.R. 522, 544 (Bankr. S.D. Ohio 2008) (citing cases in accord) (emphasis added). Rejection does not rescind the contract or terminate rights arising from the rejected contract. *Id*.

**B.      The Settlement Agreement is Not an Executory Contract.**

The Settlement Agreement is not an executory contract under the Sixth Circuit's functional test. Under the functional test set forth in *Jolly*, a contract cannot be executory where "the purposes rejection is expected to accomplish … can't be accomplished through rejection." This is true here. Debtor seeks to reject the Settlement Agreement and "pay $3.7 million to Pender as agreed to;" however, this is not an available option under the contract and therefore cannot be accomplished through rejection.

The terms of the Settlement Agreement are enforceable as written.[1] The Settlement Agreement explicitly requires payment of $3,700,000 by January 31, 2019, or payment of a $20,000 extension fee by January 30, 2019, to further extend the deadline for payment to February 28, 2019. *See* ¶ 4, Settlement Agreement attached as Exhibit 1[2]. Neither of these amounts was paid by the Debtor which constitutes a default under the Settlement Agreement. ¶ 8(a), Ex. 1 ("It is a '***Default***' under this Agreement if any of the following occurs without notice or demand, except as specifically indicated: (a) Pender does not timely receive the Settlement Payment, the Rucci Parties' signatures to the Mutual Release, or both."). As a result of the

---

[1] Ohio law holds that "[a] release is a contract that is favored by the law to encourage the private resolution of disputes." *Lewis v. Mathes*, 829 N.E.2d 318, 322 (Ohio Ct. App. 2005). A release "may be defined as the giving up or abandoning of a claim or right to the person against whom the right is to be enforced or exercised." *Fabrizio v. Hendricks*, 654 N.E.2d 127, 130 (Ohio Ct. App. 1995). It is an "absolute bar to a later action on any claim encompassed within the release." *Haller v. Borror Corp.*, 552 N.E.2d 207, 210 (Ohio 1990). The Settlement Agreement is similarly enforceable in bankruptcy. *See In re Motorwerks, Inc.*, 371 B.R. 281, 288 (Bankr. Ct. S.D. Ohio 2007); *see also Mosier v. Callister, Nebeker & McCullough*, 546 F.3d 1271 (10th Cir. 2008) ("[a] trustee stands in the shoes of the debtor and can take no greater rights than the debtor himself had.").

[2] Debtor continues to rely on and attach an incomplete version of the Settlement Agreement in his pleadings.

default, Pender has the right to enforce the entire indebtedness, as stated in the Foreclosure Judgment. ¶ 9, Ex. 1 ("Rucci Parties may not impede, impair, contest, or otherwise oppose … the amount of the indebtedness recited in the Foreclosure Judgment."). Under the plain terms of the Settlement Agreement, Pender is entitled to $4,170,000.00 as of October 1, 2018, plus interest and additional attorneys' fees. Rejection of the Settlement Agreement would not permit Debtor to demand that Pender accept $3,700,000.00 in full satisfaction of Debtor's obligations as if Debtor had made the required extension payments. Because Debtor's stated purpose of rejection (i.e. reducing its obligation to Pender to $3,700,000.00) cannot be accomplished, the Settlement Agreement is not an executory contract under the Sixth Circuit's functional test.

In fact, the rejection does not accomplish *any* benefit to the estate whatsoever. Rejection of the Settlement Agreement is treated as a breach under section 365(g)(1) of the Bankruptcy Code. The breach is deemed to have occurred "immediately before the date of the filing of the petition." 11 U.S.C. § 365(g)(1). As described above, Debtor was in breach of the Settlement Agreement as of January 31, 2018. Furthermore, the result of the breach is Pender's right to enforce the entire indebtedness as set forth in the Foreclosure Judgment - $4,170,000.00 as of October 1, 2018. ¶ 9, Ex. 1; *see also* Foreclosure Judgment attached as Ex. 2.

Debtor is not entitled to rewrite the terms of the contract or change the rights of the parties under the Settlement Agreement through rejection. *See In re Bachinski*, 393 B.R. at 544; *see also In re Peralta Food Corp.,* 2008 WL 190503 at **6–7 (Bankr.S.D.Fla. Jan.18, 2008) (rejection of settlement agreement did not rescind the agreement or the obligations therein and would not affect the validity of a judgment against the Debtor). Rejection does not benefit to the Debtor's estate as evidenced by the section 365(g)(1) analysis; thus the Settlement Agreement is not an executory contract under this Circuit's functional test. The rights of Pender under the

4

Settlement Agreement remain the same, namely Pender's right to enforce the entire indebtedness as set forth in the Foreclosure Judgment.

Furthermore, the Settlement Agreement would not be an executory contract under the definition proposed by Professor Countryman, either, which requires the contract to be "so far unperformed that the failure of either party to complete performance would constitute a material breach excusing the performance of the other." *See Magness*, 972 F.2d at 694 (internal quotations and citations omitted). Here, there is no remaining performance by Pender which could constitute a material breach excusing Debtor's performance. The only performance *arguably* required by Pender is providing Collateral Releases "*[u]pon timely satisfaction of the Settlement Conditions*" – i.e. timely payment by Debtor. ¶ 6, Ex. 1. This performance was contingent on Debtor's timely payment under the Settlement Agreement, which did not occur.

Debtor alleges that Pender breached the Settlement Agreement by not providing full releases **before** Pender received settlement funds, and by not providing a ten-day cure period. Neither of these actions were required under the terms of the Settlement Agreement, though Pender satisfied both of the alleged conditions in any event. As stated above, Pender is only required to provide Collateral Releases upon timely satisfaction of the Settlement Conditions – Pender did not receive funds and therefore was not required to provide Collateral Releases. Debtor admits that Pender complied with the requirement to provide an escrow instruction letter, as required by the Settlement Agreement. What Debtor leaves out is the fact that Pender did provide copies of the executed Collateral Releases to the title company.

The Settlement Agreement provides no cure period for untimely payments. Debtor's quote selection manipulates the clear language of the Settlement Agreement and misleads this Court:

**Default**: It is a "*Default*" under this Agreement if any of the following occurs without notice or demand, except as specifically indicated: (a) Pender does not timely receive the Settlement Payment, the Rucci Parties' signatures to the Mutual Release, or both; (b) any Rucci Party files any paper in the Lawsuit not specifically contemplated by this Agreement, or commences any other legal action against or impairing or impeding the interests of Pender and such lawsuit is not dismissed within ten (10) days of notice such default; (c) any bankruptcy or insolvency petition, or any assignment for the benefit of creditors action, is filed by or against any Borrower Party, or in connection with the Real Estate, or in which the Real Estate is or may be an asset; (d) any Rucci Party seeks, or a court of competent jurisdiction or any trustee or receiver for any Rucci Party makes, a determination that the Settlement Payment or any other payment or transfer contemplated by this Agreement constitutes a preference or fraudulent conveyance, or otherwise that any of the transfers contemplated by this Agreement should be set aside or held ineffective; (e) any action or proceeding is commenced with respect to any Rucci Party relating to the Real Estate and the operations of it, or any such action or proceeding is threatened by any party, except actions filed by any Rucci Party to assist in the certification process of the rehabilitation center currently occupying the Real Estate; or (f) any Rucci Party fails to keep the Real Estate free and clear of liens and encumbrances and to otherwise maintain and protect the Real Estate in accordance with the terms and conditions of the Mortgage other than those that may exist as of the Effective Date of this Agreement after notice of such default in accordance with Section 14 and such default(s) are not cured within ten (10) days of such notice. Notwithstanding this definition, upon satisfaction of the Settlement Conditions and provided that no other Default has then occurred, Pender shall only be entitled to exercise the Remedies described in Section 8 below upon a Default under subsections 8(c) or 8(d) of this Agreement without notice or demand.

¶ 8, Ex. 1. There is no cure period applicable to a default resulting from Pender not timely receiving the Settlement Payment. *Id*. This heavily negotiated paragraph of the Settlement Agreement clearly only provides cure periods for Defaults under 8(b) and 8(f).

**C.      *The Settlement Agreement is Not a Contract to Make a Loan or Extend Debt Financing or Financing Accommodation Within the Meaning of Section 365(c)(2).***

Section 365(c)(2) does not apply to the Settlement Agreement. First, as stated above, the Settlement Agreement is not executory and therefore section 365(c)(2) does not apply. Second, the Settlement Agreement is not a "contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor, or to issue a security of the debtor." 11 U.S.C. § 365(c)(2); *see also In re Cardinal Industries, Inc.*, 146 B.R. 720, 731 (Bankr. S.D. Ohio 1992) ("The purpose of [section 365(c)(2)], at least in part, is to prevent the trustee from requiring new advances of money or other property. The section permits the trustee to continue to use and pay for property already advanced, but is not designed to permit the trustee [sic] to demand new loans.") (internal quotations and citations omitted). The Settlement Agreement is not an extension of money or credit – there is no future money or credit involved. As such, this section is inapplicable in this case.

6

## **Conclusion**

WHEREFORE, for the reasons set forth above, Pender respectfully requests that this Court enter an order denying Debtor's Motion and grant such other relief as the Court deems appropriate, fair, and just.

Dated: May 10, 2019           Respectfully submitted,

*/s/ Nancy A. Valentine*
Nancy A. Valentine (0069503)
Miller Canfield Paddock & Stone, PLC
1100 Superior Avenue East, Suite 1750
Cleveland, Ohio 44114
(216) 716-5044 (company)
(216) 716-5043 (fax)
valentinen@millercanfield.com

and

Ronald A. Spinner (Michigan P73198) (pro hac)
150 West Jefferson, Suite 2500
Detroit, MI 48226
Phone: (313) 496-7668
Fax: (313) 496-7500
spinner@millercanfield.com

*Attorneys for Pender Capital Asset Based*
*Lending Fund I, L.P.*

7

# CERTIFICATE OF SERVICE

I hereby certify that on May 10, 2019, a true and correct copy of the foregoing *Response of Pender Capital Asset Based Lending Fund I, L.P. to the Motion for an Order Authorizing Rejection of Executory Contract [Doc. No. 47]* was served upon the following in the manner indicated:

Via the Court's Electronic Case Filing System:

- Jeffrey Kurz    jeffkurz@hotmail.com, dc1095dt@yahoo.com
- Sebastian Rucci    SebRucci@gmail.com
- Ronald A. Spinner    spinner@millercanfield.com
- United States Trustee    (Registered address)@usdoj.gov
- Nancy A. Valentine    valentinen@millercanfield.com, waldroup@millercanfield.com
- Joshua Ryan Vaughan    jvaughan@amer-collect.com, SAllman@AMER-COLLECT.COM;rschroeter@amer-collect.com;HouliECF@aol.com
- Richard G. Zellers    zellersesq@gmail.com
- Tiiara N. A. Patton ust401    tiiara.patton@usdoj.gov

and by first-class, U.S. mail, postage prepaid, on the following as listed on the Debtor's list of its 20 largest unsecured claims:

| | | |
|---|---|---|
| Hypercore<br>P.O. Box 840964<br>Dallas, TX 75284-0964 | Law Office of Jeff Kurz<br>42 N. Phelps Street<br>Youngstown, OH 44503-1130 | Vonage Business<br>3200 Windy Hill Rd, St 200<br>East Atlanta, GA 30339-5640 |
| AT&T<br>P.O. Box 5019<br>Carol Stream, IL 60197-5019 | Law Off Robert Schuerger<br>81 S. 5th Street, Suite 400<br>Columbus, OH 43215-4323 | Ohio Edison<br>76 S. Main Street<br>Akron, OH 44308-1817 |
| Youngstown Water Dept.<br>P.O. Box 6219<br>Youngstown, OH 44501-6219 | Dominion Energy<br>P.O. Box 26785<br>Richmond, VA 23261-6785 | Law Office of James Vitullo<br>5232 Nashua Drive<br>Austintown, OH 44515-5122 |
| Ohio Bureau of Workers'<br>Compensation<br>Legal Division/Bankruptcy<br>Unit<br>PO Box 15567<br>Columbus, OH 43215-0567 | Ohio Edison<br>5001 NASA Blvd<br>Fairmont WV 26554 | Daniel R. Yemma<br>Mahoning County Treasurer<br>120 Market Street<br>1st Floor<br>Youngstown, OH 44503 |
| Ohio Department of Taxation | | |

Bankruptcy Division
P.O. Box 530
Columbus, OH 43216

/s/ Nancy A. Valentine
Nancy A. Valentine (0069503)
*One of the Attorneys for Pender Capital Asset Based Lending Fund I, L.P.*

33580114.4\157569-00001

**EXHIBIT 1**

## SETTLEMENT AGREEMENT AND RELEASE

This *Settlement Agreement and Release* ("*Agreement*") is entered into effective November 8, 2018, by PENDER CAPITAL ASSET BASED LENDING FUND I, LP, a Delaware limited partnership ("*Pender*"); CALIFORNIA PALMS, LLC, an Ohio limited liability company ("*Borrower*"); CALIFORNIA PALMS ADDICTION RECOVERY CAMPUS, INC., an Ohio corporation ("*CPARC*"); and SEBASTIAN RUCCI, an individual ("*Guarantor*," and together with Borrower, the "*Borrower Parties*") (Borrower Parties and CPARC together are the "*Rucci Parties*;" Pender and Borrower Parties together are the "*Parties*").

### RECITALS AND CERTAIN DEFINITIONS

A.  On or about March 12, 2018, Borrower Parties executed certain documents including, without limitation, a *Promissory Note* (the "*Note*"), a *Mortgage and Security Agreement* (the "*Mortgage*"), an *Environmental Indemnity Agreement* (the "*Environmental Indemnity*"), and a *Guaranty* (the "*Guaranty*") (collectively, the "*Loan Documents*"), to evidence a $4,000,000 commercial loan transaction (the "*Loan*").

B.  The Loan and Mortgage relate to real estate having an address of 1051 N. Canfield Niles Rd., Austintown, Ohio (aka 5455 Clarkins Drive, Austintown Township, Ohio) and more particularly described on <u>Exhibit 1</u> (the "*Real Estate*"). Borrower, CPARC, or both operate the Real Estate as a veteran's care and addiction recovery center.

C.  Out of the $4,000,000 Loan proceeds:

   i.   Pender delivered the total amount of $3,187,052.00 to John A. Wise & Assoc., PLLC (including by its agent Amy Fryar) ("*JAW*"), who served as escrow agent in connection with closing on the Loan. JAW disbursed some of those funds on or about March 19, 2018. The funds held by JAW and not disbursed, including any unearned title premiums and costs of endorsements, are referred to as the "*Title Company Funds*."

   ii.  Pender retained $465,000 in escrow and reserve funds (the "*Escrows*"), specifically composed of (a) $25,000 in real estate tax escrows, (b) $20,000 in hazard insurance escrows, and (c) $420,000 in "holdbacks" (i.e., reserve funds).

   iii. Pender retained $347,948.00 in aggregate fees and costs due to Pender (the "*Pender's Fees*") as origination, due diligence, and similar fees.

D.  Borrower Parties have disputed whether the Loan is valid, including based on the actions of Pender and JAW. Borrower Parties filed suit in Mahoning County Court of Common Pleas as Case No. 2018 CV 01015 (the "*Lawsuit*") to resolve these disputes. Pender filed a counterclaim in the Lawsuit, and named CPARC as a third-party defendant because CPARC may claim an interest in the Real Estate.

E.  "*Borrower Parties Complaint*" means that certain Verified Complaint commencing the Lawsuit and the Motion for Injunctive Relief and any and all Claims raised in such Motion for Injunctive Relief.

F.  "*Claims*" means any and all manner of debts, accounts, warranties, representations, covenants, contracts, agreements, liabilities, obligations, expenses, damages, actions, claims, counterclaims, demands, causes of action, suits, defenses, offsets against obligations of any nature whatsoever, known or unknown, either now accrued or later maturing, in contract or in tort, at law or in equity, by reason of any matter, cause or thing, from the beginning of the world to and including the date of this Release and all times thereafter.

1

G. **"Pender Counterclaim"** means the Defendant's Verified Answer and Affirmative Defenses to Plaintiff's Verified Complaint and Counter-Plaintiff's Verified Counterclaim and Third-Party Complaint for Foreclosure and Other Relief.

H. The Parties wish to settle the Lawsuit and any other Claims between them, according to the terms of this Agreement.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is acknowledged, the Parties agree as follows:

<strong>AGREEMENT</strong>

1. **Recitals**: The Parties acknowledge and agree that the Recitals are true and correct and incorporated into this Agreement.

2. **Closing**: On or before November 8, 2018, the Rucci Parties must deliver to Pender three original counterpart signatures to each of the following (the **"Closing Deliveries"**): (a) this Agreement; (b) the *Stipulation and Agreed Order Regarding Motion to Appoint Receiver, Pender's Fees, and Escrows and Holdbacks* (Exhibit 2) (the **"Stipulation"**), executed by the Rucci Parties' legal counsel; (c) the *Stipulated Order Appointing Receiver* (Exhibit 3) (the **"Receiver Order"**), executed by the Rucci Parties and their legal counsel; (d) the *Agreed Judgment and Decree of Foreclosure* (Exhibit 4) (the **"Foreclosure Judgment"**), executed by the Rucci Parties and their legal counsel; (e) the *Broker's Mutual Release* (Exhibit 5) (the **"Broker's Release"**), executed by Michael Lewis and Charles Bowles; (f) the *Agreement and Acknowledgment* executed by the Rucci Parties (Exhibit 6) (the **"Acknowledgment"**); (g) the *Subordination of Lease* executed by Borrower, California Palms Hotel, Inc., and CPARC (Exhibit 9) (the **"Subordination"**). Notwithstanding anything contained herein, the Parties will provide reasonable cooperation with each other to obtain the Broker's Mutual Release in the form attached as Exhibit 5 or as it may be modified to obtain the Broker's Mutual Release; provided, that the failure of Charles Bowles and/or Michael Lewis to sign the Broker's Release shall not be grounds for default under this Agreement.

3. **Effect of Closing**: Upon Pender's receipt of the Closing Deliveries and the Settlement Fee: (a) Pender will deliver a fully executed Agreement to the Rucci Parties' legal counsel; (b) the Parties each direct their legal counsel to cooperate in submitting the Stipulation and Settlement Stipulation and having it entered in the Lawsuit, including cooperation in the filing of a joint motion if deemed necessary or appropriate by Pender's legal counsel; (c) Pender's legal counsel must hold the Receiver Order and Foreclosure Judgment and not release, publicly file, or seek entry of the same unless and until a Default (defined below) occurs; (d) this Agreement and the Broker's Release will be immediately effective; (e) following entry of the Stipulation, Pender shall receive all Title Company Funds less $34,000 (which $34,000 shall be paid to or at the direction of Michael Lewis), and the Rucci Parties will, and direct their legal counsel to, fully cooperate with Pender and Pender's legal counsel to effect Pender's receipt of such funds; (f) the Rucci Parties will continue to operate and manage the Real Estate in compliance with all applicable laws and regulations, and maintain it in physical condition not worse than that existing as of October 19, 2018 (ordinary wear and tear excepted); and (g) Pender will provide Collateral Releases (as defined below) as set forth in Section 6.

4. **Settlement**: On or before December 31, 2018 (**"Payment Deadline"**), Borrower shall (together, the **"Settlement Conditions"**) (a) pay $3,600,000 to Pender (the **"Settlement Payment"**), and (b) deliver counterpart signatures from each of the Rucci Parties to the *Mutual Release* (Exhibit 7) (the **"Mutual Release"**) to Pender's legal counsel. The Settlement Payment shall be paid by wire transfer of immediately available federal funds in accordance with the following (the **"Wire Instructions"**):

2

| | |
|---|---|
| ABA Routing number | 122243761 |
| Swift Code: | CETYUS66 |
| Name: | 1st Century Bank |
| Address: | 1875 Century Park East, Suite 100, Los Angeles, CA 90067 |
| Beneficiary Account #: | 2100096235 |
| Beneficiary Account Name: | Pender Capital Management, LLC |

Borrower may, at its election, extend the Payment Deadline from December 31, 2018 to January 31, 2019 (the "*First Extension*") by paying to Pender, in accordance with the Wire Instructions and on or before December 28, 2018, an extension fee of $10,000. If Borrower exercises the First Extension, the Settlement Payment shall be increased to $3,700,000, and all other Settlement Conditions shall remain in full force and effect.

If Borrower timely exercised the First Extension, Borrower may, at its election, extend the Payment Deadline from January 31, 2019 to February 28, 2019 (the "*Second Extension*," and together with the First Extension, the "*Extensions*") by paying to Pender in accordance with the Wire Instructions and on or before January 30, 2018, an extension fee of an additional $20,000. If Borrower exercises the Second Extension, the Settlement Payment shall be increased to $3,800,000, and all other Settlement Conditions shall remain in full force and effect.

Borrower may not exercise either of the Extensions if a Default has occurred under this Agreement, *other than* nonpayment of the Settlement Payment.

5. **Effect of Settlement**: Upon timely satisfaction of the Settlement Conditions, (a) the Parties authorize and direct their respective legal counsel to cooperate in filing a joint motion and stipulated order to dismiss the Lawsuit such that the Borrower Parties' Complaint is dismissed with prejudice and the Pender Counterclaim is dismissed without prejudice and otherwise without costs or fees, in the form attached as Exhibit 8 (the "*Dismissal*"); and (b) Pender's legal counsel will deliver a fully-executed Mutual Release to the Rucci Parties' legal counsel. Upon timely satisfaction of the Settlement Conditions, and the passage of ninety-one (91) days from Pender's receipt of the Settlement Payment, and provided no Default has occurred, Pender's legal counsel will deliver all originals of the Receiver Order and Foreclosure Judgment to the Rucci Parties' legal counsel without first seeking entry and Pender shall cause the dismissal of the Pender Counterclaim to be amended such that the Pender Counterclaim is dismissed with prejudice.

6. **Collateral Releases**: Upon timely satisfaction of the Settlement Conditions, if the Rucci Parties fund the Settlement Payment in whole or in part through new financing that requires Borrower Parties provide any new lender a first priority, properly perfected mortgage lien in the Real Estate, and if such new financing utilizes a national commercial title insurance company or other title company meeting Pender's reasonable approval, Pender will provide a reasonable escrow instruction letter to such title insurance company whereby Pender agrees to, upon satisfaction of the Settlement Conditions, release the (a) the Mortgage and (b) any UCC-1 Financing Statements or UCC Fixture Filings in favor of Pender against the Real Estate or the Rucci Parties (collectively, the "*Collateral Releases*"). If the Settlement Payment is paid by the Rucci Parties without use of a new lender who requires a first priority mortgage lien in the Real Estate, then Pender need not record the Collateral Releases until ninety-one (91) days after Pender receives the Settlement Payment, and then only if no Default has occurred. In either event, and after the passage of ninety-one (91) days after Pender receives the Settlement Payment, and if no Default has occurred, Pender will deliver the Mutual Release as provided in paragraph 5.

3

7. **CPARC Lease; Rucci Tenant Interest**: In the event of default under this Agreement, and after the passage of any applicable cure period, if any, CPARC will agree to the termination of that certain Lease Agreement dated January 15, 2017 or any other lease or rental agreement (the "*Lease(s)*") by and among CPARC or any successor entity or entity filling a similar role with respect to the Real Estate, on the one hand, and Borrower, California Palms Hotel, Inc., or any successor entity, on the other hand, at the earlier of (a) thirty (30) days after the date of the notice to Plaintiffs and CPARC by either Pender or any court-appointed receiver over the Real Estate of termination the Lease(s); or (b) April 30, 2019; unless the parties agree otherwise in writing. In addition, the Rucci Parties acknowledge and agree that the Acknowledgment and the Subordination are effective immediately upon closing on this Agreement. Guarantor agrees, individually and on behalf of all entities in which he holds an interest or that he controls, to exit the Real Estate within thirty (30) days after any Default, regardless of whether notice has been given. The Rucci Parties shall keep the Real Estate free and clear of liens and encumbrances unless and until all Settlement Conditions are timely satisfied, and shall otherwise maintain and protect the Real Estate in accordance with the terms and conditions of the Mortgage and in the same condition, order, and repair as existed as of October 19, 2018 (ordinary wear and tear excepted).

8. **Default**: It is a "*Default*" under this Agreement if any of the following occurs without notice or demand, except as specifically indicated: (a) Pender does not timely receive the Settlement Payment, the Rucci Parties' signatures to the Mutual Release, or both; (b) any Rucci Party files any paper in the Lawsuit not specifically contemplated by this Agreement, or commences any other legal action against or impairing or impeding the interests of Pender and such lawsuit is not dismissed within ten (10) days of notice such default; (c) any bankruptcy or insolvency petition, or any assignment for the benefit of creditors action, is filed by or against any Borrower Party, or in connection with the Real Estate, or in which the Real Estate is or may be an asset; (d) any Rucci Party seeks, or a court of competent jurisdiction or any trustee or receiver for any Rucci Party makes, a determination that the Settlement Payment or any other payment or transfer contemplated by this Agreement constitutes a preference or fraudulent conveyance, or otherwise that any of the transfers contemplated by this Agreement should be set aside or held ineffective; (e) any action or proceeding is commenced with respect to any Rucci Party relating to the Real Estate and the operations of it, or any such action or proceeding is threatened by any party, except actions filed by any Rucci Party to assist in the certification process of the rehabilitation center currently occupying the Real Estate; or (f) any Rucci Party fails to keep the Real Estate free and clear of liens and encumbrances and to otherwise maintain and protect the Real Estate in accordance with the terms and conditions of the Mortgage other than those that may exist as of the Effective Date of this Agreement after notice of such default in accordance with Section 14 and such default(s) are not cured within ten (10) days of such notice. Notwithstanding this definition, upon satisfaction of the Settlement Conditions and provided that no other Default has then occurred, Pender shall only be entitled to exercise the Remedies described in Section 8 below upon a Default under subsections 8(c) or 8(d) of this Agreement without notice or demand.

9. **Remedies**: After a Default, and the expiration of the applicable cure period, if any, Pender may release, submit in the Lawsuit or otherwise seek entry of, provide to any court or tribunal as evidence of the obligation and amount evidenced by the Loan Documents, and otherwise deem effective the Receiver Order, the Foreclosure Judgment, or both. Further, to the extent the Dismissal has been submitted or entered, Pender shall be entitled to withdraw the motion and, if necessary, have the Pender Counterclaim reinstated. The Rucci Parties may not impede, impair, contest, or otherwise oppose Pender's submission or the court's entry of the Receiver Order or the Foreclosure Judgment, any activities of the receiver in the Lawsuit, any foreclosure or receiver sale of the Real Estate, the amount of the indebtedness recited in the Foreclosure Judgment, the validity or enforceability of the Loan and the Loan Documents, reinstatement of the Pender Counterclaim, or any other matter alleged by Pender in the Lawsuit, except

4

that the Rucci Parties may defend any effort by Pender to impose punitive or exemplary damages (but may only oppose to the extent of those punitive or exemplary damages).

10. **Identity of Lawsuit:** Borrower Parties filed a motion to consolidate the Lawsuit with Case No. 2017 CV 01872. This motion has not yet been ruled upon. The Parties acknowledge and agree that this Agreement is intended to resolve the underlying disputes between them, and that any consolidation of the Lawsuit into Case No. 2017 CV 01872 should not frustrate, impede, or defeat this intent. The Parties therefore authorize and direct their respective legal counsel to cooperate in making any requisite changes to the caption(s) of the Stipulation, the Receiver Order, and the Foreclosure Judgment, along with any other submissions or papers reasonably necessary to accomplish the purposes of this Agreement, if any consolidation occurs.

11. **Borrower Release of Pender:** Upon execution of this Agreement, Borrower Parties hereby release and forever discharge Pender Parties (defined below) and JAW from any and all Claims arising out of the Loan, the Loan Documents, the Real Estate, the Escrows, or that were or could have been asserted in the Lawsuit, *except for* any Claims that Pender breached this Agreement. *"Pender Parties"* means, collectively, (i) Pender; (ii) Pender's parents, subsidiaries, and other affiliates; (iii) all predecessors, successors, and assigns of any of the foregoing; (iv) all servicers acting on behalf of any of the foregoing; and (v) each of their respective officers, directors, employees, agents, attorneys, and other representatives.

12. **Confidentiality:** The existence and terms of this Agreement will be forever treated as confidential and shall not be disclosed or released to any persons, except (i) to properly interested parties, such as the parties' lawyers, accountants, tax preparers, spouse, or as may be required by law; (ii) the existence (but not the terms) of this Agreement may be disclosed by submission of the Dismissal; (iii) Pender may disclose this Agreement, its terms, or both as Pender may deem necessary to enforce this Agreement; and (iv) the Broker's Release may be disclosed to Brokers to obtain their signature, but no other terms of this Agreement, nor the Agreement itself nor other exhibits to it, may be disclosed. If this paragraph is breached, then the breaching party will be liable to the non-breaching party for all damages caused thereby including, without limitation, reasonable attorneys' fees, costs and expenses incurred in obtaining an award of damages against the breaching party.

13. **Debtor-Creditor Relationship; No Duty:** Borrower Parties and Pender have a debtor-creditor relationship. This relationship is not, and may not be construed to be, any other kind of relationship, including a joint venture, partnership or fiduciary relationship. Although Pender has certain rights under this Agreement and the Loan Documents, these rights (1) are exclusively for Pender's protection and benefit as a creditor, (2) may, but need not, be exercised by Pender in its sole discretion, and (3) are not for the benefit of any Borrower Party. Neither Pender, nor any firm, entity, agent or professional retained by Pender, has a duty of disclosure, loyalty or care to any Borrower Party. Borrower Parties have relied and will rely exclusively on their own judgment with respect to legal, financial, Real Estate-related and other matters.

14. **Notices:** All notices, demands, certificates, requests or other communications under this Agreement shall be in writing by email to the email addresses listed below and by overnight courier service, delivery charges prepaid, or facsimile transmission (if the sender's system can confirm receipt of the facsimile transmission) or delivery addressed to the appropriate notice address set forth below and deemed to be given or made when delivered or twenty-four (24) hours after being deposited in the mail with postage prepaid by registered or certified mail; provided however that notices from Rucci Parties to Pender pursuant to any of the provisions of the Loan Documents shall not be effective until received by Pender and that Pender and the Rucci Parties shall provide an electronic copy of any notice to the emails set forth below. The parties and any other Person to receive notices as provided in this Agreement or the other Loan Documents may, by notice given hereunder, designate any further

5

or different addresses to which subsequent notices, demands, certificates, requests or other communications shall be sent. The notice addresses for Pender and the Rucci Parties are as follows:

| If to Pender: | With Copy to: |
|---|---|
| **Zach Murphy**, Co-Founder \| Chief Investment Officer<br>Pender Capital<br>11766 Wilshire Blvd, Suite 460<br>Los Angeles, CA 90025<br>Phone: 310-853-8001<br>Email: zach@PenderCapital.com | **Nancy A. Valentine, Esq.**<br>Miller, Canfield, Paddock and Stone, PLC<br>1100 Superior Avenue East, Suite 1750<br>Cleveland, Ohio 44114<br>Phone: 216-716-5040<br>Fax:    248-879-2001<br>Email: valentinen@millercanfield.com |

And

**Scott Lesser, Esq.**
Miller, Canfield, Paddock and Stone, PLC
840 W. Long Lake Road, Suite 150
Troy, Michigan 48098
Phone: 248-267-3319
Fax:    248-879-2001
Email: lesser@millercanfield.com

| If to Rucci Parties: | With a copy to: |
|---|---|
| Mr. Sebastian Rucci<br>5455 Clarkins Drive<br>Youngstown, OH 44515<br>Email: sebrucci@gmail.com and Sebastian@caliparc.com | Jeffrey A. Kurz<br>42 N. Phelps St.<br>Youngstown, OH 44503<br>Phone: (330) 747-5879<br>Fax: (330) 743-2536<br>Email: JeffKurz@hotmail.com |

James A. Vitullo
5232 Nashua Drive
Austintown, OH 44515-5122
Phone: 330-207-8571
Email: jamesavitullo@gmail.com

15. **Full Agreement:** This Agreement, together with its exhibits, incorporates all negotiations and understandings of the Parties, and supersedes all prior and contemporaneous writings, relating to its subject matter. There are no unwritten agreements, representations or warranties by or between the Parties. This Agreement may only be amended in a writing signed by all Parties.

16. **Counterparts:** This Agreement may be signed in any number of duplicate originals, and each will be deemed an original. This Agreement may be signed by electronic, scanned or facsimile signature (though the Parties do not waive the right to receive actual original signatures where required for recording, authentication or other purposes), and each such signature will be deemed an original.

17. **Governing Law and Construction:** This Agreement is governed by the laws of the state of Ohio, without regard to any conflict of laws principles adopted by the courts of this state. All Parties have

19-40267-jpg    Doc 73    FILED 05/10/19    ENTERED 05/10/19 10:21:31    Page 16 of 86

had enough time to review this Agreement before signing, including with access to competent legal counsel of their choice, and have negotiated this Agreement at arms-length. No fraud, duress, undue influence or coercion of any kind was exercised by any Party or its agents on any other Party. Accordingly, no provision of this Agreement will be subject to the principle of construing its meaning against the drafter. Titles and captions in this Agreement merely identify the relevant portions, and do not modify the meaning of this Agreement's provisions.

18. **Severability:** Wherever possible, each provision of this Agreement will be interpreted so as to be valid, effective and enforceable under applicable law. If not possible, however, then the portion of the clause or provision that is not valid, effective or enforceable under applicable law will be deemed stricken from this Agreement. The remainder of any such clause or provision, and the balance of this Agreement, will remain valid and in full force and effect, so long as that remainder can be given effect without the invalid clause or provision and without changing the meaning of the remainder.

19. **Representations, Warranties and Authority to Enter Into Agreement:** After consulting with counsel of their choice, the Rucci Parties acknowledge, represent, and warrant that they have read this Agreement in its entirety and have apprised themselves of sufficient information to intelligently decide whether to execute this Agreement; that their decision to execute this Agreement is not predicated on or influenced by any statements or representations, written or oral, not set forth in this Agreement; that they clearly understand this Agreement and each of its terms; fully and unconditionally consents to the terms of this Agreement freely, voluntarily, with knowledge, and without duress; and have full and complete authority to sign this Agreement, including taking any necessary corporate action to do so, without being in conflict with any applicable governing documents, contracts, law, judgments, or orders. None of the Rucci Parties has any present intent to file or solicit the filing of any bankruptcy petition with respect to any of the Rucci Parties or in connection with the Real Estate, and acknowledge and agree that any such filing within one-hundred eighty (180) days after the date of this Agreement would be in bad faith and solely for the purpose of frustrating Pender.

20. **JURY WAIVER:** The Parties **knowingly and unconditionally waive all constitutional and other rights to a jury trial** in any action or proceeding arising out of or relating to this the Loan, the Loan Documents, the Real Estate or the Agreement. Rather, any action or proceeding will be heard by a court of competent jurisdiction sitting without a jury. Borrower Parties have had the opportunity to review the effect of this provision with legal counsel before signing.


[The signature page follows on the next page.]


7

The undersigned agree and acknowledge that they are duly authorized to enter into this Agreement and have voluntarily done so.

**PENDER:**

PENDER CAPITAL ASSET BASED LENDING FUND I, LP, a Delaware limited partnership

By: _____

Name: Zachary Murphy

Its: Manager

**BORROWER:**

CALIFORNIA PALMS, LLC, an Ohio limited liability company

By: _____

      Sebastian Rucci, Manager

**GUARANTOR:**

_____

SEBASTIAN RUCCI

CALIFORNIA PALMS ADDICTION RECOVERY CAMPUS, INC., an Ohio corporation

By: _____

      Sebastian Rucci, _____

31961416.10\157569-00001

Signature Page to Settlement Agreement and Release

The undersigned agree and acknowledge that they are duly authorized to enter into this Agreement and have voluntarily done so.

PENDER:

PENDER CAPITAL ASSET BASED LENDING FUND
I, LP, a Delaware limited partnership

By: _____
Name: Zachary Murphy
Its: _____

BORROWER:

CALIFORNIA PALMS, LLC, an Ohio limited
liability company

By: _____
      Sebastian Rucci, Manager

GUARANTOR:

_____
SEBASTIAN RUCCI

CALIFORNIA PALMS ADDICTION RECOVERY
CAMPUS, INC., an Ohio corporation

By: _____
      Sebastian Rucci, president

31961416.10\157569-00001

Signature Page to Settlement Agreement and Release

# EXHIBIT 1 – LEGAL DESCRIPTION

Situated in the Township of Austintown, County of Mahoning and State of Ohio;

And known as being Lot No.4 in Clarkins at Youngstown Plat No.1 as shown in Mahoning County Records of Plats Volume 61 Page 122, and more fully described as follows:

Beginning at the Southwest corner of Lot No.16 in the Oakwood Allotment as recorded in Record Volume 27 Page 43; thence South 2 Degrees 29 Minutes West along the East line of Lot 18 in the Young and Webb Plat No. 1 a distance of 60.00 feet to a point; thence North 87 degrees 31 minutes West along the South line of said Lot 18 a distance of 203.00 feet to a point on the East right-of-way of State Route 46; thence South 0 degrees 24 minutes East along said right-of-way a distance of 180.38 feet to a point; thence South 87 degrees 31 minutes East along said right-of-way a distance of 78.67 feet to a point; thence South 1 degree 57 minutes East along said right-of-way a distance of 271.40 feet to a point and the true place of beginning of the tract to be described; thence South 87 degrees 35 minutes East a distance of 237.36 feet to a point; thence North 52 degrees 25 minutes East a distance of 89.00 feet to a point on the South line of a 60 foot street known as Clarkins Drive; thence along said South line on an arc of a curve to the left in a Southeasterly direction with a central angle of 50 degrees 0 minutes a radius of 244.45 feet and a total arc length of 213.32 a distance of 80.00 feet to a point; thence South 3 degrees 55 minutes 56 seconds West a distance of 433.38 feet to a point on the North right-of-way line of Interstate Route 80; thence North 78 degrees 26 minutes West along said North line a distance of 102.85 feet to a point; thence North 51 degrees 56 minutes West along said North line a distance of 182.00 feet to a point; Thence North 51 degrees 56 minutes West along said North line a distance of 182.00 feet to a point; thence North 2 degrees 29 minutes East along said North line a distance of 60.00 feet to a point; thence North 87 degrees 31 minutes West along said North line a distance of 65.00 feet to a point on the East right-of-way line of State Route 46; thence North 21 degrees 19 minutes West along the said East line a distance of 22.58 feet to a point; thence North 1 degree 57 minutes West along said East line a distance of 249.60 feet to the true place of beginning and containing 3.009 acres of land more or less.

Commonly known as: 5455 Clarkins Dr., Youngstown, OH 44515
Tax Parcel No.:        48-042-0-063.000

31960277.1\157569-00001

## EXHIBIT 2 – STIPULATION

[See following page(s) for form of Stipulation and Agreed Order Regarding
Settlement Agreement, Motion to Appoint Receiver, Pender's Fees, and Escrows and Holdbacks.]

## IN THE COURT OF COMMON PLEAS
## FOR MAHONING COUNTY, OHIO

CALIFORNIA PALMS, LLC, *et al.*,

        Plaintiffs and Counter-Defendants,

*v.*

PENDER CAPITAL ASSET BASED LENDING FUND I, LP,

        Defendant and Counter-Plaintiff;

*and*

OHIO DEPARTMENT OF JOB AND FAMILY SERVICES, *et al.*,

        Third-Party Defendants.

Case No. 2018-cv-01015

Judge John M. Durkin

Magistrate Dominic DeLaurentis

**STIPULATION AND AGREED ORDER REGARDING SETTLEMENT AGREEMENT, MOTION TO APPOINT RECEIVER, PENDER'S FEES, AND ESCROWS AND HOLDBACKS**

---

Upon stipulation of Pender Capital Asset Based Lending Fund I, LP, a Delaware limited partnership ("Pender"), California Palms, LLC, an Ohio limited liability company ("Borrower"), Sebastian Rucci ("Guarantor"), and California Palms Addiction Recovery Center, an Ohio corporation ("CPARC"), by and through undersigned counsel, and the Court otherwise being fully advised in the premises:

THE COURT FINDS THAT:

A.      Borrower and Guarantor filed this suit alleging, without limitation, that Pender engaged in improper activity in connection with origination of a $4,000,000 commercial mortgage loan (the "Loan") in March 2018.

B.      Pender filed a counterclaim alleging, without limitation, that Borrower and Guarantor engaged in fraudulent activity in connection with Loan origination, and seeking to enforce the promissory note and mortgage.

1

C.     John A. Wise & Assoc., PLLC (including its agent Amy Fryar) ("JAW") was the title company and escrow agent who handled the closing and funds relating to the Loan. No loan policy or endorsements were issued because the parties asked JAW to suspend further payments and activity relating to Loan closing pending resolution of their disputes.

D.     Pender subsequently filed a Motion to Appoint Receiver on August 15, 2018 (the "Receiver Motion") to which Plaintiffs and CPARC responded.  Following a status conference on October 23, 2018, the Court required all parties to file supplemental briefing on the Motion to Appoint Receiver.  In accordance with the Court's order at the status conference as modified on the request of the parties, Pender file a supplemental brief on November 2, 2018.  The Plaintiffs' and CPARC's supplemental brief is or was due on November 9, 2018.

E.     The parties have entered into that certain Settlement Agreement and Release effective as of November 8, 2018 (the "Agreement") that provides Borrower and Guarantor until December 31, 2018 (the "Adjourned Date"), with certain extension rights that may continue not later than February 28, 2018, to perform agreed-upon terms, including but not limited to payment of the Settlement Payment as defined in the Agreement. If Borrower and Guarantor do so, Plaintiffs' Verified Complaint will be dismissed with prejudice and Pender's Verified Answer & Counterclaim will be dismissed without prejudice, which Pender will seek to amend to be with prejudice provided that (a) ninety-one (91) days from the date the Settlement Payment (as defined in the Agreement) is received from the Borrower Parties, and (b) no insolvency proceeding has been commenced by or against any Borrower Party prior to the expiration of the ninety-one (91) day period, as more fully described in the Agreement; if they do not, Plaintiffs and CPARC have agreed to entry of an Order Appointing Receiver and an Agreed Judgment

2

Entry and Decree of Foreclosure (collectively, the "Order and Judgment") in this action and to cooperate in its submission to this Court.

F.    In light of the parties' settlement, the parties have requested that the Court hold this matter in abeyance pending the Adjourned Date or any extension thereof.

NOW, THEREFORE, IT IS ORDERED THAT:

1.    The Receiver Motion shall be held in abeyance, and the Court will not issue a ruling on it, until after the Adjourned Date, unless the Parties jointly request a further extension of the Adjourned Date based on an extension having been exercised in accordance with the Agreement, which shall constitute good cause shown, and no further briefing will be required in light of the terms of the Agreement. Notwithstanding this, the Adjourned Date may not be extended after February 28, 2019, except by joint stipulation of the parties and further order of this Court.

2.    JAW is immediately authorized and directed to (A) pay $34,000 to or at the direction of Michael Lewis in full satisfaction of all claims of Michael Lewis and Charles Bowles relating to the Loan; and (B) release to or at the direction of Pender all remaining funds received by JAW in connection with the Loan and not previously disbursed, or previously released to JAW or others as payment for loan policy premiums and endorsements.

3.    Pender is authorized to take possession of and apply against the Loan balance the following amounts, which it is currently holding as escrows, reserves, or other holdbacks: (A) $420,000 in holdbacks; (B) $25,000 in real estate tax escrows; (C) $20,000 in hazard insurance escrows; and (D) the $10,000 deposit due under the Agreement.

3

4.      Pender may apply the amounts received under Paragraphs 4 and 5 of this Order against the Loan balance in such order and priority as Pender deems appropriate in its sole and absolute discretion.

5.      Pender is due fees and expenses relating to the Loan of not less than the following (the "Uncontested Fees"): (A) an origination fee of $212,100; (B) an underwriting fee of $10,000; (C) a document preparation fee of $2,000; (D) a valuation fee of $10,000; (E) a site visit fee of $3,876; and (F) prorated interest of $36,822 (for the balance of March 2018). Pender has asserted that a greater origination fee, plus additional fees and expenses, are due to Pender beyond the Uncontested Fees, to which Borrower and Guarantor have objected. Pender, Borrower, and Guarantor each reserve all claims and defenses relating to fees that Pender claims are due to Pender above the Uncontested Fees.

_____

Judge Durkin/Magistrate DeLaurentis

4

Approved:

_____
Nancy A. Valentine (0069503)
Scott R. Lesser (0095403)
Miller Canfield Paddock & Stone, PLC
1100 Superior Avenue East, Suite 1750
Cleveland, Ohio 44114
(216) 716-5040 (Direct Phone)
(248) 879-2000 (Company)
(248) 879-2001 (Fax)
valentinen@millercanfield.com
lesser@millercanfield.com
Attorneys for Defendant/Counter-Plaintiff

_____
Jeffrey A. Kurz (75498)
42 N. Phelps St.
Youngstown, OH 44503
(330) 747-5879 (Phone)
(330) 743-2536 (Fax)
JeffKurz@hotmail.com
Attorney for Plaintiffs/Counter-Defendants


_____
James A. Vitullo (15388)
5232 Nashua Drive
Austintown, OH 44515-5122
330-207-8571
jamesavitullo@gmail.com
Attorney for Plaintiffs/Counter-Defendants

California Palms, LLC,
an Ohio limited liability company

By:      _____
Print:   _____
Title:   _____


_____
Sebastian Rucci

California Palms Addiction Recovery Campus, Inc.,
an Ohio corporation

By:      _____
Print:   _____
Title:   _____

31960207.6\157569-00001

5

## EXHIBIT 3 – STIPULATED ORDER APPOINTING RECEIVER

[See following page(s) for form of Stipulated Order Appointing Receiver.]

## IN THE COURT OF COMMON PLEAS
## FOR MAHONING COUNTY, OHIO

**CALIFORNIA PALMS, LLC,**
a Delaware limited liability company, *et al.*,

      Plaintiffs/Counter-Defendants,

          vs.

**PENDER CAPITAL ASSET BASED LENDING
FUND I, LP**, a Delaware limited partnership,

      Defendant/Counter-Plaintiffs.

Case No: 2018-cv-01015

Judge John M. Durkin

Magistrate Dominic DeLaurentis

**STIPULATED ORDER APPOINTING
RECEIVER**

Parcel No. 48-042-0-063.000

This matter is before the Court on the Motion of Defendant/Counter-Plaintiff Pender Capital Asset Based Lending Fund I, LP (the "Pender") for the Appointment of a Receiver (the "Motion"). The Court has reviewed the pleadings. Based upon the pleadings and the evidence, the Court finds as follows:

    A.      Pender filed its Defendant's Verified Answer and Affirmative Defenses to Plaintiff's Verified Complaint and Counter-Plaintiff's Verified Counterclaim and Third-Party Complaint for Foreclosure and Other Relief filed June 6, 2018 (the "Answer and Counterclaim") and its Motion.

    B.      Plaintiff/Counter-Defendant California Palms, LLC ("Borrower") granted Pender a certain mortgage (the "Mortgage"), as more fully set forth in Pender's Answer and Counterclaim. Plaintiff/Counter-Defendant California Palms, LLC, Borrower's property manager(s), and all agents, employees, members, managers, officers and other agents and representatives of any of Borrower, Guarantor, Third-Party Defendant California Palms Addiction Recovery Campus, Inc., and Borrower's property manager(s) are collectively "Borrower's Agents."

C.      The Mortgage granted Pender a mortgage lien against certain real property located at 1051 N. Canfield Niles Rd., Austintown, Ohio 44515, as more particularly described in EXHIBIT A to the Mortgage (the "Real Estate"). Borrower further granted Pender a security interest in certain personal property described in the Mortgage and other loan documents (the "Personal Property").

D.      Within the Mortgage, Borrower also granted Pender an assignment of all Leases and Rents (the "Assignment of Rents"), as more fully set forth in the Answer and Counterclaim.

E.      Pender is the current holder of the Note and Mortgage.

F.      The Court has reviewed Pender's Motion, its verified Answer and Counterclaim, affidavit in support of the Motion, the attached exhibits and any responses.

G.      The Court finds that Borrower has defaulted on the loan, that Borrower consented to the appointment of a receiver (including by stipulating to entry of this Order), and that Borrower signed an enforceable assignment of rents and leases, as more fully set forth in the Answer and Counterclaim.

H.      The proposed Receiver, John Lane of Inglewood Associates, LLC, is a disinterested and experienced receiver who has served as a receiver in many other Ohio Courts of Common Pleas. He is a Lake County resident and maintains a principal place of business in the State of Ohio.

I.      There is good cause to appoint Inglewood Associates, through its agent John Lane, as receiver, even though his principal place of business is not in Mahoning County.

J.      Pender's proposed receivership is a limited receivership over the Receivership Property (defined below) and not over Borrower. Its purpose is to enforce a contractual assignment of rents and leases, to maintain the uninterrupted operation of the Receivership

2

Property, and to sell the Receivership Property. The receivership is not for the purpose of liquidating Borrower.

K.     Having considered the pleadings and statements of counsel, and based on the stipulation of the parties and their respective counsel, the Court finds the Motion to be well taken.

Pursuant to O.R.C. §2735.01(A)(2), (3), (6) and (7), the Court therefore orders as follows:

**1.     Appointment of Receiver.**

1.1     Inglewood Associates, LLC, by and through its agent John Lane (the "Receiver") hereby is appointed receiver of the Receivership Property (defined below) pursuant to section 2735.01 of the Ohio Revised Code, to take possession of (but not title to), manage, control, and protect the Receivership Property, effective upon the Receiver's posting of the bond required below and filing an Oath of Receiver with this Court in accordance with section 2735.03 of the Ohio Revised Code in the form attached to this Order as Exhibit B (the "Effective Date"). The Receiver's duty to act as receiver is subject to the terms of this Order.

1.2     As of the Effective Date, the Receiver is authorized and directed to take immediate possession and full control of the Receivership Property and to take such other actions as the Receiver deems reasonable and appropriate to take possession of, to exercise full control over, to prevent waste, and to preserve, manage, secure, and safeguard the Receivership Property. Neither Borrower nor any of Borrower's Agents shall have possession or control of, or any right to, the Receivership Property or any Income (as defined below) derived from it.

1.3     The Receiver shall take possession of and receive from all depositories, banks, brokerages, and otherwise (collectively, "Financial Institutions"), any money on deposit in all

3

such Financial Institutions belonging to or arising from the operation of the Receivership Property, whether such funds be in accounts titled in the name of the entity or not. All Financial Institutions are directed to deliver such deposits to the Receiver and such records as the Receiver may reasonably request with respect to such accounts. The Receiver may indemnify the Financial Institution upon whom such demand is made, and is empowered to open or close any such accounts. The Receiver may use the tax identification number of Borrower, if and as appropriate.

    1.4    The Borrower, Borrower's Agents, and all other Defendants to this action are ordered to cooperate with the Receiver in the transition of the management of the Receivership Property to the Receiver, and, on the Effective Date, to turn over to the Receiver all of the following pertaining to the Receivership Property:

(a)    All keys.

(b)    Year-end 2017 operating statements and year-to-date 2018 operating statements.

(c)    All on-site employee payroll records and employee files and applications.

(d)    An inventory of all equipment, furniture, vehicles and supplies.

(e)    All information about residents (that does not violate HIPAA or other privacy laws), customers, patients or other service recipients, current orders, any services performed in the preceding ten (10) months, and accounts receivable.

(f)    All existing service contracts.

(g)    All pending bids for contractor work.

(h)    All insurance policies on the Receivership Property and their terms.

(i)    Information regarding all insurance claims submitted in the past three (3) years.

(j)    Site plans, specifications, floor plans, drawings, measurements, etc.

(k)    Documents identifying and summarizing all pending litigation (excluding this action).

(l)    All documents, books, records and computer files, computer equipment, software, management files, equipment, furniture, supplies, and all passwords needed to access all software and computer files, and e-mail

4

accounts maintained by the Borrower both at the offices of the Borrower and off-site including, but not limited to, all records concerning the Income, licenses and certifications of Borrower, the Mortgaged Property and its employees and the operation and management of the businesses of the Borrower.

(m)    All documents containing formulas, trade secrets, methods, and processes necessary to the manufacturing of any products made by the Borrower.

(n)    All documents reflecting payables and vendor information.

(o)    All information concerning real estate taxes and personal property taxes.

(p)    A list of all utilities and utility accounts, along with copies of the most recent and any unpaid utility bills.

(q)    All permits, licenses, regulatory approvals, provider agreements, or other documents or information pertaining to or necessary or useful in connection with the operations of the Receivership Property as a Health Facility, including all communication/correspondence files, applications, and other material relating thereto.

(r)    All leases including all communication/correspondence files.

(s)    Documents pertaining to all pending new leases/renewals.

(t)    Certificates of Occupancy.

(u)    A current rent roll.

(v)    Tenant contact names and telephone numbers.

(w)    The occupant ledgers.

(x)    All security deposits, security deposit accounts, advance payments, advance payment accounts, other deposits, and other deposit accounts, including an accounting for all such amounts and accounts.

(y)    The petty cash, if any.

(z)    A current aged accounts receivable/delinquency report.

(aa)    An aged listing of all trade payables and other payables.

(bb)    A list of all historical operating expenses for the Property.

(cc)    Such other records pertaining to the management of the Receivership as may be reasonably requested by the Receiver.

1.5    The Borrower and Borrower's Agents are under a continuing obligation to turn over all items listed in Section 1.4 after the Effective Date.

1.6    The Borrower and Borrower's Agents are prohibited from removing any personal property belonging to the Borrower, or diverting any Income.

5

1.7     Borrower and Borrower's Agents shall fully cooperate with Receiver and shall take all steps necessary to comply with this Order and other orders of the Court, and with all applicable law and/or rules and are enjoined from interfering with the use, management, possession, control, and liquidation of the Receivership Property by the Receiver.

1.8     The Borrower and Borrower's Agents shall fully cooperate with the Receiver in adding the Receiver and Pender as additional insureds and Pender as the loss payee on all insurance relating to the operation and management of the Receivership Property including, but not limited to, fire, extended coverage, auto and van coverage, property damage, liability, fidelity, errors and omissions, and workers compensation, and modifying the policies if deemed appropriate by the Receiver. The Borrower and Borrower's Agents are prohibited from canceling, reducing or modifying any and all insurance coverage in existence with respect to the Receivership Property.

## 2.     **Receiver's Duties and Authority.**

2.1     The Receiver shall be vested with and shall discharge the following authority, powers and duties:

    (a)     To maintain, secure, manage, operate, repair and preserve the Receivership Property in such condition as may be deemed advisable by the Receiver in its reasonable discretion.

    (b)     To change any and all locks to the Receivership Property and limit access to some or all of the Receivership Property as the Receiver deems appropriate.

    (c)     To assume control over the Receivership Property and to collect and receive all Income.

    (d)     To make routine repairs and incidental alterations to the Receivership Property, as may be necessary, including, but not limited to, electrical, plumbing, carpentry, masonry, and any other routine repairs or incidental alterations as may be required in the course of the ordinary maintenance and repair of the Receivership Property.

    (e)     To take such action as deemed appropriate in the Receiver's discretion to comply with any orders or notices of violation affecting the Receivership

6

Property issued by any federal, state, county, or municipal authority having jurisdiction thereof.

(f)     To prepare and maintain complete books, records, and financial reports of the Receivership Property in a form acceptable to the Court.

(g)     To allow Pender, its counsel and appraisers and other independent third party consultants engaged by Pender access to the Receivership Property at all reasonable times to inspect the Receivership Property and all books and records, and to cooperate with Pender, its counsel, appraisers, and other independent third-party consultants to evaluate the Receivership Property.

(h)     To retain, hire, or discharge employees of the Borrower or Borrower's Agents (none of whom are, or shall be deemed to be, employees of Pender or the Receiver).

(i)     To establish pay rates for any employees, officers, or directors of the Borrower or Borrower's Agents who perform services or duties in connection with the Receivership Property after the Effective Date.

(j)     To review existing worker's compensation, disability, general liability, and "all risks" hazard insurance and to retain, modify, or purchase such insurance, and name Pender and the Receiver as additional insureds, as the Receiver deems appropriate for the Receivership Property's preservation and protection.

(k)     To open and maintain a separate account with a federally insured banking institution or savings association with offices in this State from which the Receiver shall disburse all authorized payments as provided in this Order. The Receiver may use the Borrower's tax identification number to open the account. All funds received by the Receiver pertaining to the Receivership Property shall be held in trust in said account, and shall not be comingled with other funds collected by the Receiver for its own account or as an agent for others, until disbursed as provided by this Order.

(l)     To receive and endorse checks pertaining to the Receivership Property either in the Receiver's name or in the Borrower's name.

(m)     To pay all appropriate real estate taxes, personal property taxes, and any other taxes or assessments against the Receivership Property, if the Receiver deems appropriate in its discretion. The Receiver shall not be liable for any commercial activity tax owed by the Borrower.

(n)     To prepare and file any tax returns necessary to the operation of the Receivership Property as may be required by law. The Receiver shall not be responsible for the preparation and filing of any tax returns for the Borrower or its affiliates, (including income, personal property, commercial activity, gross receipts, sales and use, or other tax returns) other than to reasonably cooperate in providing the Borrower with information in the Receiver's possession that may be reasonably necessary

7

for the Borrower or its affiliates to prepare and file its returns. The Borrower shall provide to the Receiver any information needed to file any tax returns for the Receivership Property.

(o) To operate the Receivership Property under any existing name or trade name (or a new name, if the Receiver deems it appropriate to do so).

(p) To determine as soon as reasonably possible and report to the Court whether any Income previously received by the Borrower has been used for purposes other than for the maintenance, management, and expenses of the Receivership Property.

(q) To open and review mail directed to the Borrower and its representatives pertaining to the Receivership Property. The Receiver may also take exclusive possession and control, by demand to the U.S. Postal Service in the name of the Receivership, of any postal boxes that are or were being used by the Borrower for the receipt of rent or other mail pertaining to the Receivership Property.

(r) To seek assistance of law enforcement officials as necessary to preserve the peace and protect the Receivership Property.

(s) To employ attorneys, accountants, agents, and other professionals as the Receiver may from time to time deem appropriate and on such terms and conditions as the Receiver deems appropriate. The Receiver is specifically authorized to retain the law firm of Wickens, Herzer, Panza, Cook & Batista Co. for general legal representation.

(t) To initiate, prosecute, defend, compromise, adjust, intervene in, or become party to such actions or proceedings in state or federal court as may, in its opinion and discretion, be necessary or proper for the protection, maintenance and preservation of the Receivership Property or carrying out the terms of this Order.

(u) To execute, cancel, or modify lease agreements or extensions of leases.

(v) To reject any leases or unexpired contracts of the Borrower that are burdensome on the Receivership Property, including but not limited to any leases or unexpired contracts with any of Borrower's Agents.

(w) To enforce any valid covenant of any existing lease.

(x) To take any and all actions not specifically enumerated herein that are, in the Receiver's judgment, necessary to properly and adequately manage, control, operate, maintain, and protect the Receivership Property.

2.2 Any security or other deposit which any tenant or occupant may have paid to Borrower or any of Borrower's Agents, and which is not paid to the Receiver, shall be an obligation of Borrower or the Borrower's Agent to whom it was paid, and may not be refunded by the Receiver without Pender's Approval. Any other security or other deposit that tenants or

8

occupants have paid or may pay to the Receiver shall be refundable by the Receiver in accordance with the leases or agreements.

**3.** **Receiver's Duties and Authority – Healthcare - Addiction Related**

3.1     While Borrower or their assigns retain title to the Real Estate and other Receivership Property, the Receiver is authorized and directed:

    (a)    To take all reasonable measures necessary to operate and maintain the California Palms Addiction Recovery Campus (the "Health Facility"), subject to Section 6.4 and in accordance with all federal, state, and local laws and regulations.

    (b)    To secure the continuation or renewal of any license agreements that affect the Receivership Property or Health Facility, including any licensure or provider agreement which affects the Health Facility, all subject to Section 6.4.

    (c)    To take all reasonable measures necessary to maintain compliance under, and secure the continuation or renewal of, any agreements with providers, or to enter into agreements with providers, affecting the Receivership Property and/or the Health Facility.

    (d)    To take all reasonable measures necessary to protect any and all patients of the Health Facility, all subject to Section 6.4 and subject to any federal, state, and local laws and regulations that may require certain protective measures relative to any residents of the Health Facility.

**4.** **Receiver's Authority Subject to Approval.**

4.1     In carrying out the duties contained in this Order, the Receiver is authorized upon Approval, but is not required:

    (a)    To execute, cancel, modify, renegotiate or abrogate all service, maintenance, or other contracts relating to the operations of the Receivership Property, but subject to Approval for contracts in excess of $5,000.  All such contracts are to be terminated upon a sale or disposition of the Receivership Property or termination of the Receivership.

    (b)    To engage contractors and skilled trades on a competitive bid basis to maintain the Receivership Property, and to execute such contracts for such purposes as the Receiver deems appropriate, if the aggregate amount will exceed $5,000, but without Approval for a life-threatening or other health or safety emergency.

9

(c)     To borrow funds for purposes relating to the operation of the Receivership Property. The Receiver shall not borrow funds without first providing Pender, by advance written notice, a reasonable opportunity to elect to advance funds required by the Receiver.

(d)     To contest, protest, or appeal any ad valorem tax or assessment, real estate tax, personal property tax, or other tax or assessment pertaining to the Receivership Property. (Any refund or reimbursement of taxes, whether paid by the Receiver or the Borrower, shall be deemed "Income" to be applied as provided herein.)

## 5.    Sale of Receivership Property.

5.1     Pursuant to O.R.C. § 2735.04, the Receiver is authorized, and the Court appoints the Receiver as the Borrower's attorney-in-fact, to sell all or any portion of the Receivership Property on behalf of, and in the name of, the Borrower. This authorization and appointment is subject to the following conditions precedent, which the Court has determined to be fair to Borrower and the parties to this action:

(a)     The Receivership Property has not been sold at a foreclosure sale.

(b)     The sale shall be a commercially reasonable sale to a bona fide third-party purchaser as determined by the Receiver in its reasonable business judgment.

(c)     No sale shall be made to the Receiver, or to any person or entity with a beneficial interest in the Receiver, or to any person or entity in which the Receiver has a beneficial interest.

(d)     All real estate taxes shall be current at the time of the sale or shall be paid current from the sale proceeds.

(e)     The other terms and conditions of the sale shall be appropriate in the reasonable business judgment of the Receiver.

5.2     The Receiver and the Receivership Property shall not be bound by any existing brokerage or listing agreement affecting the Receivership Property. The Borrower is enjoined from retaining a brokerage firm for the Receivership Property or otherwise interfering with the Receiver's retention of a brokerage firm for the Receivership Property.

5.3     The Receiver may select and retain a real estate broker to market the Property for sale, and is specifically authorized to retain the brokerage arm of Prodigy Properties as the

10

broker and listing agent for the listing, marketing, and sale of the Property, but subject to Pender's Approval for the retention of any other broker and such broker's listing agreement and commission amount. The sale, and any contract for sale, is subject to Pender's Approval. The sale, and any contract for sale, is further subject to approval by later order of the Court, as further described below. Such Court Approval may be sought by either Pender or Receiver as further described below, but only after Pender's Approval has been given for the sale and contract for sale.

5.4    The procedures to be followed for any sale of the Receivership Property by the Receiver shall be as follows:

(a)    The sale, and contracts for sale, shall be subject to approval by further order of the Court.

(b)    The Receiver or Pender shall move the Court for approval of any contract for the sale of the Receivership Property by motion filed per the Local Rules of the Mahoning County, Ohio Court of Common Pleas and the Ohio receivership statute, with at least ten (10) days' prior written notice to all owners of the Receivership Property, all parties to this action, and all other persons with a recorded or filed lien encumbering the Receivership Property to be sold (as identified in the commitment for an owner's policy of title insurance previously field with the Court). If no party or person objects to the proposed sale or requests a hearing within that ten (10) day period, the Court may proceed without a hearing.

(c)    Any resulting order approving such sale (a "Sale Approval Order") shall be a final order unless (i) a timely motion for rehearing or timely appeal as of right is filed, and (ii) the order is stayed within such period upon posting a bond in the amount of the purchase price and such other conditions deemed appropriate by the Court.

(d)    If this Court finds in the Sale Approval Order that it is in the best interests of the Receivership Property, the sale may be free and clear of all liens, other than the lien of the treasurer of the county in which the Receivership Property is located for real estate taxes and assessments.

(e)    Borrowers and all other persons possessing an equity of redemption in the Receivership Property shall have seven (7) days after the date the Sale Approval Order is entered, which the Court deems to be reasonable, to pay to the Receiver, by cashier's check or other form of immediately available funds, the greater of (i) the sale price set forth in the Sale Approval Order; and (ii) an amount equal to the total of all liens upon the Receivership

11

Property that were to be cancelled as liens by virtue of the sale, including all principal, interest, costs, and other amounts secured by those liens through the date of payment (the greater of those amounts being the "Redemption Amount"). If the Redemption Amount is not paid as and when described in this subsection, the equity of redemption shall be extinguished without further order of the Court.

(f)     Pursuant to R.C. 2735.04(D)(8), the statutory right to redeem set forth in R.C. 2329.33 does not apply to a sale by the Receiver.

(g)     The closing on the sale of the Receivership Property shall take place in person or by escrow at the offices of a title company of the Receiver's choosing in its discretion, or at any other location deemed appropriate in the Receiver's discretion.

(h)     Within thirty (30) days after closing of the sale of any of the Receivership Property, the Receiver shall file with the Clerk of Courts and serve on the parties a certificate and report of sale setting out the following with respect to the property that was sold:

> (i)     That the sale was conducted in accordance with this Order and the Sale Approval Order;
>
> (ii)     The date of sale;
>
> (iii)     The name of the purchaser;
>
> (iv)     The purchase price;
>
> (v)     The Net Proceeds of the Receivership Property (defined below); and
>
> (vi)     A copy of the closing statement, if one was prepared.

5.5     Subject to sections the foregoing subsections of this article, the Receiver has the authority with respect to the sale of Receivership Property to do and perform all and every act desirable, proper or necessary with respect to the Receivership Property including, without limitation, the authority to execute and deliver deeds of conveyance, bills of sale, any mortgage loan assumption and/or modification agreement, the closing statement, and all other documents necessary or desirable in connection with the sale of the Receivership Property, all on behalf of and in the name of the Borrower.

19-40267-jpg    Doc 73    FILED 05/10/19    ENTERED 05/10/19 10:21:31    Page 39 of 86

5.6     The "Net Proceeds of Sale of the Receivership Property" shall be the gross sales price of the Receivership Property less customary closing costs, pro rations, sales commissions and other adjustments reasonably approved by the Receiver in writing.

5.7     The Net Proceeds of Sale of the Receivership Property shall be disbursed as ordered by the Court.

5.8     Nothing in this order shall enlarge or restrict the claims and defenses of Pender, other mortgage lien claimants, mechanic's lien claimants, judgment lien claimants, and other parties with respect to the Receivership Property.

## 6.     Extent of Receiver's Authority.

6.1     Although the Receiver shall have possession and control of the Receivership Property, the Receiver shall not take title to the Receivership Property.  Title to the Receivership Property shall remain in the name of Borrower (other than Income and other Receivership Property distributed to Pender as provided in this Order), unless foreclosed upon by Pender or sold by the Receiver as provided above, in which cases title to the Receivership Property will remain in the name of the Borrower until the delivery of the Sheriff's Deed or the deed from the Receiver, as the case may be.

6.2     Without limiting or expanding the foregoing, the Receiver is authorized to exercise all powers generally available and shall be subject to all the duties of a receiver under the laws of the State of Ohio that may be incidental to the management of the Receivership Property as described in this Order.  The Receiver shall have any additional powers that are provided by law and that the Court may from time to time direct or confer.

6.3     The Receiver shall, during the pendency of this action, have the right to apply to this Court for further instructions or directions.

13

6.4    The authority granted to the Receiver is self-executing, unless the action requires Approval.   The Receiver is authorized to act on behalf of, and in Borrower's name (or the Receiver's name), as the Receiver deems appropriate without further order of this Court and without personal recourse against the Receiver (subject to the General Provisions).

6.5    The Receiver is authorized to accept advances from Pender for operating expenses, working capital, or improvements.   All advances to the Receiver by Pender for the benefit of the Receivership Property, including any advances for working capital or improvements, and any other costs and expenses incurred by the Receiver under this Order, shall be deemed protective future advances under the Borrower's mortgage and security agreements with Pender.   Any such protective future advances shall be fully secured by Pender's priority liens and security interests against the Receivership Property.   Without derogating from the foregoing, any and all funds advanced by Pender to the Receiver pursuant to this Order shall: (a) be deemed made pursuant to contract; (b) be added to the amount of the indebtedness owed, jointly and severally, by the Borrower to Pender; (c) be deemed secured by the liens and security interests in favor of Pender on the Receivership Property to the same extent and with same priority as the other indebtedness secured by all existing liens and security interests in favor of Pender; and (d) accrue interest at the highest rate chargeable against the Borrower under any existing loan between the Borrower and Pender.   All such funds advanced, including interest on advances, shall be deemed a prior lien before the repayment of any and all other claims against the Receivership Property (except for taxes and assessments having first priority as a matter of law) or proceeds of either of them.   The Receiver is authorized to issue receivership certificate(s) to secure any such protective future advances by Pender, but subject to Approval. Notwithstanding the foregoing, Pender shall have the right to loan funds to the Receiver, as

14

receiver, on terms which are different that the terms under any existing loan between the Borrower and Pender. Nothing in this section shall be construed to require Pender to advance or loan funds to the Receiver for any reason.

7. **Receivership Property and Income.**

    7.1    "Receivership Property" means and includes:

        (a)    The Mortgaged Property, as described in the attached **Exhibit A**.

        (b)    All tangible and intangible personal property located at the Mortgaged Property.

        (c)    All Income.

        (d)    All permits, licenses, leases, other contracts, and other intangible property pertaining to the operation of the Mortgaged Property.

        (e)    All trade names, trademarks and intellectual property owned or used by the Borrower pertaining to the operation of the Mortgaged Property.

        (f)    Any refund or reimbursement of taxes, whether for taxes paid by the Receiver or the Borrower, and whether pertaining to any tax period before or after the entry of this order, and the right to institute or continue any contest, protest, or appeal of any ad valorem tax or assessment, real estate tax, personal property tax, or other tax or assessment pertaining to the Mortgaged Property.

        (g)    Any fixtures, trade fixtures, and tenant improvements or every kind or nature located in or upon or attached to, or used or intended to be used in connection with the operation of the Mortgaged Property and any buildings, structures or improvements located on the Mortgaged Property (to the full extent of the Borrower's interest in such).

        (h)    All permits, licenses, other contracts, and other intangible property pertaining to the Mortgaged Property and the operations of the Mortgaged Property.

        (i)    All other property, estate, right, title, and interest as described in the Mortgage, Assignment of Rents, Note, and other loan documents.

        (j)    All books, records, accounts, and documents that in any way relate to the Receivership Property or Income.

    7.2    The term "Income" means, collectively, all cash, cash on hand, checks, cash equivalents, credit card receipts, demand deposit accounts, bank accounts, cash management or other financial accounts, bank or other deposits, and all other cash collateral (all whether now

15

existing or later arising); current and past-due earnings, rents, prepaid rents, revenues, issues and profits, common area maintenance charges, accounts, and accounts receivable (all whether unpaid, accrued, due, or to become due); all lease termination, assumption, assignment and rejection claims in any bankruptcy action, and all amounts paid in partial or full satisfaction of any bankruptcy claim; all tax refunds and reimbursements; and all claims to issues, profits, income, cash collateral, and all other gross income derived from the business operations of the Borrower related to the Receivership Property, regardless of whether earned before or after entry of this Order, and regardless of whether received directly from tenants or occupants, from third parties on behalf of tenants or occupants, from insurance companies or pursuant to any state or federal program, or from any other source.

7.3     Income shall be applied and disbursed no less frequently than a monthly basis as follows (but subject to the lien rights granted to Pender):

(a)     to the Receiver's approved fees and expenses;

(b)     to the current post-receivership operating expenses including, but not limited to, any on-site employee payroll expenses, any real estate taxes, and any other taxes arising from normal business operations incurred during the Receivership. The Receiver shall not make disbursements of more than $5,000.00 toward post-receivership operating expenses without Approval except for life-threatening or other health or safety issues;

(c)     to the repayment of any receivership certificate securing any protective advances made by Pender to the Receiver;

(d)     except for a reasonable Receiver's reserve of $30,000, to Pender for application against the outstanding expenses, interest, principal, and other amounts owed under the Loan Documents, with such amounts to be applied by Pender in such order and manner as Pender elects in its sole discretion; and

(e)     any surplus to be held pending further order of the Court.

7.4     The Receiver may make interim distributions of Income to Pender after payment of current operating expenses, if the Receiver's "cash on hand" exceeds $10,000.00 and if he otherwise deems appropriate in his discretion.

16

**8.     Property Management Company.**

8.1     The Receiver and the Receivership Property shall not be bound by any existing property management agreement affecting the Receivership Property. The Receiver is specifically authorized to retain a property management company, with Approval, Notice as provided in Section 10.7, and as may be necessary to manage the Receivership Property. The Borrower is enjoined from retaining a management firm for the Receivership Property or from otherwise interfering with the Receiver's retention of a management firm for the Receivership Property.

**9.     Utility Accounts.**

9.1     The Receiver and the Receivership Property shall not be liable for the payment of utility charges of any kind (including, but not limited to, gas, electric, water, telephone, cable television, and satellite) incurred prior to the date of this Order.

9.2     Utility companies providing service to the Receivership Property shall, upon request by the Receiver, start new accounts in the name of the Receiver, as receiver, at a zero balance.

9.3     Any individual or entity receiving a copy of this Order is hereby enjoined and restrained from discontinuing service to the Receiver or the Receivership Property based upon non-payment of such utilities prior to the date of this Order and from attempting to collect utility charges from the Receiver pre-dating the date of this Order.

9.4     Each utility company or entity providing service to the Receivership Property shall forthwith transfer any deposits which it holds to the exclusive control of the Receiver and shall be prohibited from demanding that the Receiver deposit additional funds in advance to maintain or secure such service.

17

**10. Receiver Compensation, Reports, Accounting, and Bond.**

10.1    The Receiver shall be compensated as set forth in <u>Exhibit C</u>. The Receiver is authorized to pay his compensation and all ordinary and reasonable fees, costs, and expenses of the Receivership, including legal fees and expenses, as they become due.

10.2    The Receiver's Reports (as defined below) shall include an itemized statement setting forth the compensation paid to the Receiver for the services rendered and costs incurred by it as receiver during the preceding three months, reflecting the dates of service, time spent, and the nature of the services rendered and costs incurred. Unless any party entitled to receive said Receiver's Report as provided in Section 10.7 files with the Court and serves on the Receiver and all other parties an objection to said Receiver's Report within ten (10) days following service of the Receiver's Report, the compensation set forth in the Receiver's Report shall be approved, subject to the Court's review of all compensation paid to the Receiver in connection with the Court's review and approval of the Receiver's final accounting.

10.3    The Receiver's compensation shall be paid: (1) first from the Income from the Receivership Property, and (2) next, by Pender as a protective advance, but only to the extent that the Income is insufficient to pay the Receiver's compensation. The Receiver shall be permitted to deduct its fees directly from the Receivership Property Income or other proceeds of the Receivership Property. The Receiver is authorized to issue receivership certificate(s) to secure any protective advances made by Pender to pay the Receiver's compensation, but subject to Approval.

10.4    Nothing in this Order shall require the Receiver to advance funds other than from Income without a bond or security for payment satisfactory to the Receiver. The Receiver shall not advance funds other than from Income without Approval.

18

10.5    By the 20th day after the end of the preceding three month period the Receiver shall prepare a Receiver's Report (including a detailed accounting report and other appropriate information relative to the administration of the receivership and as required by law) pertaining to the operations of the Receivership Property.

10.6    The Receiver's Reports shall be filed with the Clerk of the Court and served upon the parties as provided in Section 10.6.

10.7    The Receiver shall furnish the Receiver's Reports to the following by regular First Class U.S. Mail, postage prepaid:

Jeffrey A. Kurz
Law Office of Jeffrey Kurz
42 N. Phelps Street
Youngstown, OH 44503

Nancy A. Valentine
Scott R. Lesser
Miller Canfield Paddock & Stone, PLC
840 W. Long Lake Road, Suite 150
Troy, MI 48098-6358

All other counsel of record.

10.8    The Receiver shall post a surety bond from an insurance company licensed to do business in this State in an amount not less than $75,000. The cost of the bond is an expense of the Receivership.

## 11.    Confidentiality.

11.1    "Confidential Information" means any non-public information.

11.2    The parties to this action, their counsel, and all those in active concert or participation with them, who receive actual notice of this Order, or otherwise, shall keep all Confidential Information provided by the Receiver confidential, and all such persons are

19

prohibited from disclosing any Confidential Information to anyone other than the parties to this action and their counsel without specific order of this Court.

**12.    Approval.**

12.1    Whenever this Order uses the term "subject to Approval" or "Approval," the Approval shall not be deemed given except by (1) a specific "Order of Approval" from this Court; or (2) the consent of Pender or its counsel given in writing.

**13.    Term and Final Accounting.**

13.1    This Receivership shall continue until further order of the Court.

13.2    The Receiver can only be removed in the Court's equitable discretion upon a motion for cause.  If the Receiver is removed, the Court may appoint a successor receiver.

13.3    Immediately upon termination of the Receivership, the Receiver shall turn over to Pender or its designee(s), all of the Receivership Property unless otherwise ordered by the Court.

13.4    Neither the termination of the Receivership nor the Receiver's removal will discharge the Receiver or the Receiver's bond.

13.5    The Receiver shall submit a final accounting (with copies to the recipients of Receiver's Reports as identified above) for approval by the Court within thirty (30) days after the termination of the Receivership or the Receiver's removal.

13.6    Only after the Court approves the Receiver's final accounting may the Receiver be discharged and the Receiver's bond will be cancelled.

**14.    General Provisions.**

14.1    The Receiver is only the receiver of the Receivership Property (as defined above), and not of any other assets, activities, business, or operations of the Borrower.  The Receiver's

19-40267-jpg    Doc 73    FILED 05/10/19    ENTERED 05/10/19 10:21:31    Page 47 of 86

responsibilities, duties, and liabilities are expressly limited to those stated in this Order as the same are related to the Receivership Property.

14.2    No person or entity may file suit against the Receiver, its employees, agents, or its attorneys, or take other action against the Receiver or the Receiver's bond, without first obtaining an order of this Court permitting the suit or action upon motion and an evidentiary hearing; provided, however, that no prior court order is required to file a motion in this action to enforce the provisions of this Order or any other order of this Court in this action.

14.3    The Receiver and its employees, agents, and attorneys shall have no personal liability in connection with any liabilities, obligations, liens, citations, code violations, or amounts owed to any of the Borrower's creditors, taxing authorities, or bodies politic because of its duties as Receiver, whether arising before or after the Receiver's appointment. The Receiver and Receiver's employees, agents and attorneys shall have no personal liability with respect to any environmental matters arising out of or relating to the Receivership Property. Nothing in this Order shall grant any rights to trade creditors or general unsecured creditors, whose rights shall be solely determined in accordance with Ohio law.

14.4    The Receiver and the Receivership Property shall not be liable for the payment of goods or services provided to the Borrower prior to the date of this Order. Any individual or entity receiving a copy of this Order is hereby enjoined and restrained from discontinuing service to the Receiver or the Receivership Property based upon non-payment of such goods or services prior to the date of this Order and from attempting to collect taxes, assessments, and invoices from the Receiver pre-dating the date of this Order.

14.5    All creditors, claimants, bodies politic, parties in interest, and their respective attorneys, agents, employees, and all other persons, firms, and corporations, hereby are, jointly

19-40267-jpg    Doc 73    FILED 05/10/19    ENTERED 05/10/19 10:21:31    Page 48 of 86

and severally, enjoined and stayed from commencing or continuing any action at law or suit or proceeding in equity to foreclose any lien or enforce any claim against the Receivership Property, the books, records, revenues, profits, and related assets associated with the Receivership Property, or against the Receiver in any Court. These parties are further stayed from executing or issuing or causing the execution or issuance out of any Court of any writ, process, summons, attachment, subpoena, replevin, execution or other process for the purpose of impounding or taking possession of or interfering with, or enforcing any claim or lien upon any of the Receivership Property or the books, records, revenues, profits and related assets associated with the Receivership Property, or upon the Receiver, and from doing any act or thing whatsoever to interfere with the Receiver in the discharge of its duties in this proceeding or within the exclusive jurisdiction of this Court over the Receivership Property and the books, records, revenues, profits and related assets associated with the Receivership Property.

14.6    The Receiver and its employees, agents, and attorneys shall have no personal liability and they shall have no claim asserted against them or the Receiver's bond relating to the Receiver's duties under this Order regarding any action taken or not taken by them in good faith. The Receiver and its employees, agents, and attorneys shall not be liable for any mistake of fact or error of judgment or for any acts or omissions of any kind, unless caused by gross negligence, gross or willful misconduct, malicious acts, or the failure to comply with this Court's orders. The Borrower, through the value of the Receivership Property, shall indemnify, hold harmless, and defend the Receiver, its employees, agents, and attorneys from and against any and all liabilities, costs, and expenses including, but not limited to, the cost of any bond required by this Order and legal and other fees and expenses incurred by them arising from or in any way connected to the performance of the Receiver's duties.

19-40267-jpg    Doc 73    FILED 05/10/19    ENTERED 05/10/19 10:21:31    Page 49 of 86

14.7    Nothing in this Order shall be construed such that the Receiver is considered to be in a fiduciary relationship with Pender, any of the Defendants, or all of them collectively.

14.8    The Borrower, its employees, agents and representatives, and all those in active participation or concert with them who receive notice of this Order, and all those having claims against the Receivership Property who receive notice of this Order, are enjoined from, and shall not:

    (a)    **Commit Waste.**  Commit or permit any waste on all or any part of the Receivership Property, or suffer or commit or permit any act on all or any part of the Receivership Property in violation of law, or remove, transfer, encumber, or otherwise dispose of any of the Receivership Property.

    (b)    **Collect Income.**  Demand, collect, receive, discount, or in any other way divert or use any of the Income.

    (c)    **Terminate any Utility Service.**  Terminate or withhold any electric, gas, water, sewer, telephone, or other utility service supplying the Receivership Property, require any utility deposit, or otherwise interfere with the continued operations of the Receivership Property. This provision does not apply to utilities under the exclusive jurisdiction of the Ohio Public Utilities Commission.

    (d)    **Interfere with the Receiver.**  Directly or indirectly interfere in any manner with the discharge of the Receiver's duties under this Order or the Receiver's possession of and operation, management, marketing, or sale of the Receivership Property.

    (e)    **Transfer or Encumber the Receivership Property.**  Expend, disburse, transfer, assign, sell, convey, devise, pledge, mortgage, create a security interest in, encumber, conceal, or in any manner whatsoever deal in or dispose of the whole or any part of the Receivership Property including, but not limited to, the Income, without prior court order.

    (f)    **Impair the Preservation of the Receivership Property.**  Do any act that will, or that will tend to, impair, defeat, divert, prevent, or prejudice the preservation of the Receivership Property, including the Income, or the preservation of Pender's' interest in the Receivership Property and the Income.

14.9    The Receiver shall faithfully perform and discharge the Receiver's duties and obey the Court's orders.

14.10    The Receiver is subject to the personal jurisdiction of the Court.

23

14.11   The Receiver and its counsel are permitted to communicate *ex parte* with the Court and any magistrate referred to this matter, as well as their staff, on any matters related to the Receivership Property.

14.12   This Order and its terms shall be considered compliant with the Local Rules of the Mahoning County, Ohio Court of Common Pleas and this Order shall take precedence in the event of a conflict between them.

14.13   The Receiver's duty to act as Receiver is subject to the Receiver's written acceptance and approval of the terms of this Order.  Upon acceptance, the Receiver shall be bound by each and every term contained in this Order and each and every obligation of the Receiver imposed by this Order.

**15.**   **Amendment of Order.**

15.1   This Order may be amended for cause after a motion or hearing.

**16.**   **No Prejudice to Foreclosure/Final Order.**

16.1   This Order shall not prejudice Pender's foreclosure of any mortgage lien or security interest, or any action by Pender under any loan documents, or any of Pender's other claims as set forth in its Complaint or any amendments thereto.

**17.**   **Final Appealable Order.**

16.1   This is a final appealable order and there is no just cause for delay in its entry.

**17.**   **Service of Order.**

17.1   Pursuant to Civ. R. 58(B), the Clerk shall serve notice of the entry of this Order Appointing Receiver.

24

ALL OF WHICH IS HEREBY APPROVED AND ORDERED THIS _____ DAY OF

_____, 2018.

_____
Judge

APPROVED:

_____          _____
Nancy A. Valentine (0069503)                Jeffrey A. Kurz (75498)
Scott R. Lesser (0095403)                   42 N. Phelps St.
Miller Canfield Paddock & Stone, PLC        Youngstown, OH 44503
1100 Superior Avenue East, Suite 1750       (330) 747-5879 (Phone)
Cleveland, Ohio 44114                       (330) 743-2536 (Fax)
(216) 716-5040 (Direct Phone)               JeffKurz@hotmail.com
(248) 879-2000 (Company)                    Attorney for Plaintiffs/Counter-Defendants
(248) 879-2001 (Fax)
valentinen@millercanfield.com
lesser@millercanfield.com                   _____
Attorneys for Defendant/Counter-Plaintiff   James A. Vitullo (15388)
                                            5232 Nashua Drive
                                            Austintown, OH 44515-5122
                                            330-207-8571
                                            jamesavitullo@gmail.com
                                            Attorney for Plaintiffs/Counter-Defendants

                                            California Palms, LLC,
                                            an Ohio limited liability company

                                            By:     _____
                                            Print:  _____
                                            Title:  _____


                                            _____
                                            Sebastian Rucci

                                            California Palms Addiction Recovery Campus, Inc.,
                                            an Ohio corporation

                                            By:     _____
                                            Print:  _____
                                            Title:  _____

25

## EXHIBIT A
## (LEGAL DESCRIPTION)

Situated in the Township of Austintown, County of Mahoning and State of Ohio;

And known as being Lot No.4 in Clarkins at Youngstown Plat No.1 as shown in Mahoning County Records of Plats Volume 61 Page 122, and more fully described as follows:

Beginning at the Southwest corner of Lot No.16 in the Oakwood Allotment as recorded in Record Volume 27 Page 43; thence South 2 Degrees 29 Minutes West along the East line of Lot 18 in the Young and Webb Plat No. 1 a distance of 60.00 feet to a point; thence North 87 degrees 31 minutes West along the South line of said Lot 18 a distance of 203.00 feet to a point on the East right-of-way of State Route 46; thence South 0 degrees 24 minutes East along said right-of-way a distance of 180.38 feet to a point; thence South 87 degrees 31 minutes East along said right-of-way a distance of 78.67 feet to a point; thence South 1 degree 57 minutes East along said right-of-way a distance of 271, 40 feet to a point and the true place of beginning of the tract to be described; thence South 87 degrees 35 minutes East a distance of 237.36 feet to a point; thence North 52 degrees 25 minutes East a distance of 89.00 feet to a point on the South line of a 60 foot street known as Clarkins Drive; thence along said South line on an arc of a curve to the left in a Southeasterly direction with a central angle of 50 degrees 0 minutes a radius of 244.45 feet and a total arc length of 213.32 a distance of 80.00 feet to a point; thence South 3 degrees 55 minutes 56 seconds West a distance of 433.38 feet to a point on the North right-of-way line of Interstate Route 80; thence North 78 degrees 26 minutes West along said North line a distance of 182.00 feet to a point; Thence North 51 degrees 56 minutes West along said North line a distance of 102.85 feet to a point; thence North 2 degrees 29 minutes East along said North line a distance of 60.00 feet to a point; thence North 87 degrees 31 minutes West along said North line a distance of 65.00 feet to a point on the East right-of-way line of State Route 46; thence North 21 degrees 19 minutes West along the said East line a distance of 22.58 feet to a point; thence North 1 degree 57 minutes West along said East line a distance of 249.60 feet to the true place of beginning and containing 3.009 acres of land more or less.

Commonly known as:       5455 Clarkins Dr., Youngstown, OH 44515
Tax Parcel No.:           48-042-0-063.000

**EXHIBIT B**
**(OATH OF RECEIVER)**

# COURT OF COMMON PLEAS
## MAHONING COUNTY, OHIO

| | |
|---|---|
| **CALIFORNIA PALMS, LLC,**<br>a Delaware limited liability company, *et al.*, | **CASE NO.** 2018- cv-01015 |
| Plaintiffs/Counter-Defendants, | |
| vs. | Judge Durkin |
| **PENDER CAPITAL ASSET BASED LENDING**<br>**FUND I, LP**, a Delaware limited partnership, | Magistrate Dominic DeLaurentis |
| Pender. | **OATH OF RECEIVER** |

The undersigned, being first duly sworn upon its oath, hereby states that it will faithfully and honestly discharge the duties of Receiver in the above-captioned action to the best of its abilities and will obey the orders of this Court.

Inglewood Associates, LLC

_____

By: John K. Lane

_____

Dated

STATE OF OHIO       )
                    ) SS:
COUNTY OF _____   )

       Before me, the undersigned, a Notary Public in and for said County and State, personally appeared John K. Lane, of Inglewood Associates, LLC, and acknowledged his execution of the foregoing Oath of Receiver on behalf of Inglewood Associates LLC.

       Signed and sealed this _____ day of _____, 2018.

My Commission Expires:

_____

County of Residence:

_____

_____
Notary Public

_____
Printed

**EXHIBIT C**
**(RECEIVERSHIP FEE SCHEDULE)**

1.  John K. Lane - $295 per hour (receiver)

2.  Nancy D. Terrill - $295 per hour (healthcare specialist)

3.  James R. Myers - $295 per hour (real estate)

4.  Additional Resources - $225 - $295 per hour

5.  Administrative Support - $90 per hour

31959127.1\157569-00001

## EXHIBIT 4 – FORECLOSURE JUDGMENT

[See following pages for form of Agreed Judgment and Decree of Foreclosure.]

| | |
|---|---|
| **CALIFORNIA PALMS, LLC**, *et al.*, | Case No. 2018-cv-01015 |
| Plaintiffs and Counter-Defendants, | Judge John M. Durkin |
| *v.* | Magistrate Dominic DeLaurentis |
| **PENDER CAPITAL ASSET BASED LENDING FUND I, LP**, | **AGREED JUDGMENT AND DECREE OF FORECLOSURE** |
| Defendant and Counter-Plaintiff; | |
| *and* | |
| **OHIO DEPARTMENT OF JOB AND FAMILY SERVICES**, *et al.*, | |
| Third-Party Defendants. | |

Pender Capital Asset Based Lending Fund I, LP, a Delaware limited partnership ("Pender"), California Palms, LLC, an Ohio limited liability company ("Borrower"), Sebastian Rucci ("Guarantor"), and California Palms Addiction Recovery Center, an Ohio corporation ("CPARC") by and through undersigned counsel, hereby agree and stipulate to this agreed judgment and decree of foreclosure.

The Parties hereby agree, and this Court finds, as follows:

1. That Borrower, Guarantor, and CPARC were each served with Pender's Counterclaim, and filed their answer on July 19, 2018.

2. That Third-Party Defendant Ohio Department of Job and Family Services was served by Federal Express on June 8, 2018, and is in default for answer.

3. That this judgment pertains to the premises described in attached **Exhibit A** (the "Mortgaged Property").

2

4.  That the Note, Mortgage, Guaranty, and other loan documents attached to the Verified Counterclaim for Foreclosure and Other Relief are authentic copies of the respective documents.

5.  That Pender is the holder of the Note.

6.  That the Note is in default by Borrower having failed to pay the monthly payment due on May 1, 2018 and each month thereafter, and Borrower's failure to pay late charges when this payment was not made within ten days of its due date, along with other defaults.

7.  That as of October 1, 2018, the amount due on the loan was as follows:[1]

| | |
|---|---|
| Principal | $    4,000,000.00 |
| Interest | 280,000.00 |
| Default interest | 106,666.67 |
| Prepayment Premium | 233,333.33 |
| Attorneys' Fees and Costs | 25,000.00 |
| Credit - Holdbacks | (420,000.00) |
| Credit - Tax Escrow | (25,000.00) |
| Credit - Insurance Escrow | (20,000.00) |
| Credit - Deposit | (10,000.00) |
| Total | $    4,170,000.00 |

plus additional attorneys' fees not included above. Additional attorneys' fees, property protection advances and costs to be expended through confirmation, along with interest at the rate of 22% per annum (equal to $2,444.44 per diem) from and after October 1, 2018, continue to accrue.

8.  That the Note is secured by Pender's Mortgage and the Mortgage constitutes a valid first lien on the Mortgaged Property, subject to any lien for unpaid taxes and assessments owed to the Mahoning County Treasurer.

9.  That the Mortgage was recorded on March 15, 2018 as Instrument No. 201800005457 of the Mahoning County records and that the conditions of the Mortgage have been broken, the

---

[1] The credits listed for Holdbacks, Tax Escrow, and Insurance Escrow consist of funds that this Court previously authorized Pender to take possession of and apply against the Loan balance. They are restated here for clarity, and are not intended to provided double-credit to Borrower and Guarantor (i.e., the "Total" above is after applying those funds based on this Court's prior order, and is not further reduced by that application).

3

Mortgage has become absolute, and Pender is entitled to have the equity of redemption of the Borrower foreclosed.

10. That, because the note is in default, the Mortgage is in default and has become absolute and that Pender is entitled to foreclose on its Mortgage and security interest and to apply the proceeds of the sale to its debt.

11. That Defendant/Counter-Plaintiff is entitled to a judgment and decree of foreclosure.

THE COURT THEREFORE ENTERS JUDGMENT AS FOLLOWS:

1. In favor of Pender and against Borrower and Guarantor, jointly and severally, for $4,170,000.00 plus interest at the present rate of 22.0% per annum ($2,444.44 per diem) from and after October 1, 2018.

2. Pender's Mortgage secures payment of the Note, and Pender's Mortgage is a first lien encumbering the Mortgaged Property, subject only to the lien of the Mahoning County Treasurer for unpaid taxes and assessments, if any.

3. Unless Borrower and Guarantor shall, within three days from the date of entry of this judgment, pay or cause to be paid to the Clerk of Courts the cost of this action and to Pender the amount found due to Pender as set forth above, then:

    a. The Borrower's equity of redemption shall be foreclosed.

    b. The Mortgaged Property shall be sold, free of the interest of all parties named in this action or otherwise bound by *lis pendens*.

    c. An Order of Sale shall issue to the Sheriff of this county, directing him to appraise, advertise, and sell all of the Mortgaged Property, real or personal, tangible or intangible, described in the Mortgage.

4. That there is no just reason for delay.

4

5.    The Clerk is hereby ordered to serve this judgment entry on all parties pursuant to

Civ. R. 58(B).

                                            _____

                                            Judge John M. Durkin, Court of Common Pleas

Approved:

_____      _____

Nancy A. Valentine (0069503)               Jeffrey A. Kurz (75498)
Scott R. Lesser (0095403)                   42 N. Phelps St.
Miller Canfield Paddock & Stone, PLC     Youngstown, OH 44503
1100 Superior Avenue East, Suite 1750    (330) 747-5879 (Phone)
Cleveland, Ohio 44114                   (330) 743-2536 (Fax)
(216) 716-5040 (Direct Phone)         JeffKurz@hotmail.com
(248) 879-2000 (Company)            Attorney for Plaintiffs/Counter-Defendants
(248) 879-2001 (Fax)
valentinen@millercanfield.com
lesser@millercanfield.com
Attorneys for Defendant/Counter-Plaintiff   _____

                                              James A. Vitullo (15388)
                                            5232 Nashua Drive
                                            Austintown, OH 44515-5122
                                            330-207-8571
                                            jamesavitullo@gmail.com
                                            Attorney for Plaintiffs/Counter-Defendants

                                            California Palms, LLC,
                                            an Ohio limited liability company

                                            By:     _____
                                              Print:   _____
                                              Title:    _____

                                            _____

                                            Sebastian Rucci

                                            California Palms Addiction Recovery Campus, Inc.,
                                            an Ohio corporation

                                            By:     _____
                                              Print:   _____
                                              Title:    _____

5

## EXHIBIT A
## LEGAL DESCRIPTION

Situated in the Township of Austintown, County of Mahoning and State of Ohio;

And known as being Lot No.4 in Clarkins at Youngstown Plat No.1 as shown in Mahoning County Records of Plats Volume 61 Page 122, and more fully described as follows:

Beginning at the Southwest corner of Lot No.16 in the Oakwood Allotment as recorded in Record Volume 27 Page 43; thence South 2 Degrees 29 Minutes West along the East line of Lot 18 in the Young and Webb Plat No. 1 a distance of 60.00 feet to a point; thence South 87 degrees 31 minutes West along the South line of said Lot 18 a distance of 203.00 feet to a point on the East right-of-way of State Route 46; thence South 0 degrees 24 minutes East along said right-of-way a distance of 180.38 feet to a point; thence South 87 degrees 31 minutes East along said right-of-way a distance of 78.67 feet to a point; thence South 1 degree 57 minutes East along said right-of-way a distance of 271, 40 feet to a point and the true place of beginning of the tract to be described; thence South 87 degrees 35 minutes East a distance of 237.36 feet to a point; thence North 52 degrees 25 minutes East a distance of 89.00 feet to a point on the South line of a 60 foot street known as Clarkins Drive; thence along said South line on an arc of a curve to the left in a Southeasterly direction with a central angle of 50 degrees 0 minutes a radius of 244.45 feet and a total arc length of 213.32 a distance of 80.00 feet to a point; thence South 3 degrees 55 minutes 56 seconds West a distance of 433.38 feet to a point on the North right-of-way line of Interstate Route 80; thence North 78 degrees 26 minutes West along said North line a distance of 182.00 feet to a point; Thence North 51 degrees 56 minutes West along said North line a distance of 102.85 feet to a point; thence North 2 degrees 29 minutes East along said North line a distance of 60.00 feet to a point; thence North 87 degrees 31 minutes West along said North line a distance of 65.00 feet to a point on the East right-of-way line of State Route 46; thence North 21 degrees 19 minutes West along the said East line a distance of 22.58 feet to a point; thence North 1 degree 57 minutes West along said East line a distance of 249.60 feet to the true place of beginning and containing 3.009 acres of land more or less.

Commonly known as: 5455 Clarkins Dr., Youngstown, OH 44515
Tax Parcel No.:          48-042-0-063.000

31937699.4\157569-00001

## EXHIBIT 5 – BROKER'S RELEASE

[See following page(s) for form of Broker's Release of Pender.]

# BROKER'S MUTUAL RELEASE

This *Broker's Mutual Release* ("**Release**") is effective as of November 8, 2018 (the "**Release Date**") among Michael Lewis and Charles Bowles (together, "**Brokers**"), California Palms, LLC ("**Borrower**"), Sebastian Rucci ("**Guarantor**"), California Palms Addiction Recovery Campus, Inc. ("**CPARC**," and together with Borrower and Guarantor, "**Borrower Parties**") and Pender Capital Asset Based Lending Fund I, LP ("**Lender**").

1.     **RECITALS AND DEFINITIONS.**

    (a) Brokers assisted in arranging financing from Lender to Sebastian Rucci or his affiliates, which affiliates may include California Palms, LLC, California Palms Addiction Recovery Campus, Inc., and California Palms Hotel Inc., among others (together, "**Rucci**").

    (b) As a result, Pender and Rucci partially documented and closed a loan from Pender to California Palms, LLC (the "**Loan**") in March 2018. Rucci disputed the Loan's terms, origination procedures, and other matters before closing was complete, however, and Brokers were not paid any commission or fee.

    (c) Brokers have agreed to accept $34,000 in complete satisfaction of any claims to a fee, commission, or other compensation in connection with the Loan, and are willing to provide this Release conditioned on receipt of such funds to induce the parties to cause payment to be made.

    (d) "**Borrower Released Parties**" means, collectively, (i) Borrower; (ii) Guarantor; (iii) CPARC, (iv) each of their predecessors, successors, and assigns; and (v) each of their officers, directors, employees, agents, attorneys, and other representatives.

    (e) "**Broker Released Parties**" means, collectively, (i) the Brokers; (ii) each of their affiliates, predecessors, successors, and assigns; and (iii) each of their officers, directors, employees, agents, attorneys, and other representatives.

    (f) "**Claims**" means any and all manner of debts, accounts, warranties, representations, covenants, contracts, agreements, liabilities, obligations, expenses, damages, actions, claims, counterclaims, demands, causes of action, suits, defenses, offsets against obligations of any nature whatsoever, whether at law or in equity, known or unknown, either now accrued or later maturing, in contract or in tort, at law or in equity, by reason of any matter, cause or thing, from the beginning of the world to and including the date of this Release and at all times thereafter.

    (g) "**Lender Released Parties**" means (i) Lender; (ii) its loan servicers; (iii) each of their affiliates, parents, and subsidiaries; (iv) each of their predecessors, successors, and assigns; and (v) each of their respective officers, directors, employees, agents, attorneys, and other representatives.

    (h) "**JAW**" means (i) John A. Wise & Assoc., PLLC; (ii) its affiliates, parents, and subsidiaries; (iii) each of their predecessors, successors, and assigns; and (v) each of their respective officers, directors, employees, agents, attorneys, and other representatives, including, without limitation, Amy Fryar.

2.     **BROKER'S RELEASE.** Upon delivery of the sum of $34,000 on or before December 15, 2018 in accordance with the wire instructions that immediately follow their signature below, Brokers, for themselves and on

behalf of their affiliates, parents and subsidiaries; each of their predecessors, successors and assigns; and their officers, directors, employees, agents, attorneys and other representatives, release and forever discharge the Borrower Released Parties, Lender Released Parties and JAW from any and all Claims arising out of or relating to, in whole or in part, directly or indirectly, the Loan.

3. **BORROWER PARTIES' RELEASE.** Upon the effectiveness of the release of the Brokers, Borrower Parties, for themselves and on behalf of their affiliates, parents and subsidiaries; each of their predecessors, successors and assigns; and their officers, directors, employees, agents, attorneys and other representatives, release and forever discharge the Brokers from any and all Claims arising out of or relating to, in whole or in part, directly or indirectly, the Loan.

4. **LENDER PARTIES' RELEASE.** Upon the effectiveness of the release of the Brokers, the Lender for themselves and on behalf of their affiliates, parents and subsidiaries; each of their predecessors, successors and assigns; and their officers, directors, employees, agents, attorneys and other representatives, release and forever discharge the Brokers from any and all Claims arising out of or relating to, in whole or in part, directly or indirectly, the Loan.

5. **COUNTERPARTS.** This Release may be signed in any number of counterparts as if the signatures were on the same instrument, and all separate documents signed shall be deemed an original. This Release may be signed by electronic, scanned, or facsimile signature, and each such signature will be deemed an original.

6. **GOVERNING LAW.** This Release is governed by Ohio law.

**LENDER:**                                            **BROKERS:**

PENDER CAPITAL ASSET BASED LENDING FUND
I, LP, a Delaware limited partnership              MICHAEL LEWIS

By: _____
Name: Zach Murphy
Its: _____

**BORROWER:**
                                                       CHARLES BOWLES
CALIFORNIA PALMS, LLC, an Ohio limited
liability company

By: _____
        Sebastian Rucci, _____

CALIFORNIA PALMS ADDICTION RECOVERY          **GUARANTOR:**
CAMPUS, INC., an Ohio corporation

By: _____
        Sebastian Rucci, _____               SEBASTIAN RUCCI

**Brokers' Wire Instructions for Payment of Entire $34,000:**

Bank: JP Morgan Chase Bank
ABA #: 267084131    Routing
Attn: Michael J Lewis
Account: 958059396
Reference: Rucci CaliParc Settlement

31961327.4\157569-00001

**EXHIBIT 6 – ACKNOWLEDGMENT AND AGREEMENT**

[See following pages for form of Acknowledgment and Agreement.]

# AGREEMENT AND ACKNOWLEDGMENT

This *Agreement and Acknowledgment* ("*Acknowledgement*") is entered into effective November 8, 2018, by CALIFORNIA PALMS, LLC, an Ohio limited liability company ("*Borrower*"); CALIFORNIA PALMS ADDICTION RECOVERY CAMPUS, INC., an Ohio corporation ("*CPARC*"); and SEBASTIAN RUCCI, an individual ("*Guarantor*," and together with Borrower, the "*Borrower Parties*") (Borrower Parties and CPARC together are the "*Rucci Parties*").

## RECITALS

A.        Pender Capital Asset Based Lending Fund I, LP ("*Pender*"), a Delaware limited partnership, is the current owner and holder of a loan given to Borrower on or about March 8, 2018 in the original principal amount of $4,000,000 (the "*Loan*")

B.        The Loan is evidenced by that certain *Promissory Note* (the "*Note*") dated March 12, 2018, executed and delivered by Borrower and payable to Pender, and is further evidenced and secured by that certain *Open-End Mortgage, Assignment of Rents and Security Agreement* (the "*Mortgage*") dated March 12, 2018 and recorded in the Office of the Mahoning County Recorder on March 15, 2018 at Instrument No. 20180005457 and an *Environmental Indemnity Agreement* (the "*Environmental Indemnity*") dated March 12, 2018 each executed and delivered by Borrower to and for the benefit of Pender, and a *Guaranty* (the "*Guaranty*" and together with the Note, Mortgage and Environmental Indemnity, the "*Loan Documents*") dated March 12, 2018 executed and delivered by Rucci to Pender. The Loan Documents are attached to this Acknowledgment as Exhibits A through D, respectively.

C.        The Loan and Mortgage relate to real estate having an address of 1051 N. Canfield Niles Rd., Austintown, Ohio (aka 5455 Clarkins Drive, Austintown Township, Ohio) and more particularly described in the Mortgage (the "*Real Estate*").

D.        Borrower Parties have disputed whether the Loan is valid, including based on the actions of Pender and JAW. Borrower Parties filed suit in Mahoning County Court of Common Pleas as Case No. 2018 CV 01015 (the "*Lawsuit*") to resolve these disputes. Pender filed a counterclaim in the Lawsuit, and named CPARC as a third-party defendant because CPARC may claim an interest in the Real Estate.

E.        Contemporaneously with delivery of this Acknowledgment, the Rucci Parties and Pender have entered into that certain Settlement Agreement and Release effective November 9, 2018 (the "*Agreement*")

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is acknowledged, the Parties agree as follows:

## ACKNOWLEDGEMENT AND AGREEMENT

1.        The Rucci Parties affirm the above Recitals are true and accurate in all respects, and incorporated within this Acknowledgment as if restated in full.

2.        Borrower Parties acknowledge and agree that each of the following is true on the date of execution of this Acknowledgment and shall remain true until the Loan is paid in full or the obligations under the Agreement are fully satisfied:

(a)        On behalf of Borrower, Guarantor acknowledges and agrees that he executed and delivered to Pender the Note to evidence the Loan.

1

(b)     On behalf of Borrower, Guarantor acknowledges and agrees that he executed and delivered to Pender the Mortgage to secure the indebtedness due under the Note.

(c)     On behalf of Borrower, Guarantor acknowledges and agrees that he executed and delivered to Pender the Environmental Indemnity to further secure the Loan and to evidence additional obligations as stated in the Environmental Indemnity.

(d)     Guarantor acknowledges and agrees that he executed and delivered to Pender the Guaranty to further secure the obligations due and owing under the Note by Borrower to Pender.

(e)     The Borrower Parties acknowledge and agree that true and accurate copies of the Note, Mortgage, Environmental Indemnity and Guaranty are attached to this Acknowledgment as Exhibits A through D, respectively.

(f)     The Note, the Mortgage and other Loan Documents are authentic, valid, binding and enforceable agreements.

(g)     The Mortgage and the lien granted to Pender by the Borrower against the Real Estate (as defined and described in the Mortgage and Exhibit A to the Mortgage) under the Mortgage remains a first and valid security interest in and lien against the Real Estate, excepting only the lien of any real estate taxes or other assessments not yet due and owing to the Mahoning County Treasurer.

(h)     Borrower's Indebtedness (as defined in the Note) under the Note is a valid and binding obligation.

(i)     Borrower Parties ratify and confirm all of the agreements, terms, covenants, representations, warranties and conditions of the Loan Documents in their entirety, including but not limited to ratifying that the Loan is a commercial loan.

(j)     Guarantor acknowledges and agrees to the continuing authenticity and enforceability of the Guaranty, and ratifies and confirms the Guaranty, in its entirety. Guarantor agrees that his Guaranty shall remain in effect until Borrower's obligations to Pender have been fully paid and satisfied.

3.     CPARC acknowledges and agrees that the Mortgage and the lien granted to Pender by the Borrower against the Real Estate (as defined and described in the Mortgage and Exhibit A to the Mortgage) under the Mortgage remains a first and valid security interest in and lien against the Real Estate, except as to any real estate taxes or other assessments of the Mahoning County Treasurer.

4.     The Rucci Parties acknowledge and agree that the certain *Lease Agreement* dated January 15, 2017 (the "*Lease*"), between California Palms Hotel, Inc. (an affiliate of Rucci Parties) and CPARC, is and will be the sole lease, occupancy, management, or similar agreement permitting any person or entity to operate or manage the Real Estate. Neither Lease nor any right under it has been or will be assigned, hypothecated, or otherwise transferred to any person or entity. No Rucci Party has or will, directly or indirectly, transferred any rights in the rents or proceeds of the Real Estate, other than to Pender under the Mortgage, to CPARC under the Lease, or to any receiver in connection with any request by Pender.

2

5.      Guarantor acknowledges and agrees that any and all right, title, or interest he may hold to occupy, reside in, or use all or any portion of the Real Estate, whether in his own name or in the name of any other person or entity, is subordinate to the lien of the Mortgage and all advances made thereunder, including any renewals, extensions, modifications, or replacements thereof; that any such right, title, or interest will be terminated by any foreclosure of the Mortgage lien; and that, upon Pender's or any other person's acquisition of title to the Real Estate pursuant to any foreclosure of the Mortgage, Guarantor will vacate the Real Estate and surrender possession to Pender (or any third party bidder) without further notice or demand.

**[THE SIGNATURE PAGE FOLLOWS ON THE NEXT PAGE.]**

The undersigned agree and acknowledge that they are duly authorized to enter into this Agreement and have voluntarily done so.

**BORROWER:**

CALIFORNIA PALMS, LLC, an Ohio limited liability company

By: _____
      Sebastian Rucci, Manager

CALIFORNIA PALMS ADDICTION RECOVERY CAMPUS, INC., an Ohio corporation

By: _____
      Sebastian Rucci, _____

**GUARANTOR:**

_____
SEBASTIAN RUCCI

32387559.3\157569-00001

19-40267-jpg    Doc 73    FILED 05/10/19    ENTERED 05/10/19 10:21:31    Page 72 of 86

## EXHIBIT 7 – MUTUAL RELEASE

[See following page(s) for form of Mutual Release.]

# MUTUAL RELEASE

This *Mutual Release* ("***Release***") is effective as of _____, 201___ (the "***Release Date***") by and between California Palms, LLC ("***Borrower***"), Sebastian Rucci ("***Guarantor***"), California Palms Addiction Recovery Campus, Inc. ("***CPARC***," and together with Borrower and Guarantor, "***Borrower Parties***") and Pender Capital Asset Based Lending Fund I, LP ("***Lender***"), pursuant to the terms of a certain *Settlement Agreement and Release* dated as of November 8, 2018 (the "*Agreement*").

1.   **DEFINITIONS**. Capitalized terms used but not otherwise defined in this Release have the meanings given in the Agreement. Additionally:

      (a)   "***Borrower Released Parties***" means, collectively, (i) Borrower; (ii) Guarantor; (iii) CPARC, (iv) each of their predecessors, successors, and assigns; and (v) each of their officers, directors, employees, agents, attorneys, and other representatives.

      (b)   "***Claims***" means any and all manner of debts, accounts, warranties, representations, covenants, contracts, agreements, liabilities, obligations, expenses, damages, actions, claims, counterclaims, demands, causes of action, suits, defenses, offsets against obligations of any nature whatsoever, whether at law or in equity, known or unknown, either now accrued or later maturing, in contract or in tort, at law or in equity, by reason of any matter, cause or thing, from the beginning of the world to and including the date of this Release and at all times thereafter.

      (c)   "***Lender Released Parties***" means (i) Lender; (ii) its loan servicers; (iii) each of their affiliates, parents, and subsidiaries; (iv) each of their predecessors, successors, and assigns; and (v) each of their respective officers, directors, employees, agents, attorneys, and other representatives.

      (d)   "***JAW***" means (i) John A. Wise & Assoc., PLLC; (ii) its affiliates, parents, and subsidiaries; (iii) each of their predecessors, successors, and assigns; and (v) each of their respective officers, directors, employees, agents, attorneys, and other representatives, including, without limitation, Amy Fryar.

2.   **BORROWER PARTIES' RELEASE**. Borrower Parties, for themselves and on behalf of their affiliates, parents and subsidiaries; each of their predecessors, successors and assigns; and their officers, directors, employees, agents, attorneys and other representatives, release and forever discharge the Lender Released Parties and JAW from any and all Claims arising out of or relating to, in whole or in part, directly or indirectly, (a) the Loan; (b) the Loan Documents; (c) the amount due in connection with the Loan and the Loan Documents; (d) the Real Estate; (e) the Agreement; (f) the Lawsuit (whether such Claims actually were or could have been asserted in the Lawsuit); (g) the Title Company Funds; (h) the Escrows; and (i) Pender's Fees.

3.   **EXCLUSIONS FROM BORROWER PARTIES' RELEASE**. Borrower Parties' release of Lender Released Parties *specifically excludes* any Claim that Lender breached the Agreement after the Release Date.

4.   **LENDER'S RELEASE**. Lender releases and forever discharges Borrower Released Parties from any and all Claims arising out of or relating to, in whole or in part, directly or indirectly, (a) the Loan; (b) the Loan Documents; (c) the amount due in connection with the Loan and the Loan Documents; (d) the Real Estate; (e) the Agreement; (f) the Lawsuit (whether such Claims actually were or could have been asserted in the Lawsuit); (g) the Title Company Funds; (h) the Escrows; and (i) Pender's Fees.

5.   **EXCLUSIONS FROM LENDER'S RELEASE**. Lender's release of Borrower Released Parties *specifically excludes* any Claims (1) pertaining exclusively to any loans or indebtedness other than the Loan

and the Indebtedness; (2) that any Borrower Party breached the Agreement; or (3) arising out of or pertaining to the Environmental Indemnity or any other indemnification or guaranty provisions pertaining to environmental matters or hazardous substances contained in the Mortgage or any other Loan Document.

6. **VOIDING OF LENDER'S RELEASE**. Lender's release of Borrower Released Parties will be null and void and of no further force or effective if any of the following occurs:

(a) Any Borrower Released Party institutes, causes to be instituted, continues prosecution of, or participates in: (i) any suit or other form of action or proceeding, against any Lender Released Party or otherwise in breach of Borrower Parties' release set forth in this Agreement; or (ii) any state, federal, or other bankruptcy, dissolution, liquidation, or insolvency proceeding or other proceeding pursuant to laws providing for the relief of debtors, including but not limited to any proceeding under Title 11 of the United States Code, *other than* an involuntary proceeding that is dismissed within 30 days of filing;

(b) A court of competent jurisdiction, or any trustee or receiver for any Borrower Released Party, determines that the Settlement Payment or any other payments or transfers contemplated by the Agreement constitutes a preference or fraudulent conveyance, or otherwise sets aside or holds ineffective any of the transfers contemplated by the Agreement; or

(c) The Borrower Parties' release of Lender set forth in this Release is determined to be void and of no force and effect.

7. **COUNTERPARTS**. This Release may be signed in any number of counterparts as if the signatures were on the same instrument, and all separate documents signed shall be deemed an original. This Release may be signed by electronic, scanned, or facsimile signature, and each such signature will be deemed an original.

8. **GOVERNING LAW**. This Release is governed by Ohio law.

**LENDER:**

PENDER CAPITAL ASSET BASED LENDING FUND I, LP, a Delaware limited partnership

By: _____
Name: Zach Murphy
Its: _____

**BORROWER:**

CALIFORNIA PALMS, LLC, an Ohio limited liability company

By: _____
Sebastian Rucci, _____

**GUARANTOR:**

_____
SEBASTIAN RUCCI

CALIFORNIA PALMS ADDICTION RECOVERY CAMPUS, INC., an Ohio corporation

By: _____
Sebastian Rucci, _____

31961236.3\157569-00001

## EXHIBIT 8 – MOTION TO DISMISS AND ORDER OF DISMISSAL

[See following page(s) for form of Joint Motion to Dismiss and Stipulated Dismissal Order.]

## IN THE COURT OF COMMON PLEAS
## FOR MAHONING COUNTY, OHIO

**CALIFORNIA PALMS, LLC**, et al.,

        Plaintiffs/Counter-Defendants,

*v.*

**PENDER CAPITAL ASSET BASED LENDING
FUND I, L.P.**, et al.,

        Defendant/Counter-Plaintiffs.

Case No. 2018-cv-01015

Judge John M. Durkin

Magistrate Dominic DeLaurentis

**JOINT MOTION TO DISMISS**

---

Now come Plaintiffs/Counter-Defendants California Palms, LLC and Sebastian Rucci ("Plaintiffs"), Defendant/Counter-Plaintiff Pender Capital Asset Based Lending Fund I, LP ("Defendant"), and Third-Party Defendant California Palms Addiction Recovery Campus, Inc. ("CPARC") (together, Plaintiffs, Defendant, and CPARC are the "Parties"), by their respective undersigned counsel, and hereby move the Court for an order dismissing the case.

This case concerns a $4 million commercial loan that, in brief, Plaintiffs assert was improperly issued and Defendant claims is due and entitled to be foreclosed. The Parties have entered into a Settlement Agreement and Release dated August 20, 2018 (the "Settlement Agreement"), and have performed all conditions under the Settlement Agreement. Although all conditions have been performed, Defendant retains the right to have its claims reinstated if certain post-closing conditions occur within ninety days; and the Parties therefore ask that the Court retain jurisdiction to enforce the Settlement Agreement in such event.

The Parties each believe the Settlement Agreement is a fair and equitable resolution of the Parties' claims and defenses in this case.

No other parties have any pending and unresolved claims, counterclaims, or affirmative defenses.

As a result of the Settlement Agreement, all claims and defenses in this case have been resolved, subject to the post-closing conditioned mentioned above. Wherefore, the Parties request that the Court grant this motion to dismiss the case by entering the form Stipulated Dismissal order submitted herewith.

Respectfully Submitted,

_____

Nancy A. Valentine (0069503)
Scott R. Lesser (0095403)
Miller Canfield Paddock & Stone, PLC
1100 Superior Avenue East, Suite 1750
Cleveland, Ohio 44114
(216) 716-5040 (Direct Phone)
(248) 879-2000 (Company)
(248) 879-2001 (Fax)
valentinen@millercanfield.com
lesser@millercanfield.com
Attorneys for Defendant/Counter-Plaintiff

_____

Jeffrey A. Kurz (75498)
42 N. Phelps St.
Youngstown, OH 44503
(330) 747-5879 (Phone)
(330) 743-2536 (Fax)
JeffKurz@hotmail.com
Attorney for Plaintiffs/Counter-Defendants

_____

James A. Vitullo (15388)
5232 Nashua Drive
Austintown, OH 44515-5122
330-207-8571
jamesavitullo@gmail.com
Attorney for Plaintiffs/Counter-Defendants

## IN THE COURT OF COMMON PLEAS
## FOR MAHONING COUNTY, OHIO

**CALIFORNIA PALMS, LLC**, et al.,

      Plaintiffs/Counter-Defendants,

*v.*

**PENDER CAPITAL ASSET BASED LENDING FUND I, L.P.**, et al.,

      Defendant/Counter-Plaintiffs.

Case No. 2018-cv-01015

Judge John M. Durkin

Magistrate Dominic DeLaurentis

**STIPULATED DISMISSAL ORDER**

---

This cause came before the Court upon a Joint Motion to Dismiss filed by Plaintiffs/Counter-Defendants California Palms, LLC and Sebastian Rucci, Defendant/Counter-Plaintiff Pender Capital Asset Based Lending Fund I, LP, and Third-Party Defendant California Palms Addiction Recovery Campus, Inc. Having reviewed and considered the motion, and being otherwise advised in the premises, THE COURT ORDERS THAT:

All claims of Plaintiffs California Palms, LLC and Sebastian Rucci are dismissed with prejudice and without costs.

All claims of Defendant Pender Capital Asset Based Lending Fund I, LP are dismissed without prejudice and without costs.

Notwithstanding the above dismissal, this Court retains jurisdiction to enforce the terms of the Settlement Agreement.

IT IS SO ORDERED.

                               _____

                               Judge John M. Durkin/Magistrate
                               Dominic DeLaurentis
                               Court of Common Pleas

Submitted and approved by:

_____
Nancy A. Valentine (0069503)
Scott R. Lesser (0095403)
Miller Canfield Paddock & Stone, PLC
1100 Superior Avenue East, Suite 1750
Cleveland, Ohio 44114
(216) 716-5040 (Direct Phone)
(248) 879-2000 (Company)
(248) 879-2001 (Fax)
valentinen@millercanfield.com
lesser@millercanfield.com
Attorneys for Defendant/Counter-Plaintiff

_____
Jeffrey A. Kurz (75498)
42 N. Phelps St.
Youngstown, OH 44503
(330) 747-5879 (Phone)
(330) 743-2536 (Fax)
JeffKurz@hotmail.com
Attorney for Plaintiffs/Counter-Defendants

_____
James A. Vitullo (15388)
5232 Nashua Drive
Austintown, OH 44515-5122
330-207-8571
jamesavitullo@gmail.com
Attorney for Plaintiffs/Counter-Defendants

31960245.2\157569-00001

## EXHIBIT 9 – LEASE SUBORDINATION AGREEMENT

[See following pages for form of Lease Subordination Agreement.]

## LEASE SUBORDINATION AGREEMENT

THIS SUBORDINATION AGREEMENT ("Agreement"), dated as of November 8, 2018 is by CALIFORNIA PALMS HOTEL, INC. ("Original Lessor"), CALIFORNIA PALMS, LLC, an Ohio limited liability company ("Owner"); CALIFORNIA PALMS ADDICTION RECOVERY CAMPUS, INC., an Ohio corporation ("Tenant") in favor of PENDER CAPITAL ASSET BASED LENDING FUND I, LP, a Delaware limited partnership ("Lender"); as follows:

Original Lessor and Tenant have entered into a certain lease dated January 15, 2017 (as it may be amended, restated or replaced from time to time, the "Lease"), pursuant to which Original Lessor leased to Tenant, and Tenant leased from Original Lessor the premises more particularly described in the Lease ("Premises") and located on the real property described in Exhibit A attached hereto (the "Secured Property"). Subsequently, Original Lessor transferred the Secured Property to the Owner apparently subject to the Lease and contemporaneously the Owner obtained financing from Lender, which is secured by a *Open-End Mortgage, Assignment of Rents and Security Agreement* (the "Mortgage") dated March 12, 2018 and recorded in the Office of the Mahoning County Recorder on March 15, 2018 at Instrument No. 201800005457.

Subsequent to the advance of financing to the Owner, Lender became aware of the Lease and as part of that certain Settlement Agreement and Release of even date herewith related to such financing and other disputes between Owner, Lender, Tenant and others, Tenant has agreed to subordinate the Lease to Lender's Mortgage and Lender has requested that Original Lessor, Owner and Tenant make certain warranties and agreements as hereinafter set forth. In consideration of the mutual benefits accruing to the parties hereto, the receipt of which is hereby acknowledged, the parties agree as follows:

1.     Subordination. The Lease is and at all times shall continue to be subject and subordinate to the lien of the Mortgage and to all advances made or to be made thereunder, and to any renewals, extensions, modifications or replacements thereof, unless Lender has filed a notice subordinating the lien of its Mortgage to the Lease. Lender specifically reserves the right to file such a notice at its sole election. Tenant shall not subordinate the Lease to any lien, claim, mortgage, or other encumbrance of any kind, except as provided in this paragraph, and any such other subordination shall be deemed a default under the Lease and this Agreement. Tenant agrees to execute and deliver to Lender, in form and substance satisfactory to Lender, such other instrument as Lender shall request in order to effectuate the provisions of this Agreement.

2.     Limitation on Liability. Nothing herein contained shall impose any obligation upon Lender to perform any of the obligations of Original Lessor or Owner under the Lease.

3.     Termination of Lease. In the event Lender (or any third party bidder) acquires title to the Secured Property either through foreclosure of the Mortgage (whether judicially or non-judicially under power of sale) or by deed in lieu thereof, then as of the date title to the Secured Property vests in Lender

(or any third party bidder), the Lease will automatically terminate and be of no further force or effect, and Tenant shall have no further rights thereunder. Lender (or any third party bidder at a foreclosure sale) shall acquire title to the Secured Property free and clear of any right, title or interest of Tenant. Tenant shall vacate the Premises and shall surrender possession thereof to Lender (or any third party bidder) without further notice or demand.

4.  Further Documents.  Tenant shall execute and deliver to Lender, in form and substance satisfactory to Lender, such other instruments as Lender shall request in order to effectuate the provisions of this Agreement.

5.  Successors and Assigns.  This Agreement shall inure to the benefit of and be binding upon the parties hereto, their successors and assigns, and the holder from time to time of the Guaranty.

6.  Attorneys' Fees.  If any legal action, arbitration or other proceeding is commenced to enforce any provision of this Agreement, the prevailing party shall be entitled to an award of its actual expenses, including without limitation, expert witness fees, reasonable attorneys' fees and disbursements.

7.  Notices.  All notices to Lender, Original Owner or Owner shall be by certified mail to the address given at the top of page one of this Agreement. All notices to Tenant shall be by certified mail to the Premises.

8.  Miscellaneous.  This Agreement may not be modified other than by an agreement in writing, signed by the parties hereto or by their respective successors in interest. Except as herein modified all of the terms and provisions of the Lease shall remain in full force and effect. In the event of a conflict between the Lease and this Agreement, the terms and provisions of this Agreement shall control. Nothing in this Agreement shall in any way impair or affect the lien created by the Mortgage or the other lien rights of Lender.

9.  Counterparts.  This Agreement may be executed in counterparts, which together shall constitute but one and the same instrument.

*[Signature Page Follows on the Next Page.]*

The undersigned agree and acknowledge that they are duly authorized to enter into this Agreement and have voluntarily done so.

**OWNER:**                                                      **TENANT:**

**CALIFORNIA PALMS, LLC, AN OHIO**          CALIFORNIA PALMS ADDICTION
**LIMITED LIABILITY COMPANY**                   RECOVERY CAMPUS, INC., an Ohio
                                                                corporation

By: _____                      By: _____
      Sebastian Rucci, _____                       Sebastian Rucci, _____

**ORIGINAL LESSOR:**

CALIFORNIA PALMS HOTEL, INC., an Ohio
corporatoin

By:     _____
      Sebastian Rucci, _____

STATE OF OHIO
COUNTY OF _____

      The foregoing instrument was acknowledged before me this ____ day of November, 2018 by Sebastian Rucci, _____ of **California Palms, LLC, an Ohio limited liability company** on behalf of the company.

                                  _____
                                    Notary Public
                                    Printed Name: _____
                                    My Commission
                                    Expires:_____

STATE OF OHIO
COUNTY OF _____

      The foregoing instrument was acknowledged before me this ____ day of November, 2018 by Sebastian Rucci, _____ of **California Palms Hotel, Inc., an Ohio corporation** on behalf of the corporation.

                                  _____
                                    Notary Public
                                    Printed Name: _____
                                    My Commission
                                    Expires:_____

19-40267-jpg    Doc 73    FILED 05/10/19    ENTERED 05/10/19 10:21:31    Page 84 of 86

STATE OF OHIO
COUNTY OF _____

       The foregoing instrument was acknowledged before me this ____ day of November, 2018 by Sebastian Rucci, an individual.

                     Notary Public:_____
                     Printed Name:_____
                     My Commission
                     Expires:_____

This instrument was prepared by
and when recorded return to:
Nancy A. Valentine
Miller, Canfield, Paddock and Stone, P.L.C.
1100 Superior Avenue East, Suite 1750
Cleveland, Ohio 44114

-4-

# EXHIBIT A

## DESCRIPTION OF PROPERTY

Situated in the Township of Austintown, County of Mahoning and State of Ohio;

And known as being Lot No.4 in Clarkins at Youngstown Plat No.1 as shown in Mahoning County Records of Plats Volume 61 Page 122, and more fully described as follows:

Beginning at the Southwest corner of Lot No.16 in the Oakwood Allotment as recorded in Record Volume 27 Page 43; thence South 2 Degrees 29 Minutes West along the East line of Lot 18 in the Young and Webb Plat No. 1 a distance of 60.00 feet to a point; thence North 87 degrees 31 minutes West along the South line of said Lot 18 a distance of 203.00 feet to a point on the East right-of-way of State Route 46; thence South 0 degrees 24 minutes East along said right-of-way a distance of 180.38 feet to a point; thence South 87 degrees 31 minutes East along said right-of-way a distance of 78.67 feet to a point; thence South 1 degree 57 minutes East along said right-of-way a distance of 271.40 feet to a point and the true place of beginning of the tract to be described; thence South 87 degrees 35 minutes East a distance of 237.36 feet to a point; thence North 52 degrees 25 minutes East a distance of 89.00 feet to a point on the South line of a 60 foot street known as Clarkins Drive; thence along said South line on an arc of a curve to the left in a Southeasterly direction with a central angle of 50 degrees 0 minutes a radius of 244.45 feet and a total arc length of 213.32 a distance of 80.00 feet to a point; thence South 3 degrees 55 minutes 56 seconds West a distance of 433.38 feet to a point on the North right-of-way line of Interstate Route 80; thence North 78 degrees 26 minutes West along said North line a distance of 182.00 feet to a point; Thence North 51 degrees 56 minutes West along said North line a distance of 102.85 feet to a point; thence North 2 degrees 29 minutes East along said North line a distance of 60.00 feet to a point; thence North 87 degrees 31 minutes West along North line a distance of 65.00 feet to a point on the East right-of-way line of State Route 46; thence North 21 degrees 19 minutes West along the said East line a distance of 22.58 feet to a point; thence North 1 degree 57 minutes West along said East line a distance of 249.60 feet to the true place of beginning and containing 3.009 acres of land more or less.

Commonly known as: 5455 Clarkins Dr., Youngstown, OH 44515
Tax Parcel No.:       48-042-0-063.000

32411557.1\157569-00001

19-40267-jpg    Doc 73    FILED 05/10/19    ENTERED 05/10/19 10:21:31    Page 86 of 86