**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



John P. Gustafson
United States Bankruptcy Judge

**Dated:  June 18 2019**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In re: | ) Case No. 19-40267-jpg |
| | ) |
| California Palms, LLC, | ) Chapter 11 |
| | ) |
| Debtor. | ) Judge John P. Gustafson |
| | ) |
| | ) Property Address and Parcel No.: |
| | ) Parcel No. 48-042-0-063.000 |
| | ) 1051 N. Canfield Niles Rd., Austintown, |
| | ) Ohio (aka 5455 Clarkins Drive, Austintown |
| | ) Township, Ohio) |

### ORDER APPROVING COMPROMISE

This matter having come before the Court on the *Joint Motion for Orders (A) Approving Compromise and, Thereafter, (B) Dismissing Bankruptcy Case* [Doc No. 100] ("Motion")[1] and *Supplement Joint Motion for Orders (A) Approving Compromise and, Thereafter, (B) Dismissing Bankruptcy Case* [Doc No. 112] (the "Supplement") on proper notice and the opportunity for a hearing, the Court being fully advised in the premises, there being good and sufficient cause to

---

[1] Capitalized terms not otherwise defined in this Order shall have the meanings ascribed to them in the Motion.

- 1 -

grant the relief requested, and the Court finding that the Settlement Agreement is fair, equitable, and in the best interest of the Debtor and the estate,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion, as modified by the Supplement, is granted to the extent set forth in this Order.

2.      The Settlement Agreement, as attached to this Order, is authorized and approved and shall be binding and enforceable in accordance with its terms.  The terms and conditions of the Settlement Agreement are incorporated into this Order in their entirety.

3.      Immediately upon entry of this Order, Debtor is authorized and directed to perform Debtor's obligations under, and to comply with, the terms of the Settlement Agreement. Debtor and Pender are authorized and directed to execute and deliver, and each is empowered to perform under, consummate, and implement, the Settlement Agreement, including, but not limited to, (a) delivering the *Notice Regarding the Bankruptcy Order and Stipulation and Agreed Order* to the State Court (as discussed in paragraph 4 of the Settlement Agreement) and (b) submitting the Adversary Dismissal Order to this Court for entry.

4.      The automatic stay is modified to the extent necessary for the parties to implement the Settlement Agreement upon entry of this Order, and this Order shall not be subject to the 14 day stay otherwise imposed by Federal Rule of Bankruptcy Procedure 4001(a)(3).

5.      The Court retains jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

6.      This Order shall be effective immediately upon its entry.

# # #

**ACKNOWLEDGED AND AGREED TO BY:**

*/s/ Nancy A. Valentine*
Nancy A. Valentine (0069503)
Miller Canfield Paddock & Stone, PLC
1100 Superior Avenue East, Suite 1750
Cleveland, Ohio 44114
(216) 716-5044 (company)
(216) 716-5043 (fax)
valentinen@millercanfield.com

and

Todd Holleman (0080070)
Ronald A. Spinner (Michigan P73198) (pro hac)
150 West Jefferson, Suite 2500
Detroit, MI 48226
Phone: (313) 496-7668
Fax: (313) 496-7500
holleman@millercanfield.com
spinner@millercanfield.com

*Attorneys for Pender Capital Asset Based Lending Fund I, L.P.* and *Pender Capital, Inc.*

*/s/ Richard G. Zellers*
Richard G. Zellers (0011764)
Richard G. Zellers & Associates
3695 Boardman-Canfield Road
Bldg. B, Suite 300
Canfield, OH 44406
(330) 702-0780
Fax : (330) 702-0788
Email: zellersesq@gmail.com

*Attorneys for Debtor*

## INSTRUCTIONS TO THE CLERK

Please serve the foregoing Order upon the parties listed below, as indicated:

Via the Court's Electronic Case Filing System:

Jeffrey Kurz     jeffkurz@hotmail.com, dc1095dt@yahoo.com
Sebastian Rucci     SebRucci@gmail.com
Ronald A. Spinner     spinner@millercanfield.com
United States Trustee     (Registered address)@usdoj.gov
Nancy A. Valentine     valentinen@millercanfield.com, waldroup@millercanfield.com
Joshua Ryan Vaughan     jvaughan@amer-collect.com, SAllman@AMER-COLLECT.COM;rschroeter@amer-collect.com;HouliECF@aol.com
Richard G. Zellers     zellersesq@gmail.com
Tiiara N. A. Patton ust401     tiiara.patton@usdoj.gov

and by first-class, U.S. mail, postage prepaid, on the following as listed on the Debtor's list of its 20 largest unsecured claims:

- 3 -

Hypercore
P.O. Box 840964
Dallas, TX 75284-0964

AT&T
P.O. Box 5019
Carol Stream, IL 60197-5019

Youngstown Water Dept.
P.O. Box 6219
Youngstown, OH 44501-6219

Ohio Bureau of Workers'
Compensation
Legal Division/Bankruptcy
Unit
PO Box 15567
Columbus, OH 43215-0567

Law Office of Jeff Kurz
42 N. Phelps Street
Youngstown, OH 44503-1130

Law Off Robert Schuerger
81 S. 5th Street, Suite 400
Columbus, OH 43215-4323

Dominion Energy
P.O. Box 26785
Richmond, VA 23261-6785

Ohio Edison
5001 NASA Blvd
Fairmont WV 26554

Vonage Business
3200 Windy Hill Rd, St 200
East Atlanta, GA 30339-5640

Ohio Edison
76 S. Main Street
Akron, OH 44308-1817

Law Office of James Vitullo
5232 Nashua Drive
Austintown, OH 44515-5122

Daniel R. Yemma
Mahoning County Treasurer
120 Market Street
1st Floor
Youngstown, OH 44503

33809969.2\157569-00001

- 4 -

This *Settlement Agreement and Release* ("**Agreement**") is entered into effective May 31, 2019, by PENDER CAPITAL ASSET BASED LENDING FUND I, LP, a Delaware limited partnership ("**Pender Fund**"), PENDER CAPITAL, INC., a California corporation ("**Pender Capital**" and together with Pender Fund, "**Pender**"); CALIFORNIA PALMS, LLC, an Ohio limited liability company ("**Borrower**"); CALIFORNIA PALMS, INC. FKA CALIFORNIA PALMS HOTEL, INC. FKA HOTEL CALIFORNIA, INC., an Ohio corporation ("**California Hotel**"); CALIFORNIA PALMS ADDICTION RECOVERY CAMPUS, INC., an Ohio corporation ("**CaliParc**"); and SEBASTIAN RUCCI, an individual ("**Guarantor**," and together with Borrower, the "**Borrower Parties;**" and Borrower Parties, California Hotel and CaliParc together are the "**Rucci Parties**;" and Pender and Rucci Parties together are the "**Parties**").

## RECITALS

A. On or about March 12, 2018, Borrower Parties executed certain documents including, without limitation, a *Promissory Note* (the "**Note**"), a *Mortgage and Security Agreement* (the "**Mortgage**"), an *Environmental Indemnity Agreement* (the "**Environmental Indemnity**"), and a *Guaranty* (the "**Guaranty**") (collectively, the "**Loan Documents**"), to evidence, obligate themselves, and secure a $4,000,000 commercial loan transaction (the "**Loan**").

B. The Loan and Mortgage relate to real estate located at 1051 N. Canfield Niles Rd., Austintown, Ohio (aka 5455 Clarkins Drive, Austintown Township, Ohio), as more particularly described on Exhibit 1 (the "**Real Estate**"), which is owned by Borrower and was formerly owned by California Hotel. Borrower, CaliParc, or both operate an inpatient behavioral health facility on the Real Estate.

C. At closing of the Loan, the $4,000,000 of Loan proceeds were used as follows:

(a) Pender delivered $3,187,052.00 to John A. Wise & Assoc., PLLC (through its agent, Amy Fryar) ("**JAW**"), who served as escrow agent in connection with closing of the Loan. JAW disbursed some of those funds to creditors of Borrower and other third parties on or about March 19, 2018. The funds held by JAW that were not disbursed on that date, including any unearned title insurance premiums and costs of endorsements, are referred to as the "**Title Company Funds**."

(b) Pender retained $475,000 in deposit, escrow and reserve funds (the "**Escrows**"), specifically composed of (i) $25,000 in real estate tax escrows, (ii) $20,000 in hazard insurance escrows, (iii) $420,000 in "holdbacks" (i.e., reserve funds), and (iv) $10,000 in the form of a deposit.

(c) Pender retained $347,948.00 in aggregate fees and costs due to Pender ("**Pender's Fees**") as origination, due diligence, and other related fees.

D. Borrower Parties filed the Borrower Parties Complaint (as defined in Recital S. below) commencing the action styled *California Palms, Inc., et al. v. Pender Capital Asset Based Lending Fund I, LP,* in the Mahoning County Court of Common Pleas ("**State Court**") as

Case No. 2018 CV 01015 (the "*Foreclosure Action*") and Pender Fund filed the Pender Counterclaim (as defined in Recital U. below) in response thereto and cross-claimed against CaliParc and other holders of liens against the Real Estate in the Foreclosure Action.

E.      Following extended litigation, on or about November 8, 2018, Borrower Parties, CaliParc and Pender Fund entered into the Settlement Agreement and Release (the "*State Court Settlement*"). In the State Court Settlement, the Borrower Parties and CaliParc released all claims against Pender Fund as of November 8, 2018, specifically including all claims arising out of and relating to the Loan that were or could have been asserted in the Foreclosure Action.

F.      On November 14, 2018, the State Court entered the Stipulation and Agreed Order Regarding Motion to Appoint Receiver, Pender's Fees, and Escrows and Holdbacks (the "*Stipulation*"), wherein the Borrower Parties and CaliParc stipulated and agreed that (i) Pender was and is entitled to apply the Escrows to the amounts due and owing under the Loan, (ii) Pender Fund was and is entitled to the Uncontested Fees (as defined in the Stipulation), and (iii) the title company should deliver Title Company Funds in the amount of $34,000 to Michael Lewis and the balance of the Title Company Funds to Pender Fund. The State Court approved the Stipulation.

G.      The Borrower Parties and CaliParc defaulted under the State Court Settlement, and remain in default of the State Court Settlement, by failing to pay Pender Fund the discounted payoff amount provided for in the State Court Settlement; and, as a result, on February 11, 2019, Pender Fund asked the State Court to enter an agreed judgment and decree of foreclosure and stipulated receiver order as provided in the State Court Settlement. The State Court scheduled a non-oral hearing on Pender Fund's requests for February 28, 2019.

H.      Prior to entry of the agreed judgment and decree of foreclosure and stipulated receiver order, Borrower filed a petition under chapter 11 of the Bankruptcy Code on February 27, 2019 (the "*Petition Date*"), thereby commencing its bankruptcy case styled *In re California Palms, LLC*, No. 19-40267 ("*Chapter 11 Case*") in the United States Bankruptcy Court for the Northern District of Ohio (the "*Bankruptcy Court*") and triggering the automatic stay.

I.      On March 11, 2019, Borrower, CaliParc and California Hotel filed the adversary proceeding styled *California Palms, et al. v. Pender Capital Asset Based Lending Fund I, LP, et al.,* Adv. Case No. 19-04010 (the "*Adversary Proceeding*") in the Chapter 11 Case against Pender.

J.      On April 11, 2019, Pender filed a motion to dismiss the Adversary Proceeding ("*Adversary Motion*"), to which Borrower, CaliParc and California Hotel subsequently responded, and Pender filed a reply in support of its Adversary Motion. The Adversary Motion remains pending.

K.      On March 19, 2019, Pender Fund filed the *Motion of Pender Capital Asset Based Lending Fund I, L.P. for Determination that Debtor California Palms, LLC Bankruptcy Case Is a Single Asset Real Estate Case Pursuant to Bankruptcy Code Section 101(51B)* (the "*SARE Motion*") and *Motion of Pender Capital Asset Based Lending Fund I, L.P. (A) to Dismiss This Chapter 11 Proceeding for Cause; or, in the Alternative, (B) for Relief from the Automatic Stay*,

(together with a reply and supplement and all exhibits and an appendix in support thereof, the "***Relief Motion***") in the Chapter 11 Case.

L. Borrower withdrew its opposition to the SARE Motion and, on April 23, 2019, the Court entered an Order granting the SARE Motion and determining that Borrower is a single asset real estate entity under the Bankruptcy Code; and, as such, Borrower had to make payments to Pender Fund under section 362(d)(3). Borrower could not make the required payments under section 362(d)(3) and is in default.

M. Borrower has opposed the Relief Motion. The Relief Motion remains pending.

N. On May 21, 2019, the State Court entered a Judgment against Guarantor, individually, in the amount of $4,170,000.00, plus interest at 22.0% per annum from and after October 1, 2018 ("***Rucci Judgment***").

O. On May 28, 2019, Borrower filed a notice of removal of the Foreclosure Action from State Court. On June 3, 2019, Pender Fund moved (the "***Remand Motion***") the Bankruptcy Court to remand the Foreclosure Action to State Court. The Remand Motion is scheduled for a hearing on June 10, 2019.

P. As of May 31, 2019, the aggregate amount owed by Borrower to Pender Fund under the Loan Documents is $ 4,967.009.25 ("***Loan Balance***"), including interest, default interest from and after May 1, 2018, reasonable attorneys' fees and costs from and after April 19, 2018, and other charges due and owing under the Loan Documents, exclusive of the prepayment premium of $ 233,333.33 (the "***Prepayment Fee***").

Q. "***Bankruptcy Code***" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532 and all section references in this Agreement are to the Bankruptcy Code unless otherwise indicated.

R. "***Bankruptcy Rules***" mean the Federal Rules of Bankruptcy Procedure and all rule references in this Agreement are to the Bankruptcy Rules unless otherwise indicated.

S. "***Borrower Parties Complaint***" means the *Verified Complaint*, commencing the Foreclosure Action and the Motion for Injunctive Relief, each filed on April 19, 2018 by the Borrower Parties in the Foreclosure Action, and any and all Claims raised or otherwise asserted in such Verified Complaint and Motion for Injunctive Relief.

T. "***Claims***" means any and all claims (as such term is defined in section 101(5) of the Bankruptcy Code), any and all manner of debts, accounts, warranties, representations, covenants, contracts, agreements, liabilities, obligations, expenses, damages, actions, claims, liabilities, counterclaims, demands, causes of action, suits, defenses, setoffs, sums of money, including attorneys' fees, offsets against obligations of any nature whatsoever, known or unknown, vested or contingent, alleged or unalleged, either now accrued or later maturing, in contract or in tort, at law or in equity, by reason of any matter, cause or thing, from the beginning of the world to and including the date of this Agreement.

U.　"***Pender Counterclaim***" means the Defendant's Verified Answer and Affirmative Defenses to Plaintiff's Verified Complaint and Counter-Plaintiff's Verified Counterclaim and Third-Party Complaint for Foreclosure and Other Relief filed on June 6, 2018 in the Foreclosure Action by Pender Fund.

V.　The Parties have agreed to fully and finally settle the Chapter 11 Case, the Relief Motion, the Adversary Proceeding, the Foreclosure Action, and any other Claims between or among them in accordance with the terms of this Agreement.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is acknowledged, the Parties agree as follows:

1.　**Recitals; State Court Settlement.** The Recitals to this Agreement are incorporated into this Agreement as substantive agreements and acknowledgements of the Parties, shall survive the dismissal of the Chapter 11 Case, and shall be and remain binding on the Parties, notwithstanding the filing of any other case or proceeding in State or Federal court. All terms and conditions of the State Court Settlement are incorporated herein by reference as if fully stated in this Agreement and are in full force and effect unless expressly modified, amended, or restated in this Agreement.

2.　**Representations, Acknowledgments and Covenants**. Each of the Rucci Parties represents, acknowledges and covenants that each of the following statements is true on the date of execution of this Agreement and shall remain true at all times thereafter until either the Discounted Payoff is paid in full (as provided herein) or the Loan Balance (calculated as set forth below) is satisfied and paid in full, in each case in accordance with the Wire Instructions provided in paragraph 5 below:

(a)　**Indebtedness**. As of May 31, 2019, Borrower and Guarantor (as set forth in the Rucci Judgment) are each liable to Pender Fund for the Loan Balance, calculated as follows:

| | | |
|---|---:|---:|
| Principal | $ | 4,000,000.00 |
| Interest | | 700,000.00 |
| Default interest | | 400,000.00 |
| Attorneys' Fees and Costs (thru and including April 30, 2019) | | 342,009.25 |
| Credit - Holdbacks | | (420,000.00) |
| Credit - Tax Escrow | | (25,000.00) |
| Credit - Insurance Escrow | | (20,000.00) |
| Credit - Deposit | | (10,000.00) |
| Total | $ | 4,967,009.25 |
| | | |

*plus* additional attorneys' fees incurred from and after April 30, 2019, *plus* Property Protection Payments (as defined in paragraph 6(b) below) and Additional Taxes, *plus* interest at the rate of 22% per annum (equal to $2,444.44 per diem) accruing from and

- 4 -

after May 31, 2019, all of which continue to be incurred or accrue. Each of the Parties acknowledges and agrees that the Loan Balance set forth in this paragraph 2 excludes the Prepayment Fee, which Prepayment Fee will be permanently waived upon entry of Chapter 11 Case Resolution Orders (defined in paragraph 3 below).

(b)     **Default Acknowledgment.** As of the date of this Agreement and since April 19, 2018, and upon entry of the Approval Order (defined below) Borrower and Guarantor acknowledge and agree, Borrower and Guarantor are and have been in default under the Loan Documents; and since January 30, 2019, and upon entry of the Approval Order Borrower Parties and CaliParc acknowledge and agree, the Borrower Parties and CaliParc are and have been in default of the State Court Settlement. Pender is not in default of its obligations under the State Court Settlement or otherwise.

(c)     **Release.** Paragraph 11 of the State Court Settlement released the Pender Parties (as defined in the State Court Settlement) from any and all Claims arising out of or in any way related to the Loan, the Loan Documents, the Real Estate or the Escrows, including those Claims that were or could have been asserted in the Foreclosure Action.

(d)     **Loan Disbursements and Retentions**. Pender was and is entitled to receive (i) the Title Company Funds remaining after the payment to Michael Lewis referred to in Recital F, (ii) the Uncontested Fees, (iii) the Escrows, and (iv) Pender's Fees, all of these amounts having been properly disbursed or retained at the closing of the Loan in March 2018.

(e)     **Good Faith.** As of the date of this Agreement, Pender and Pender's agents have acted at all times in a fair and reasonable manner, and in good faith, in connection with their administration and enforcement of the Loan Documents, their dealings with the Rucci Parties with respect to the Loan Documents, and their negotiations in connection with this Agreement, the State Court Settlement and any other transactions related to the Loan Documents, the State Court Settlement and/or this Agreement.

(f)     **Organizational Status.** Borrower, California Hotel, and CaliParc are duly formed and validly existing legal entities under the laws of their respective states set forth in the opening paragraph of this Agreement, and each of them is duly qualified and authorized to do business in any other state where it is required to qualify to do business.

(g)     **Authority of Rucci Parties to Execute Agreement.**

      (1)     The execution, delivery, and performance by Rucci Parties of this Agreement and the other documents referred to herein, which are required to be executed, delivered and performed by the Rucci Parties:

           a.     are within Rucci Parties' power and authority;

           b.     do not contravene Rucci Parties' Articles of Incorporation or Articles of Organization, as applicable, by-laws,

- 5 -

regulations, partnership agreements, operating agreements, or any amendments thereto;

c. do not, to the best of Rucci Parties' knowledge, contravene any laws;

d. except as provided herein, do not result in or require the creation of any lien, security interest, or other charge or encumbrance upon or with respect to any of the assets of any Rucci Party, including the Real Estate; and

e. will not cause any money owing on any other indebtedness, loan, note or other obligation of any Rucci Party to be accelerated or otherwise become due and payable.

(2) Subject to Bankruptcy Court approval in respect of Borrower, no authorization or approval or action by, and no notice to or filing with, any governmental authority or regulatory body is required for the due execution, delivery, or performance by the Rucci Parties of this Agreement or any of the agreements or documents referred to herein, except for the recording thereof, where necessary, to evidence or perfect the liens or security interests granted Pender or conveyances made to Pender in connection herewith and entry of Chapter 11 Case Resolution Orders.

(3) This Agreement, State Court Settlement and the other Loan Documents create and constitute legal, valid, enforceable, and binding obligations of the Rucci Parties, as appropriate, in accordance with their respective terms.

(h) **Consultation with Counsel.** After consulting with counsel of their choice, the Rucci Parties acknowledge, represent, and warrant that they have read this Agreement in its entirety and have apprised themselves of sufficient information to intelligently decide whether to execute this Agreement; that their decision to execute this Agreement is not predicated on or influenced by any statements or representations, written or oral, not set forth in this Agreement; that they clearly understand this Agreement and each of its terms; fully and unconditionally consent to the terms of this Agreement freely, voluntarily, with knowledge, and without duress; and have full and complete authority to sign and implement this Agreement, including taking any necessary corporate or other action to do so, without being in conflict with any applicable governing documents, contracts, law, judgments, or orders.

(i) **Bankruptcy.** None of the Rucci Parties has any present intent to file, or solicit or support the filing or re-filing of, any petition under the Bankruptcy Code with respect to any of the Rucci Parties or the Real Estate, and each of the Rucci Parties acknowledges and agrees that any such filing within one hundred eighty (180) days after

the date of the entry of Chapter 11 Case Resolution Orders would be in bad faith and solely for the purpose of frustrating Pender and the intent and purpose of this Agreement.

3.	**Closing Deliveries.** Upon execution of this Agreement by all Parties, which shall not occur later than June 7, 2019, at 12:00 PM EDT (the "*Execution Date*"), (a) Pender is authorized to file the *Joint Motion for Orders (A) Approving Compromise and, Thereafter, (B) Dismissing Bankruptcy Case* (the "*Motion*"), attached to this Agreement as **Exhibit A**, and (b) the Rucci Parties shall execute and deliver to counsel for the Rucci Parties (the "*Closing Deliveries*") (i) the Agreed Judgment Entry and Decree of Foreclosure (the "*Judgment*") attached to this Agreement as **Exhibit G**, (ii) Stipulated Receiver Order (the "*Receiver Order*"), attached to this Agreement as **Exhibit H**, and (iii) the Mutual Release, as defined and described in paragraph 5 of this Agreement. Each of the Parties agrees to fully prosecute and support the Motion and the entry of the proposed orders for (a) approval of this Agreement (the "*Approval Order*"), attached to this Agreement as **Exhibit B**, (b) granting the Adversary Motion dismissing the Adversary Proceeding with prejudice (the "*Adversary Dismissal Order*"), attached to this Agreement as **Exhibit C**, (c) dismissing the Chapter 11 Case (the "*Bankruptcy Dismissal,*" and with the Approval Order, the "*Chapter 11 Case Resolution Orders*"), attached to this Agreement as **Exhibit D**, and (d) granting the Remand Motion and remanding the Foreclosure Action to the State Court (the "*Remand Order*"), attached to this Agreement as **Exhibit E**, and (e) any related papers reasonably requested by Pender. Borrower and the other Rucci Parties will consent to and cooperate in seeking to have the Motion heard on an expedited basis by the Bankruptcy Court on **June 17, 2019,** and to obtain entry of the Chapter 11 Case Resolution Orders on or before **June 21, 2019**, authorizing and approving this Agreement and all exhibits to this Agreement. Notwithstanding anything contained herein or otherwise, the Rucci Parties shall not oppose and shall stipulate to and support entry of the Remand Order remanding the Foreclosure Action to the State Court at the hearing scheduled on the Remand Motion for June 10, 2019.

4.	**Date of Entry of Approval Order.** Upon entry of the Approval Order, Pender is authorized to (a) submit the Adversary Dismissal Order to the Bankruptcy Court; and (b) file a *Notice Regarding the Bankruptcy Order and Stipulation and Agreed Order* in the State Court (i) notifying the State Court of entry of (x) the Chapter 11 Case Resolution Orders in the Chapter 11 Case and (y) the Adversary Dismissal Order in the Adversary Proceeding, (ii) dismissing the Borrower Parties Complaint with prejudice, and (iii) notifying the State Court of the terms of the Chapter 11 Case Resolution Orders, and attaching the settlement agreement and all exhibits thereto (the "*State Court Notice and Stipulation*") generally in the form and substance attached to this Agreement as **Exhibit F**.

5.	**Discounted Payoff and Terms.** On or before August 15, 2019, at 5:00 PM EDT (the "*Payment Deadline*"), the Rucci Parties shall (together, the "*Settlement Conditions*"): (a) pay to Pender (and, up and until the Payment Deadline, Pender will accept) the sum of Four Million Fifty Thousand Dollars (**$4,050,000**) (the "*Discounted Payoff*") in full and final settlement of all amounts due under the Note, subject to Section 14; and (b) deliver to Pender's legal counsel counterpart signatures of each of the Rucci Parties to the Mutual Release (the "*Mutual Release*"), in the form attached to this Agreement as **Exhibit I**. Pender's agreement to accept the Discounted Payoff is effective only through the Payment Deadline, and is acceptable if, and only if, Debtor pays Pender the amount of the Discounted Payoff on or **before the Payment Deadline**. **Time is of the essence.** Any payment of the Discounted Payoff after the

Payment Deadline shall be treated as a payment on account only. The Note will continue to accrue interest, default interest that commenced on May 1, 2018, attorneys' fees and other charges as provided by the Note and as set forth in paragraph 2(a) of this Agreement through August 15, 2019 (and, in the event that the amount of the Discounted Payoff is not paid to Pender on or before the Payment Deadline, will continue to accrue or be incurred thereafter). The full amount due to Pender (including interest, default interest commencing May 1, 2018, attorneys fees', costs of collection and all other amounts due to Pender under the Loan Documents and as set forth in paragraph 2(a) of this Agreement and the Agreed Judgment Entry and Decree of Foreclosure), and not just the amount of the Discounted Payoff, will be due and payable in full if Debtor fails to pay the amount of the Discounted Payoff on or before the Payment Deadline; provided, however, that, upon entry of Chapter 11 Case Resolution Orders, Pender shall waive irrevocably the Prepayment Fee, as provided in paragraph 3 above. The Discounted Payoff shall be paid by wire transfer of immediately available federal funds in accordance with the following (the "***Wire Instructions***"):

| | |
|---|---|
| ABA Routing number | 122243761 |
| Swift Code: | CETYUS66 |
| Name: | 1st Century Bank |
| Address: | 1875 Century Park East, Suite 100, |
| | Los Angeles, CA 90067 |
| Beneficiary Account #: | 2100096235 |
| Beneficiary Account Name: | Pender Capital Management, LLC |

The Rucci Parties may not extend the Payment Deadline to pay the Discounted Payoff. Upon request of the Rucci Parties, Pender in its sole and absolute discretion may extend such Payment Deadline in writing and any such extension shall be subject to any terms and conditions required by Pender in its sole and absolute discretion, including, but not limited to, any extension fee and any written amendment to this Agreement.

6.     **Interim Payments.** The following Fee and Property Protection Payments (collectively, the "***Interim Payments***") shall be paid on or before **June 30, 2019**; and failure to timely pay the Interim Payments shall be an immediate Default (as defined below) under this Agreement without notice, demand or a right to cure of any kind, and Pender immediately shall be entitled to enforce all its rights and remedies hereunder:

(a)     Debtor shall pay an extension fee in lieu of adequate protection payments due under section 362(d)(3) of the Bankruptcy Code, in the amount of **$50,000.00** (the "***Fee***"). The Fee shall be deemed fully earned as of the date of execution of this Agreement and shall not be credited against the Discounted Payoff; and

(b)     The Borrower shall pay, or shall cause the other Rucci Parties to pay, all accrued and due real estate taxes and any accrued and due utility obligations, including, but not limited to, sewer, water, gas, electric, telecommunications, and internet services (the "***Property Protection Payments***"), as provided in the Lease Agreement dated January 15, 2017, by and between California Hotel (predecessor-in-interest to Borrower), and CaliParc. Any such payments shall not be credited against the Discounted Payoff.

- 8 -

In addition to payment of the Interim Payments, the Rucci Parties timely shall pay those real estate taxes due to the Mahoning County Auditor that are accrued and not yet due on or before July 31, 2019 (the "***Additional Taxes***"), or the failure to pay such Additional Taxes will be an immediate Default without notice, demand or a right to cure of any kind and Pender immediately shall be entitled to enforce all its rights and remedies.

7.    **Financing.** On or before July 12, 2019, the Rucci Parties shall provide Pender with copies of any and all firm loan term sheets, without unrealistic contingencies, or other similar evidence of ability to fund the Discounted Payoff. Any proposed closing in such documents of such financing must take place through a national commercial title insurance company or other escrow agent, in each case whose identity is subject to Pender's reasonable approval and, subject to the terms and conditions of Pender's escrow instruction letter to such title company or escrow agent as described in paragraph 11 of this Agreement.

8.    **Rucci Judgment**. Unless and until a Default occurs under this Agreement, Pender shall not seek to collect or otherwise satisfy the Rucci Judgment directly from Guarantor (except to the extent Guarantor becomes a debtor under the Bankruptcy Code, Pender is reasonably required to take any actions to preserve its rights under the Rucci Judgement, or as otherwise necessary to implement the terms of this Agreement). Upon timely satisfaction of the Settlement Conditions, and as provided in paragraph 10 of this Agreement, Pender will file a satisfaction and release of the Rucci Judgment. Upon Default and entry of the Judgment and, if applicable the Receiver Order by the State Court, and passage of thirty (30) days from the date of entry of the Judgment and, if applicable the Receiver Order, Pender will file a partial satisfaction and release of the Rucci Judgment in the amount of the Prepayment Fee only.

9.    **Release of Pender Parties**. Upon execution of this Agreement, the Rucci Parties on each of their own behalves and on behalf of their parents, subsidiaries, and other affiliates, predecessors, successors and assigns, their respective officers, directors, employees, agents, attorneys, and other representatives, trustees, and heirs hereby release and forever discharge Pender Parties (defined below) and JAW from any and all Claims arising out of or in any way related to the Loan, the Loan Documents, the Real Estate, the Escrows, the State Court Settlement, including those Claims that were or could have been asserted in the Foreclosure Action, Adversary Proceeding or Chapter 11 Case, or otherwise, *except for* any Claims that Pender breached this Agreement. "***Pender Parties***" means, individually and collectively, (i) Pender; (ii) Pender's parents, subsidiaries, and other affiliates; (iii) all predecessors, successors, and assigns of any of the foregoing; (iv) all servicers acting on behalf of any of the foregoing; and (v) each of their respective officers, directors, employees, agents, attorneys, and other representatives.  Each of the Rucci Parties agrees to indemnify and hold harmless each of the Pender Parties for any Claims arising or related to any breach of this paragraph 9 by any of the Rucci Parties.

10.   **Effect of Settlement.** Upon timely satisfaction of the Settlement Conditions as provided in paragraph 5 of this Agreement, and the timely payment of the Interim Payments, and passage of ninety-five (95) days from receipt of the Discounted Payoff (a) Pender's legal counsel will deliver a fully-executed Mutual Release to the Rucci Parties' legal counsel, and (b) provided no Default has occurred, and passage of ninety-five (95) days from receipt of the Discounted Payoff (i) Pender's legal counsel will deliver all originals of the Receiver Order and Judgment to

the Rucci Parties' legal counsel without first seeking entry, (ii) Pender shall cause the dismissal of the Pender Counterclaim to be amended such that the Pender Counterclaim is dismissed with prejudice and without costs, and (iii) Pender shall file a satisfaction and release of the Rucci Judgment.

11.    **Collateral Releases.** If the Rucci Parties timely pay or cause the payment of the Discounted Payoff in whole or in part through new financing that requires the Rucci Parties to provide any new lender a first priority, properly perfected mortgage lien in the Real Estate, and if such new financing utilizes a national commercial title insurance company or other title company meeting Pender's reasonable approval, Pender will provide a reasonable escrow instruction letter to such commercial title insurance company whereby Pender agrees to, upon execution by such title company of the escrow instruction letter and satisfaction of all of the Settlement Conditions, among other terms and conditions contained therein, authorize the recordation of (a) the release and discharge of Mortgage, and (b) any UCC-1 Financing Statements or UCC Fixture Filings in favor of Pender against the Real Estate or the Rucci Parties (collectively, the "*Collateral Releases*"). If the Discounted Payoff is paid by the Rucci Parties without use of a new lender who requires a first priority mortgage lien in the Real Estate, then Pender need not record the Collateral Releases until ninety-five (95) days after Pender receives the Discounted Payoff, and then only if no Default has occurred. In either event, and after the passage of ninety-five (95) days after Pender receives the Discounted Payoff, and if no Default has occurred, Pender will deliver the Mutual Release as provided in paragraph 5. Notwithstanding anything contained in this Agreement, the Rucci Parties must request the Collateral Releases by notice to counsel for Pender as provided in paragraph 15.

12.    **Default.** It is a "*Default*" under this Agreement immediately if any of the following occurs and without notice, demand or right to cure of any kind: (a) Pender does not receive timely the Discounted Payoff as provided in paragraph 5 of this Agreement, signatures to the Mutual Release or both, (b) the Rucci Parties fail to pay the Interim Payments or Additional Taxes as provided in paragraph 6 of this Agreement, provided, that with respect to *only* the Interim Payments related to electric and cable and internet utilities, the Rucci Parties have ten (10) days to cure any failure to pay those specific Interim Payments, but no notice of default is required, (c) any Rucci Party violates any representation, warranty, term or condition of this Agreement, (d) the Rucci Parties' or their counsel, as applicable, do not execute and deliver signatures to the Motion, Approval Order, Adversary Dismissal Order, the Remand Order, Judgment, Receiver Order, State Court Notice and Stipulation, Mutual Release, or any one of the Exhibits to this Agreement by the Execution Date or within three (3) days of entry of the Approval Order if execution is not required on the Execution Date; (e) any Rucci Party files any paper in the Bankruptcy Court, Foreclosure Action or any other Court not specifically contemplated by this Agreement or seeking to appeal or otherwise overturn any order or judgment entered by the Bankruptcy Court or State Court, (f) there is commenced any other legal action against or impairing or impeding the interests of Pender and such lawsuit is not dismissed with prejudice within ten (10) days of the filing of such suit; (g) any bankruptcy or insolvency petition, or any assignment for the benefit of creditors, or similar insolvency proceeding is filed by or against any Rucci Party, or in connection with the Real Estate, or in which the Real Estate is or may be an asset; (h) any Rucci Party seeks, or a court of competent jurisdiction or any trustee or receiver for any Rucci Party makes or alleges that the Discounted Payoff or any other payment or transfer contemplated by this Agreement constitutes a preference or fraudulent or

voidable transfer, or otherwise should be set aside, held ineffective or subordinated; (i) any action or proceeding is commenced with respect to any Rucci Party relating to the Real Estate and the operations of it, or any such action or proceeding is threatened by any party, except actions filed by any Rucci Party to assist in the certification process of the rehabilitation center currently occupying the Real Estate; or (j) any Rucci Party transfers, quit-claims, or sells the Real Estate to any other party without Pender's consent or prior to satisfying the Settlement Conditions and recordation of the Collateral Releases or fails to keep the Real Estate free and clear of liens and encumbrances and to otherwise maintain and protect the Real Estate in accordance with the terms and conditions of the Mortgage other than those that may exist as of the date of this Agreement.

13.     **Remedies.** After the occurrence of a Default and without notice, demand or right to cure of any kind, in addition to any other right or remedy that Pender may have, Pender and its counsel may take any and all actions in the State Court necessary to cause the (a) the Judgment, (b) Receiver Order, or (c) both to be entered in the Foreclosure Action. Further, to the extent a dismissal of the Pender Counterclaim has been submitted or entered, Pender shall be entitled to withdraw the motion and, if necessary, have the Pender Counterclaim reinstated. The Rucci Parties may not impede, impair, contest, contest the substance or otherwise oppose Pender's submission or the court's entry of the Judgment or Receiver Order, any activities of the receiver in the Foreclosure Action, including any sale of the Real Estate, the Judgment, the validity or enforceability of the Loan and the Loan Documents, the amount of the Loan Balance as provided in paragraph 2(a), reinstatement of the Pender Counterclaim, or any other matter alleged by Pender in the Foreclosure Action, and the Chapter 11 Case Resolution Orders shall prohibit and enjoin the Rucci Parties from taking any such actions.

14.     **Disgorgement.** To the extent any payment received by Pender is determined to be a preference, fraudulent transfer or otherwise by a court of competent jurisdiction which requires Pender to disgorge such payment, then such payment will be treated as never having occurred and any obligations under the Loan Documents shall be reinstated.

15.     **CaliParc Lease; Rucci and Rucci Law Office.** Upon the occurrence of a Default under this Agreement, the Lease Agreement dated January 15, 2017 and any other lease or rental agreement (the "*Lease(s)*") by, between or among CaliParc or any successor entity or tenant filling a similar role with respect to the Real Estate, on the one hand, and Borrower or California Hotel, or any successor entity, on the other hand, shall terminate, automatically and without notice of any kind, and CaliParc and, except for the other Rucci Parties as provided below in this paragraph, any other entities occupying the Real Estate shall vacate the Real Estate not later than October 14, 2019, unless Pender Fund otherwise agrees in writing at the time of such Default. Guarantor, individually and on behalf of his law office, each of the other Rucci Parties, except CaliParc as provided above in this paragraph, and all entities in which Guarantor holds an interest or that he controls, agrees to vacate the Real Estate within thirty (30) days after any Default, regardless of whether notice has been given. The Rucci Parties shall keep the Real Estate free and clear of liens and encumbrances unless and until all Settlement Conditions are timely satisfied, and shall otherwise maintain and protect the Real Estate in accordance with the terms and conditions of the Mortgage and in the same condition, order, and repair as existed as of the date of this Agreement first stated above.

- 11 -

16.	**Debtor-Creditor Relationship; No Duty**. Rucci Parties and Pender have a debtor-creditor relationship. This relationship is not, and may not be construed to be, any other kind of relationship, including a joint venture, partnership or fiduciary relationship. Although Pender has certain rights under this Agreement and the Loan Documents, these rights (1) are exclusively for Pender's protection and benefit as a creditor, (2) may, but need not, be exercised by Pender in its sole discretion, and (3) are not for the benefit of any Rucci Party. Neither Pender, nor any firm, entity, agent or professional retained by Pender, has a duty of disclosure, loyalty or care to any Rucci Party. Rucci Parties have relied and will rely exclusively on their own judgment with respect to legal, financial, Real Estate-related and other matters.

17.	**Notices:** All notices, demands, certificates, requests or other communications under this Agreement shall be in writing by email to the email addresses listed below and by overnight courier service, delivery charges prepaid, or facsimile transmission (if the sender's system can confirm receipt of the facsimile transmission) or delivery addressed to the appropriate notice address set forth below and deemed to be given or made when delivered or twenty-four (24) hours after being deposited in the mail with postage prepaid by registered or certified mail; provided however that notices from Rucci Parties to Pender pursuant to any of the provisions of the Loan Documents shall not be effective until received by Pender and Pender's counsel and that Pender and the Rucci Parties shall provide an electronic copy of any notice to the emails set forth below. The parties and any other Person to receive notices as provided in this Agreement or the other Loan Documents may, by notice given hereunder, designate any further or different addresses to which subsequent notices, demands, certificates, requests or other communications shall be sent.  The notice addresses for Pender and the Rucci Parties are as follows:

If to Pender:

With Copy to:

**Zach Murphy**, Co-Founder | Chief Investment
Officer
Pender Capital
11766 Wilshire Blvd, Suite 460
Los Angeles, CA 90025
Phone: 310-853-8001
Email: zach@PenderCapital.com

**Nancy A. Valentine, Esq.**
Miller, Canfield, Paddock and Stone, PLC
1100 Superior Avenue East, Suite 1750
Cleveland, Ohio 44114
Phone:  216-716-5040
Fax:	248-879-2001
Email: valentinen@millercanfield.com

And

**Scott Lesser, Esq.**
Miller, Canfield, Paddock and Stone, PLC
840 W. Long Lake Road, Suite 150
Troy, Michigan 48098
Phone:  248-267-3319
Fax:	248-879-2001
Email: lesser@millercanfield.com

- 12 -

If to Rucci Parties:

Mr. Sebastian Rucci
5455 Clarkins Drive
Youngstown, OH 44515
Email: sebrucci@gmail.com and
Sebastian@caliparc.com

With a copy to:

Jeffrey A. Kurz
42 N. Phelps St.
Youngstown, OH 44503
Phone: (330) 747-5879
Fax: (330) 743-2536
Email: JeffKurz@hotmail.com

James A. Vitullo
5232 Nashua Drive
Austintown, OH 44515-5122
Phone: 330-207-8571
Email: jamesavitullo@gmail.com

Richard G. Zellers, Esq.
3695 Boardman-Canfield Road
Bldg. B, Suite 300
Canfield, OH 44406
Phone: 330-702-0780
Fax: 330-702-0788
Email: zellersesq@gmail.com

18. **Full Agreement**: This Agreement, together with its exhibits, incorporates all negotiations and understandings of the Parties, and supersedes all prior and contemporaneous writings, relating to its subject matter. There are no unwritten agreements, representations or warranties by or between the Parties. The Agreement may not be modified, altered, or amended except by an agreement in writing signed by all Parties affected by such modification, alteration or amendment or as otherwise provided in this Agreement.

19. **Counterparts**: This Agreement may be signed in any number of duplicate originals, and each will be deemed an original. This Agreement may be signed by electronic, scanned or facsimile signature (though the Parties do not waive the right to receive actual original signatures where required for recording, authentication or other purposes), and each such signature will be deemed an original.

20. **Governing Law and Construction; Jurisdiction**: This Agreement is governed by the laws of the state of Ohio, without regard to any conflict of laws principles adopted by the courts of this state. Any and all actions concerning any dispute arising under or relating to this Agreement after dismissal of the Bankruptcy Case must be filed in the State Court or, if the State Court should lack or decline to exert jurisdiction over any action, in a state or federal court sitting in the State of Ohio. All Parties have had enough time to review this Agreement before signing, including with access to competent legal counsel of their choice, and have negotiated this Agreement at arms-length. No fraud, duress, undue influence or coercion of any kind was exercised by any Party or its agents on any other Party. Accordingly, no provision of this Agreement will be subject to the principle of construing its meaning against the drafter. Titles

- 13 -

and captions in this Agreement merely identify the relevant portions, and do not modify the meaning of this Agreement's provisions.

21.     **Severability**: Wherever possible, each provision of this Agreement will be interpreted so as to be valid, effective and enforceable under applicable law. If not possible, however, then the portion of the clause or provision that is not valid, effective or enforceable under applicable law will be deemed stricken from this Agreement. The remainder of any such clause or provision, and the balance of this Agreement, will remain valid and in full force and effect, so long as that remainder can be given effect without the invalid clause or provision and without changing the meaning of the remainder.

22.     **WAIVER OF APPEAL RIGHTS. THE RUCCI PARTIES WAIVE ANY AND ALL DEFENSES WHICH THEY HAVE, OR MAY CLAIM TO HAVE, TO THE JUDGMENT OR RECEIVER ORDER. THE RUCCI PARTIES WAIVE ANY AND ALL RIGHTS OF APPEAL, CLAIMS OF APPEAL OR OTHER RIGHTS TO CHALLENGE, UPON ENTRY BY THE APPLICABLE COURT, TO EACH OF THE APPROVAL ORDER, THE ADVERSARY DISMISSAL ORDER, THE BANKRUPTCY DISMISSAL, THE REMAND ORDER, THE JUDGMENT, THE RUCCI JUDGMENT OR THE RECEIVER ORDER.**

23.     **JURY WAIVER. THE PARTIES KNOWINGLY AND UNCONDITIONALLY WAIVE ALL CONSTITUTIONAL AND OTHER RIGHTS TO A JURY TRIAL IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS THE LOAN, THE LOAN DOCUMENTS, THE REAL ESTATE THE STATE COURT SETTLEMENT OR THE AGREEMENT. RATHER, ANY ACTION OR PROCEEDING WILL BE HEARD BY A COURT OF COMPETENT JURISDICTION SITTING WITHOUT A JURY. BORROWER PARTIES HAVE HAD THE OPPORTUNITY TO REVIEW THE EFFECT OF THIS PROVISION WITH LEGAL COUNSEL BEFORE SIGNING.**

19-40267-jpg    Doc 117    FILED 06/18/19    ENTERED 06/18/19 10:24:41    Page 18 of 104

The undersigned agree and acknowledge that they are duly authorized to enter into this Agreement and have voluntarily done so.

**ACKNOWLEDGED AND AGREED TO BY:**

**PENDER:**

PENDER CAPITAL ASSET BASED LENDING FUND
I, LP, a Delaware limited partnership

By: _____
Name: Zachary Murphy
Its: MANAGING DIRECTOR

**DEBTOR:**

CALIFORNIA PALMS, LLC, an Ohio limited
liability company

By: _____
      Sebastian Rucci
Title: Manager_____

**GUARANTOR:**

_____

SEBASTIAN RUCCI, INDIVIDUALLY

CALIFORNIA PALMS ADDICTION RECOVERY
CAMPUS, INC., an Ohio corporation

By: _____
      Sebastian Rucci
Title: _____

California Palms, Inc. fka California Palms
Hotel, Inc., an Ohio corporation

By: _____
      Sebastian Rucci
Title: _____

The undersigned agree and acknowledge that they are duly authorized to enter into this Agreement and have voluntarily done so.

ACKNOWLEDGED AND AGREED TO BY:

PENDER:

PENDER CAPITAL ASSET BASED LENDING FUND
I, LP, a Delaware limited partnership

By: _____

Name: Zachary Murphy

Its: _____

DEBTOR:

CALIFORNIA PALMS, LLC, an Ohio limited
liability company

By: _____

Sebastian Rucci

Title: Manager _____

GUARANTOR:

SEBASTIAN RUCCI, INDIVIDUALLY

CALIFORNIA PALMS ADDICTION RECOVERY
CAMPUS, INC., an Ohio corporation

By: _____

Sebastian Rucci

Title: President _____

California Palms, Inc. fka California Palms
Hotel, Inc., an Ohio corporation

By: _____

Sebastian Rucci

Title: President _____

19-40267-jpg    Doc 117    FILED 06/18/19    ENTERED 06/18/19 10:24:41    Page 20 of 104

## EXHIBITS

A.    Joint Motion for Orders (A) Approving Compromise and, Thereafter, (B) Dismissing Bankruptcy Case

B.    Approval Order

C.    Adversary Dismissal Order

D.    Bankruptcy Dismissal

E.    Remand Order

F.    Notice Regarding the Bankruptcy Order and Stipulation and Agreed Order

G.    Agreed Judgment Entry and Decree of Foreclosure

H.    Stipulated Receiver Order

I.    Mutual Release

33749538.5\157569-00001

# EXHIBIT A – SETTLEMENT MOTION

[See following page(s) for form of *JOINT MOTION FOR ORDERS (A) APPROVING COMPROMISE AND, THEREAFTER, (B) DISMISSING BANKRUPTCY CASE*

]

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| In re: | ) Case No. 19-40267-jpg |
| | ) |
| California Palms, LLC, | ) Chapter 11 |
| | ) |
| Debtor. | ) Judge John P. Gustafson |
| | ) |
| | ) Property Address and Parcel No.: |
| | ) Parcel No. 48-042-0-063.000 |
| | ) 1051 N. Canfield Niles Rd., Austintown, |
| | ) Ohio (aka 5455 Clarkins Drive, Austintown |
| | ) Township, Ohio) |

**JOINT MOTION FOR ORDERS (A) APPROVING COMPROMISE AND,
THEREAFTER, (B) DISMISSING BANKRUPTCY CASE**

California Palms, LLC ("Debtor") and Pender Capital Asset Based Lending Fund I, L.P.

("Pender" and together with Debtor, "Movants") file this *Joint Motion for Orders (A) Approving*

*Compromise and, Thereafter, (B) Dismissing Bankruptcy Case* ("Motion"). In support of this

Motion, the Movants respectfully represent as follows:

I. **INTRODUCTION**

1.      This has been a challenging case. This single asset real estate Debtor, its tenant,

California Palms Addiction Recovery Campus, Inc. ("CaliParc"), Sebastian Rucci ("Guarantor")

(owner of both Debtor and CaliParc), and Debtor's lender, Pender, have been embroiled in a

state court action and this bankruptcy case for over a year involving financing provided by

Pender to Debtor secured by the real property noted in the case caption ("Real Estate"). The

parties have finally reached a settlement ("Settlement Agreement," attached as Exhibit 2),[1]

---

[1] Capitalized terms not defined in this Motion shall have the meanings ascribed to them in the
Settlement Agreement. The full terms of the settlement are set forth in the Settlement
Agreement. The Motion sets forth a brief summary of certain of the terms, but does not in any
way modify the terms of the Settlement Agreement. The Movants encourage all interested
parties to read the entire Settlement Agreement.

- 1 -

however, which they believe provides a viable path forward for each of them. The Debtor believes it has arranged refinancing of the Real Estate, which will enable it to repay its Loan from Pender, resume its operations, and pay its creditors in the ordinary course of business without the need for reorganization under the Bankruptcy Code. Pender has agreed to accept a reduced payoff of the amount it is due to accommodate the Debtor and to avoid further litigation expense if the reduced payoff can be made by an agreed-upon date certain.

2.      The Movants thus ask this Court to enter an order approving the settlement under Bankruptcy Rule 9019 and, immediately thereafter, an order dismissing the bankruptcy case.

## II.      JURISDICTION AND VENUE

3.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.  Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The primary statutory authority for the relief sought herein is sections 105(a), 305(a), 349(b), and 1112(b) of title 11 of the United States Code ("Bankruptcy Code").

## III.      BACKGROUND

### A.      The Foreclosure Action

4.      Debtor is an Ohio limited liability company that does business and owns commercial property in Mahoning County, Ohio, including the Real Estate.  Pender is a Delaware limited partnership that loaned Debtor four million dollars.  The Loan is secured by a Mortgage on Debtor's Real Estate.  Pender disbursed the Loan proceeds, less fees and holdbacks, which were used to pay off a loan by a prior lender to another entity owned by Guarantor.

5.      Debtor sued Pender ("Foreclosure Action") in Mahoning County state court ("State Court"), essentially claiming that Pender misled Debtor about the terms of the Loan. Pender answered and asserted counterclaims and third-party claims.

19-40267-jpg    Doc 117    FILED 06/18/19    ENTERED 06/18/19 10:24:41    Page 24 of 104

6. On November 8, 2018, Debtor, CaliParc, and Guarantor (collectively, the "Settlement Parties") executed a settlement agreement ("State Court Settlement"). The State Court acknowledged and agreed to enforce the State Court Settlement when it entered a stipulated order entered November 14, 2018 ("Stipulation").

7. The State Court Settlement was not consummated, though the Movants disagree about the reason why this occurred. The Settlement Parties claim the State Court Settlement failed because the State Court Settlement did not provide them sufficient time to refinance and because Pender did not cooperate in a potential refinancing they had arranged. Pender denies this and asserts that the Settlement Parties simply were unable to refinance, and thus could not live up to their end of the bargain. In any event, Pender asked the State Court in the Foreclosure Action to enter the Agreed Judgment and Decree of Foreclosure and Stipulated Order Appointing Receiver as provided under the State Court Settlement. The State Court issued a Notice of Assignment on February 12, 2019, that it had scheduled a non-oral hearing on the request to enter the proposed orders on February 28, 2019.

8. Debtor filed its bankruptcy petition and a proposed plan of reorganization on February 27, 2019, one day before the scheduled State Court hearing in the Foreclosure Action, commencing this bankruptcy case.

**B. The Bankruptcy Case**

9. On March 11, 2019, Debtor filed an adversary complaint commencing Adversary Proceeding Number 19-04010 ("Adversary Proceeding"), asserting claims similar to those it asserted in the Foreclosure Action. Pender filed a motion to dismiss the Adversary Proceeding on April 11, 2019. Debtor responded to the motion to dismiss on April 24, 2019, and Pender replied on April 27. [Adversary Proceeding Doc. Nos. 9, 10, 11.] The Adversary Proceeding remains pending.

- 3 -

10.     Debtor amended its bankruptcy petition on March 13, 2019. [Doc. No. 15.]

11.     Pender filed a motion to prohibit use of cash collateral on March 12, 2019, which this Court granted by an agreed order on March 21, 2019. [Doc. Nos. 11, 30.]

12.     On March 19, 2019, Pender filed (1) a motion to dismiss this case, or, alternately, for stay relief [Doc. No. 19], (2) a motion for a determination that Debtor is a single asset real estate ("SARE") debtor [Doc. No. 20], and (3) an appendix of material documents to these motions [Doc. No. 21]. The Court granted the SARE motion on April 23, 2019. [Doc. No. 50.] The Court set the motion to dismiss for an evidentiary hearing on June 17, 2019. [Doc. No. 52.] On May 30, 2019, Pender filed a supplement to the motion to dismiss, noting that Debtor had not made the interest payment required under Bankruptcy Code section 362(d)(3)(B).

13.     On April 19, 2019, Debtor filed a motion to sell its property under section 363 of the Bankruptcy Code. [Doc. No. 49.]   Both Pender and the United States Trustee filed objections. [Doc. Nos. 74, 75.] The Debtor then withdrew this motion. [Doc. No. 76.]

14.     Also on April 19, Debtor filed a motion to reject the State Court Settlement. [Doc. No. 47.] Pender objected. [Doc. No. 73.] This motion is also set to be heard on June 17, though it will be moot if the Court grants this Motion. [Doc. No. 79.]

15.     On May 28, 2019, Debtor filed a notice of removal of the Foreclosure Action. [Doc. No. 88.] The Court set a telephonic hearing on this notice for June 10. [Doc. No. 90.] The Court also set for hearing on June 10 its *sua sponte* motion to show cause why the notice of removal should not be struck for being improperly filed. [Doc. No. 91.] Pender filed a motion to remand the Foreclosure Action, which is also set for hearing on June 10. [Doc. Nos. 94, 97.]

- 4 -

### C. The Settlement Agreement

16. The Settlement Agreement allows Debtor to resolve Pender's claim against it in the discounted amount of $4,050,000 and provides for one interim $50,000 payment from Debtor to Pender in lieu of the payment required under section 362(d)(3)(B) of the Bankruptcy Code.

17. The Settlement Agreement provides for, among other things, (1) dismissal of this bankruptcy case and the Adversary Proceeding with prejudice, (2) providing notice of these acts to the State Court and seeking to have it dismiss Debtor's complaint in the Foreclosure Action, (3) payment of taxes and utilities currently due and owing, and (4) mutual releases between Movants and other parties.

## IV. ARGUMENT

### A. The Court Should Approve the Settlement Agreement

18. The Sixth Circuit set forth the test for approval of settlements in *Bard v. Sicherman (In re Bard)*, 49 Fed. Appx. 528, 530 (6th Cir. 2002). The *Bard* court began by noting that the Supreme Court "has instructed bankruptcy courts engaged in making such determinations to 'form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.'" *Id.* (quoting *Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)). The Sixth Circuit then listed the following factors as bearing on this determination:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

- 5 -

*Id.*

19.     Movants submit that the Settlement Agreement more than meets the standard set by *Bard.* A contested plan process (likely in this contentious case) would be highly expensive and uncertain. Although Pender maintains it is unlikely that the Debtor could confirm a plan without Pender's consent for many reasons, it is nevertheless not inconceivable once Debtor completes its refinancing. On the other hand, Pender asserts (and Debtor disputes) that Pender has asserted a strong case for dismissal or for stay relief because Debtor has no funds on hand, currently is receiving virtually no income, and, as of the filing of this Motion, has neither filed a confirmable plan nor commenced non-default interest payments. Because of this, Pender believes it would be granted, at a minimum, stay relief under Bankruptcy Code 362(d)(3).

20.     The Settlement Agreement is the product of difficult and lengthy, arm's-length negotiations between the Movants. Finally, as joint proponents of this Motion, Movants have stipulated that sufficient "cause" exists to grant the relief requested. Consequently, the Settlement Agreement and accompanying dismissal are both consensual and the compromise more than satisfies the *Bard* standard. It should be approved.

### B.     Cause Exists to Dismiss this Case

21.     Section 305(a) of the Bankruptcy Code states that

> The court, after notice and a hearing, may dismiss a case under this title . . . at any time if
>
> (1) the interests of creditors and the debtor would be better served by such dismissal . . . .

11 U.S.C. § 305(a).

22.     Similarly, Bankruptcy Code section 1112(b)(1) states that, with exceptions not applicable here,

- 6 -

> on request of a party in interest, and after notice and a hearing, . . . the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . . .

11 U.S.C. § 1112(b)(1).[2]

23.     Subsections (A) through (P) of section 1112(b)(4) set forth a non-exclusive list of what constitutes "cause" for purposes of section 1112(b) of the Bankruptcy Code. *See Frieouf v. U.S. (In re Frieouf)*, 938 F.2d 1099, 1102 (10th Cir. 1991) (stating that the list in section 1112(b) is non-exhaustive); *Camden Ordinance Mfg. Co. of Ark., Inc. v. United States Trustee (In re Camden Ordinance Mfg. Co. of Ark., Inc.)*, 245 B.R. 794, 799 (E.D. Pa. 2000) ("[T]he bankruptcy court may find 'cause' for conversion or dismissal for reasons beyond the enumerated examples in § 1112(b)"). One such example of cause is where there is a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A). The inability to effectuate substantial consummation of a confirmed plan constitutes another form of cause warranting dismissal. 11 U.S.C. § 1112(b)(4)(M).

24.     Indeed, courts have regularly held that the inability of a debtor to confirm a plan can be "cause" to convert or dismiss a case under section 1112(b)(4). *See e.g., In re SHAP, LLC,* 457 B.R. 625, 628 (Bankr. E.D. Mich. 2011) (citing *In re DCNC North Carolina I, LLC,* 407 B.R. 651, 660-61, 664-65 (Bankr. E.D. Pa. 2009) (dismissing chapter 11 cases where the debtors

---

[2] The legislative history of section 1112(b) of the Bankruptcy Code and relevant case authority indicate that a court has wide discretion to use its equitable powers in disposing of a debtor's case. *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 405 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 117 (1978); *see also Small Bus. Admin. v. Preferred Door Co. (In re Preferred Door Co.)*, 990 F.2d 547, 549 (10th Cir. 1993) (stating that a court has broad discretion to dismiss a bankruptcy case); *Sullivan Central Plaza I, Ltd. v. Bancboston Real Estate Capital Corp. (In re Sullivan Cent. Plaza I, Ltd.)*, 935 F.2d 723, 728 (5th Cir. 1991) (same).

19-40267-jpg    Doc 117    FILED 06/18/19    ENTERED 06/18/19 10:24:41    Page 29 of 104

lacked a reasonable prospect of achieving confirmation of a chapter 11 plan); *see also Preferred Door Co.*, 990 F.2d at 549 (quoting *Hall v. Vance*, 887 F.2d 1041, 1044 (10th Cir. 1989)) (finding an "[i]nability to effectuate a plan arises where debtor lacks the capacity to 'formulate a plan or carry one out'").

25. Here, Pender maintains that it is extremely unlikely that Debtor could confirm a chapter 11 plan – let alone perform and satisfy any plan confirmed. Pender believes the Debtor lacks the necessary funds or property to confirm a plan and satisfy the mandatory requirements set forth in section 1129 of the Bankruptcy Code. Debtor asserts that it is in the process of finalizing financing, although a final commitment has not yet been signed. Given the foregoing, Debtor (and creditors) should not incur the time and expense seeking to formulate and confirm a plan. It is indisputable that "cause" exists within the scope of section 1112 and, by jointly filing this Motion, each Movant has so stipulated to the dismissal and its terms.

26. Once a court determines that "cause" exists, the court must evaluate whether dismissal or conversion is in the best interests of creditors and the estate. *See Rollex Corp. v. Assoc. Materials, Inc. (In re Superior Sliding & Window, Inc.)*, 14 F.3d 240, 243 (4th Cir. 1994); *In re Mazzocone*, 183 B.R. 402, 411-12 (Bankr. E.D. Pa. 1995). Courts generally find that where, as here, the stakeholders in a case agree that dismissal is the proper disposition of the case, dismissal should be granted. *See Camden Ordinance Mfg. Co. of Ark.*, 245 B.R. at 798-802.

27. In this case, numerous factors demonstrate that dismissal, rather than conversion, is in the best interests of Debtor's creditors and the estate. First, Pender, by far the largest creditor, agrees that dismissal is in the best interest. Second, there are no actions for a chapter 7 trustee to pursue. Third, the majority of the creditors listed in this case are utility providers, and

- 8 -

the Settlement Agreement requires that Debtor pay these claims in full by June 30, 2019, meaning that conversion to chapter 7 would not benefit these creditors. These are all indicators that dismissal is in the best interest of creditors.

28. In short, there would be no benefit to (and indeed only a burden upon) Debtor's creditors (and bankruptcy estate administration) by conversion of this case to a case under chapter 7. Accordingly, the case should be dismissed.

29. In addition, subject in all respects to the terms of the Settlement Agreement and the exhibits to this Motion, the Settlement Agreement generally provides that, absent an earlier default, the Debtor has until August 15, 2019, to pay Pender's compromised claim in cash and in full. The Settlement Agreement also generally provides for the appointment of the receiver over the Real Estate subject to the Mortgage in favor of Pender if Pender is not paid by August 15, 2019. The receiver would be permitted to sell the Real Estate and distribute the proceeds further protecting the interests of Debtor and its creditors.

## CONCLUSION

For these reasons, Movants ask the Court to enter Orders (a) approving the Settlement Agreement in substantially the same form as the one attached as Exhibit 1A and, immediately thereafter, (b) dismissing the bankruptcy case in substantially the same form as the one attached as Exhibit 1B.

- 9 -

Dated:  June 7, 2019                          Respectfully submitted,

                                              */s/ Nancy A. Valentine*
                                              Nancy A. Valentine (0069503)
                                              Miller Canfield Paddock & Stone, PLC
                                              1100 Superior Avenue East, Suite 1750
                                              Cleveland, Ohio 44114
                                              (216) 716-5044 (company)
                                              (216) 716-5043 (fax)
                                              valentinen@millercanfield.com

                                              and

                                              Todd Holleman (0080070)
                                              Ronald A. Spinner (Michigan P73198) (pro hac)
                                              150 West Jefferson, Suite 2500
                                              Detroit, MI  48226
                                              Phone:  (313) 496-7668
                                              Fax:  (313) 496-7500
                                              holleman@millercanfield.com
                                              spinner@millercanfield.com

                                              *Attorneys for Pender Capital Asset Based Lending
                                              Fund I, L.P.* and *Pender Capital, Inc.*

                                              _____

                                              Richard G. Zellers (0011764)
                                              Richard G. Zellers & Associates
                                              3695 Boardman-Canfield Road
                                              Bldg. B, Suite 300
                                              Canfield, OH 44406
                                              (330) 702-0780
                                              Fax : (330) 702-0788
                                              Email: zellersesq@gmail.com

                                              *Attorneys for Debtor*

- 10 -

## **EXHIBIT LIST**

Exhibit 1A          Proposed Order Approving Compromise

Exhibit 1B          Proposed Order Dismissing Bankruptcy Case

Exhibit 2           Settlement Agreement

# EXHIBIT B – APPROVAL ORDER

[See following page(s) for form of *ORDER APPROVING COMPROMISE*]

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In re: | ) Case No. 19-40267-jpg |
| | ) |
| California Palms, LLC, | ) Chapter 11 |
| | ) |
| Debtor. | ) Judge John P. Gustafson |
| | ) |
| | ) Property Address and Parcel No.: |
| | ) Parcel No. 48-042-0-063.000 |
| | ) 1051 N. Canfield Niles Rd., Austintown, |
| | ) Ohio (aka 5455 Clarkins Drive, Austintown |
| | ) Township, Ohio) |

## ORDER APPROVING COMPROMISE

This matter having come before the Court on the *Joint Motion for Orders (A) Approving Compromise and, Thereafter, (B) Dismissing Bankruptcy Case* ("<u>Motion</u>")[1] on proper notice and the opportunity for a hearing, the Court being fully advised in the premises, there being good and sufficient cause to grant the relief requested, and the Court finding that the Settlement Agreement is fair, equitable, and in the best interest of the Debtor and the estate,

---

[1] Capitalized terms not otherwise defined in this Order shall have the meanings ascribed to them in the Motion.

- 1 -

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted to the extent set forth in this Order.

2.      The Settlement Agreement is authorized and approved and shall be binding and enforceable in accordance with its terms.  The terms and conditions of the Settlement Agreement are incorporated into this Order in their entirety.

3.      Immediately upon entry of this Order, Debtor is authorized and directed to perform Debtor's obligations under, and to comply with, the terms of the Settlement Agreement. Debtor and Pender are authorized and directed to execute and deliver, and each is empowered to perform under, consummate, and implement, the Settlement Agreement, including, but not limited to, (a) delivering the *Notice Regarding the Bankruptcy Order and Stipulation and Agreed Order* to the State Court (as discussed in paragraph 4 of the Settlement Agreement) and (b) submitting the Adversary Dismissal Order to this Court for entry.

4.      The automatic stay is modified to the extent necessary for the parties to implement the Settlement Agreement upon entry of this Order, and this Order shall not be subject to the 14 day stay otherwise imposed by Federal Rule of Bankruptcy Procedure 4001(a)(3).

5.      The Court retains jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

6.      This Order shall be effective immediately upon its entry.

# # #

ACKNOWLEDGED AND AGREED TO BY:

*/s/ Nancy A. Valentine*
_____

Nancy A. Valentine (0069503)
Miller Canfield Paddock & Stone, PLC
1100 Superior Avenue East, Suite 1750
Cleveland, Ohio 44114
(216) 716-5044 (company)
(216) 716-5043 (fax)
valentinen@millercanfield.com

and

Todd Holleman (0080070)
Ronald A. Spinner (Michigan P73198) (pro hac)
150 West Jefferson, Suite 2500
Detroit, MI 48226
Phone: (313) 496-7668
Fax: (313) 496-7500
holleman@millercanfield.com
spinner@millercanfield.com

*Attorneys for Pender Capital Asset Based Lending Fund I, L.P.* and *Pender Capital, Inc.*

_____

Richard G. Zellers (0011764)
Richard G. Zellers & Associates
3695 Boardman-Canfield Road
Bldg. B, Suite 300
Canfield, OH 44406
(330) 702-0780
Fax : (330) 702-0788
Email: zellersesq@gmail.com

*Attorneys for Debtor*

## INSTRUCTIONS TO THE CLERK

Please serve the foregoing Order upon the parties listed below, as indicated:

Via the Court's Electronic Case Filing System:

Jeffrey Kurz     jeffkurz@hotmail.com, dc1095dt@yahoo.com
Sebastian Rucci     SebRucci@gmail.com
Ronald A. Spinner     spinner@millercanfield.com
United States Trustee     (Registered address)@usdoj.gov
Nancy A. Valentine     valentinen@millercanfield.com,
waldroup@millercanfield.com
Joshua Ryan Vaughan     jvaughan@amer-collect.com, SAllman@AMER-COLLECT.COM;rschroeter@amer-collect.com;HouliECF@aol.com
Richard G. Zellers     zellersesq@gmail.com

- 3 -

Tiiara N. A. Patton ust401    tiiara.patton@usdoj.gov

and by first-class, U.S. mail, postage prepaid, on the following as listed on the Debtor's list of its 20 largest unsecured claims:

Hypercore
P.O. Box 840964
Dallas, TX 75284-0964

Law Office of Jeff Kurz
42 N. Phelps Street
Youngstown, OH 44503-1130

Vonage Business
3200 Windy Hill Rd, St 200
East Atlanta, GA 30339-5640

AT&T
P.O. Box 5019
Carol Stream, IL 60197-5019

Law Off Robert Schuerger
81 S. 5th Street, Suite 400
Columbus, OH 43215-4323

Ohio Edison
76 S. Main Street
Akron, OH 44308-1817

Youngstown Water Dept.
P.O. Box 6219
Youngstown, OH 44501-6219

Dominion Energy
P.O. Box 26785
Richmond, VA 23261-6785

Law Office of James Vitullo
5232 Nashua Drive
Austintown, OH 44515-5122

Ohio Bureau of Workers' Compensation
Legal Division/Bankruptcy Unit
PO Box 15567
Columbus, OH 43215-0567

Ohio Edison
5001 NASA Blvd
Fairmont WV 26554

Daniel R. Yemma
Mahoning County Treasurer
120 Market Street
1st Floor
Youngstown, OH 44503

Ohio Department of Taxation
Bankruptcy Division
P.O. Box 530
Columbus, OH 43216

- 4 -

## EXHIBIT C – ADVERSARY DISMISSAL ORDER

**[SEE FOLLOWING PAGE(S) FOR FORM OF** *ORDER GRANTING MOTION OF PENDER CAPITAL ASSET BASED LENDING FUND I, L.P. AND PENDER CAPITAL, INC. TO DISMISS PLAINTIFFS' ADVERSARY COMPLAINT WITH PREJUDICE***]**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| In Re: | Case No. 19-40267-jpg |
| California Palms, LLC, | |
| Debtor. | Adv. Proceeding No. 19-04010-jpg |
| | |
| _____ | Judge John P. Gustafson |
| California Palms, LLC; California Palms, Inc.; and California Palms Addiction Recovery Campus, Inc. | |
| | Chapter 11 Proceeding |
| Plaintiffs, | |
| vs. | |
| Pender Capital Asset Based Lending Fund I, and Pender Capital, Inc., | |
| Defendants. | |

**ORDER GRANTING MOTION OF PENDER CAPITAL ASSET BASED
LENDING FUND I, L.P. AND PENDER CAPITAL, INC. TO DISMISS
PLAINTIFFS' ADVERSARY COMPLAINT WITH PREJUDICE**

This matter came before the Court on the *Motion of Pender Capital Asset Based Lending*

*Fund I, L.P. and Pender Capital, Inc. to Dismiss Plaintiffs' Adversary Complaint* on proper

- 1 -

notice, the Court being fully advised in the premises, there being good and sufficient cause to grant the relief requested, and the Court finding that the entry of this Order is consistent with that certain order approving the compromise entered into by the parties to this Adversary Proceeding,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted in its entirety.

2.      This Adversary Proceeding is hereby dismissed with prejudice.

3.      Each party is to bear its own costs.

IT IS SO ORDERED.

###

SUBMITTED BY:

/s/ Nancy A. Valentine
Nancy A. Valentine (0069503)
Miller Canfield Paddock & Stone, PLC
1100 Superior Avenue East, Suite 1750
Cleveland, Ohio 44114
(216) 716-5040 (direct phone)
(216) 716-5044 (company)
(216) 716-5043 (fax)
valentinen@millercanfield.com

And

Ronald A. Spinner (Michigan P73198) (pro hac)
150 West Jefferson, Suite 2500
Detroit, MI 48226
(313) 963-6420
spinner@millercanfield.com

*Attorneys for Pender Capital Asset Based
Lending Fund I, L.P.*

/s/ Richard G. Zellers
Richard G. Zellers (0011764)
Richard G. Zellers & Associates
3695 Boardman-Canfield Road
Bldg. B, Suite 300
Canfield, OH 44406
(330) 702-0780
Fax : (330) 702-0788
Email: zellersesq@gmail.com

*Attorneys for Debtor*

## INSTRUCTIONS TO THE CLERK

Please serve the foregoing Order upon the parties listed below, as indicated:

Via the Court's Electronic Case Filing System:

Sebastian Rucci    SebRucci@gmail.com
Ronald A. Spinner    spinner@millercanfield.com
Todd Holleman    holleman@millercanfield.com
Richard G. Zellers    zellersesq@gmail.com
Nancy A. Valentine    valentinen@millercanfield.com, waldroup@millercanfield.com
33797781.1\157569-00001

- 3 -

## EXHIBIT D – BANKRUPTCY DISMISSAL ORDER

[See following page(s) for form of *ORDER DISMISSING BANKRUPTCY CASE*]

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| In re: | ) Case No. 19-40267-jpg |
| | ) |
| California Palms, LLC, | ) Chapter 11 |
| | ) |
| Debtor. | ) Judge John P. Gustafson |
| | ) |
| | ) Property Address and Parcel No.: |
| | ) Parcel No. 48-042-0-063.000 |
| | ) 1051 N. Canfield Niles Rd., Austintown, |
| | ) Ohio (aka 5455 Clarkins Drive, Austintown |
| | ) Township, Ohio) |

**ORDER DISMISSING BANKRUPTCY CASE**

This matter came before the Court on the *Joint Motion for (A) Approval of Compromise and, Thereafter, (B) Dismissal of Bankruptcy Case* ("Motion");[1] proper and sufficient notice of this Motion has been given under Fed. R. Bankr. P. 2002(a)(4) and 1017(a)(1) ("Bankruptcy Rules"), and no further notice is necessary or appropriate; the Court having found, based on the Motion, the docket entries in this case, the absence of any objections, and otherwise, that (a) the

---

[1] Capitalized terms not otherwise defined in this Order shall have the meanings ascribed to them in the Motion

disputes among the parties to the Settlement Agreement attached to the Motion are best resolved in accordance with the Settlement Agreement, including the provision set forth herein limiting and conditioning the filing of a subsequent bankruptcy petition, rather than by continuing the case under title 11 of the United States Code ("Bankruptcy Code") or converting the case to a case under chapter 7 of the Bankruptcy Code; (b) the interests of creditors would be better served by dismissal of the case under sections 305(a)(1) and 1112(b)(1) with the effects of section 305(c) and, except to the extent ordered otherwise herein, section 349 of the Bankruptcy Code; (c) sufficient "cause" exists within the meaning of section 1112 of the Bankruptcy Code for granting the relief herein; and (d) Pender Capital Asset Based Lending Fund I, L.P. ("Pender") and Debtor each consents to the relief granted herein; and the Court being otherwise advised in the premises;

**IT IS HEREBY ORDERED** that:

1. This bankruptcy case ("Bankruptcy Case") is hereby dismissed pursuant to sections 1112(b)(1) and 305(a)(1) of the Bankruptcy Code, effective immediately upon the entry of this Order, with the effects described therein and in section 349 of the Bankruptcy Code, and subject to the other provisions of this Order.

2. All orders entered in the Bankruptcy Case ("Bankruptcy Orders") shall survive the dismissal of the Bankruptcy Case and shall continue in full force and effect. All findings of fact and conclusions of law set forth in those Bankruptcy Orders shall constitute res judicata, issue preclusion, and collateral estoppel in any other case or proceeding.

3. Notwithstanding any Bankruptcy Orders, the automatic stay and any other injunction that may be in effect shall terminate pursuant to section 362(c) of the Bankruptcy Code and otherwise, and shall not be re-imposed, and any property of the estate shall no longer

- 2 -

constitute property of the estate under section 541 of the Bankruptcy Code or otherwise, and shall revest in Debtor subject to all liens (as defined in the Bankruptcy Code), including the liens of Pender in the Real Estate, upon entry of this Order.

4.     Debtor, each of the other Rucci Parties (as defined in the Settlement Agreement), and any successor thereto or assignee thereof is enjoined and shall not file, cause to be filed, or aid or assist in the filing of, a subsequent petition for entry of an order for relief under the Bankruptcy Code, without the prior written consent of Pender, at any time before the earlier of (a) June 22, 2020 (unless a receiver has been appointed in the Foreclosure Action before that date, in which case the injunction set forth in this paragraph 4 shall continue and remain in effect until the later of (i) June 22, 2020 and (ii) the date on which the receivership in the Foreclosure Action is terminated and dissolved) and (b) the date on which the Collateral Releases, as that term is defined in paragraph 11 of the Settlement Agreement, are recorded.  If, despite this injunction, a subsequent petition for an order for relief under the Bankruptcy Code is filed by Debtor, any of the other Rucci Parties, or any successor thereto or assignee thereof affiliated with, related to or controlled by any of the Rucci Parties, or any person or entity that is affiliated with, related to or controlled by any of the Rucci Parties which acquires an interest in the Real Estate in breach of paragraph 5 of this Order, Pender (or its successor or assign) shall be entitled to immediate termination of the automatic stay (and any such other injunction that may be in effect) in order to enforce its rights and remedies under the Settlement Agreement and against the Real Estate.

5.     Debtor is enjoined and shall not sell, transfer, encumber, or otherwise alienate the Real Estate or any interest in the Real Estate unless the Collateral Releases have been recorded or Pender has provided Debtor with Pender's prior written consent.

- 3 -

6.      The obligation to pay U.S. Trustee quarterly fees during the pendency of this case is not affected by the dismissal of this case. The Debtor shall provide all quarterly reports due within 14 days after entry of this Order, and pay any fees due to the United States Trustee pursuant to 28 U.S.C. § 1930, to the extent not already paid, within seven days thereafter.

7.      The Court shall retain jurisdiction for the enforcement and interpretation of this Order, and all matters set forth in this Order.

8.      This Order shall become effective immediately after the Order Approving Compromise becomes effective.

# # #

**ACKNOWLEDGED AND AGREED TO BY:**

*/s/ Nancy A. Valentine*
Nancy A. Valentine (0069503)
Miller Canfield Paddock & Stone, PLC
1100 Superior Avenue East, Suite 1750
Cleveland, Ohio 44114
(216) 716-5044 (company)
(216) 716-5043 (fax)
valentinen@millercanfield.com

and

Todd Holleman (0080070)
Ronald A. Spinner (Michigan P73198) (pro hac)
150 West Jefferson, Suite 2500
Detroit, MI 48226
Phone: (313) 496-7668
Fax: (313) 496-7500
holleman@millercanfield.com
spinner@millercanfield.com

*Attorneys for Pender Capital Asset Based Lending Fund I, L.P.* and *Pender Capital, Inc.*

*/s/ Richard G. Zellers*
Richard G. Zellers (0011764)
Richard G. Zellers & Associates
3695 Boardman-Canfield Road
Bldg. B, Suite 300
Canfield, OH 44406
(330) 702-0780
Fax : (330) 702-0788
Email: zellersesq@gmail.com

*Attorneys for Debtor*

- 4 -

## INSTRUCTIONS TO THE CLERK

Please serve the foregoing Order upon the parties listed below, as indicated:

Via the Court's Electronic Case Filing System:

Jeffrey Kurz    jeffkurz@hotmail.com, dc1095dt@yahoo.com
Sebastian Rucci    SebRucci@gmail.com
Ronald A. Spinner    spinner@millercanfield.com
United States Trustee    (Registered address)@usdoj.gov
Nancy A. Valentine    valentinen@millercanfield.com, waldroup@millercanfield.com
Joshua Ryan Vaughan    jvaughan@amer-collect.com, SAllman@AMER-
COLLECT.COM;rschroeter@amer-collect.com;HouliECF@aol.com
Richard G. Zellers    zellersesq@gmail.com
Tiiara N. A. Patton ust401    tiiara.patton@usdoj.gov

and by first-class, U.S. mail, postage prepaid, on the following as listed on the Debtor's list of its 20 largest unsecured claims:

| | | |
|---|---|---|
| Hypercore | Law Office of Jeff Kurz | Vonage Business |
| P.O. Box 840964 | 42 N. Phelps Street | 3200 Windy Hill Rd, St 200 |
| Dallas, TX 75284-0964 | Youngstown, OH 44503-1130 | East Atlanta, GA 30339-5640 |
| | | |
| AT&T | Law Off Robert Schuerger | Ohio Edison |
| P.O. Box 5019 | 81 S. 5th Street, Suite 400 | 76 S. Main Street |
| Carol Stream, IL 60197-5019 | Columbus, OH 43215-4323 | Akron, OH 44308-1817 |
| | | |
| Youngstown Water Dept. | Dominion Energy | Law Office of James Vitullo |
| P.O. Box 6219 | P.O. Box 26785 | 5232 Nashua Drive |
| Youngstown, OH 44501-6219 | Richmond, VA 23261-6785 | Austintown, OH 44515-5122 |
| | | |
| Ohio Bureau of Workers' | Ohio Edison | Daniel R. Yemma |
| Compensation | 5001 NASA Blvd | Mahoning County Treasurer |
| Legal Division/Bankruptcy | Fairmont WV 26554 | 120 Market Street |
| Unit | | 1st Floor |
| PO Box 15567 | | Youngstown, OH 44503 |
| Columbus, OH 43215-0567 | | |

Ohio Department of Taxation
Bankruptcy Division
P.O. Box 530
Columbus, OH 43216

33809959.3\157569-00001

**EXHIBIT E – REMAND ORDER**


[See following page(s) for form of *ORDER GRANTING MOTION OF PENDER CAPITAL ASSET BASED LENDING FUND I, L.P. FOR REMAND OF REMOVED CASE NUMBER 2018-CV-01015 TO MAHONING COUNTY COURT, STATE OF OHIO*]

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| In re: | ) Case No. 19-40267-jpg |
| | ) |
| California Palms, LLC, | ) |
| | ) Chapter 11 |
| Debtor. | ) |
| | ) Judge John P. Gustafson |
| | ) |
| | ) Property Address and Parcel No.: |
| | ) Parcel No. 48-042-0-063.000 |
| | ) 1051 N. Canfield Niles Rd., Austintown, |
| | ) Ohio (aka 5455 Clarkins Drive, Austintown |
| | ) Township, Ohio) |
| | ) |
| | ) **ORDER GRANTING MOTION OF** |
| | ) **PENDER CAPITAL ASSET BASED** |
| | ) **LENDING FUND I, L.P. FOR** |
| | ) **REMAND OF REMOVED CASE** |
| | ) **NUMBER 2018-CV-01015 TO** |
| | ) **MAHONING COUNTY COURT,** |
| | ) **STATE OF OHIO** |

This matter having come before the Court on the *Motion of Pender Capital Asset Based*

*Lending Fund I, L.P. for Remand of Removed Case Number 2018-CV-01015 to Mahoning*

*County Court, State of Ohio* ("State Court Case"), upon proper notice and a hearing, and good

cause having been shown to grant the motion, no party filed a response or otherwise appeared in

opposition to the Motion, or all responses have been withdrawn, and the Court being fully

advised in the premises,

THE COURT ORDERS THAT the motion is granted.

IT IS FURTHER ORDERED THAT the State Court Case is hereby remanded to

Mahoning County Court, State Of Ohio; and

IT IS FURTHER ORDERED THAT the Notice of Removal [Doc. No. 88] will be

stricken from the docket of this case.

# # #

SUBMITTED BY:

/s/ Nancy A. Valentine
Nancy A. Valentine (0069503)
Miller Canfield Paddock & Stone, PLC
1100 Superior Avenue East, Suite 1750
Cleveland, Ohio 44114
(216) 716-5040 (direct phone)
(216) 716-5044 (company)
(216) 716-5043 (fax)
valentinen@millercanfield.com

and
Ronald A. Spinner (Michigan P73198) (pro hac)
150 West Jefferson, Suite 2500
Detroit, MI  48226
(313) 963-6420
spinner@millercanfield.com

*Attorneys for Pender Capital Asset Based*
*Lending Fund I, L.P.*

## INSTRUCTIONS TO THE CLERK

Please serve the foregoing Order upon the parties listed below, as indicated:

Via the Court's Electronic Case Filing System:

Jeffrey Kurz    jeffkurz@hotmail.com, dc1095dt@yahoo.com

- 2 -

•Sebastian Rucci    SebRucci@gmail.com
•Ronald A. Spinner    spinner@millercanfield.com
•United States Trustee    (Registered address)@usdoj.gov
•Nancy A. Valentine    valentinen@millercanfield.com, waldroup@millercanfield.com
•Joshua Ryan Vaughan    jvaughan@amer-collect.com, SAllman@AMER-
COLLECT.COM;rschroeter@amer-collect.com;HouliECF@aol.com
•Richard G. Zellers    zellersesq@gmail.com
•Tiiara N. A. Patton ust401    tiiara.patton@usdoj.gov

# EXHIBIT F – STIPULATION

**[SEE FOLLOWING PAGE(S) FOR FORM OF STATE COURT NOTICE AND STIPULATION.]**

**IN THE COURT OF COMMON PLEAS**
**FOR MAHONING COUNTY, OHIO**

| | |
|---|---|
| CALIFORNIA PALMS, LLC, ET AL., | Case No: 2018-cv-01015 |
| Plaintiffs/Counter-Defendants, | Judge John M. Durkin |
| v. | Magistrate Dominic DeLaurentis |
| PENDER CAPITAL ASSET BASED LENDING FUND I, L.P., ET AL., | NOTICE REGARDING THE BANKRUPTCY ORDER AND STIPULATION AND AGREED ORDER |
| Defendants/Counter-Plaintiff. | |

Defendant/Counter-Plaintiff Pender Capital Asset Based Lending Fund I, LP ("*Pender Fund*") and Plaintiffs and Counter-Defendants California Palms, LLC ("*Borrowe*r"), Sebastian Rucci ("*Guarantor*"), and Third-Party Defendant California Palms Addiction Recovery Center ("*CaliParc*" and together with Borrower and Guarantor, the "*State Court Rucci Parties*"), by and through undersigned counsel, hereby give notice to the Court of the approval of a settlement of the chapter 11 bankruptcy case of Borrower styled as *In re California Palms, LLC,* Case No. 19-40267-jpg (the "*Chapter 11 Case*"), claims raised therein, and a revised settlement of the claims raised in this Court. Specifically, the State Court Rucci Parties and California Palms, Inc. fka California Palms Hotel, Inc. fka Hotel California, Inc. ("*California Hotel*" and together with the State Court Rucci Parties, the "*Rucci Parties*") and Pender Fund and Pender Capital, Inc. ("*Pender Capital*" and together with Pender Fund "*Pender*") have entered a Settlement Agreement and Release effective May 31, 2019 (the "*May Settlement*"), a copy of which is attached to this Notice together with all accompanying exhibits as **Exhibit 1**, resolving all proceedings in the Chapter 11 Case and a related adversary proceeding, and amending and modifying the Settlement Agreement and Release effective November 8, 2018 (the "*State Court Settlement*") previously reported to this Court.

- 1 -

On June _____, 2019, the United States Bankruptcy Court for the Northern District of Ohio (the "***Bankruptcy Court***") in the Chapter 11 Case granted a *Joint Motion for Orders (A) Approving Compromise and, Thereafter, (B) Dismissing Bankruptcy Case* ("***Settlement Motion***") and the May Settlement attached to the Settlement Motion by entering the *Order Approving Compromise* (the "***Approval Order***"), a copy of which is attached to this Notice as **Exhibit 2**. Additionally and immediately thereafter, on June _____, 2019, the Bankruptcy Court entered the *Order Dismissing Bankruptcy Case* (the "***Bankruptcy Dismissal***" and together with the Approval Order, the "***Chapter 11 Case Resolution Orders***"), a copy of which is attached to this Notice as **Exhibit 3**.[1] As a result of the entry of the Chapter 11 Case Resolution Orders, the automatic stay previously imposed by the filing of the Chapter 11 Case is no longer in effect permitting the filing of this Notice and allowing this Court to proceed in this action.

As part of the terms of the May Settlement (see para. 4), the Borrower and Guarantor have agreed to dismiss ***with prejudice*** the *Verified Complaint* (the "***Borrower Parties Complaint***") and immediately and without reservation release any and all Claims (as defined in the May Settlement) against Pender. As a result, the *Counter-Plaintiff's Verified Counterclaim and Third-Party Complaint for Foreclosure and Other Relief* (the "***Counterclaim for Foreclosure***") contained in *Defendant's Verified Answer and Affirmative Defenses to Plaintiff's Verified Complaint and Counter-Plaintiff's Verified Counterclaim and Third-Party Complaint for Foreclosure and Other Relief* filed by Pender on June 6, 2018 will be the only remaining claims in this action.

---

[1] On June _____, 2019, Pender filed with this Court that *Order Granting Motion of Pender Capital Asset Based Lending Fund I, L.P. For Remand Of Removed Case Number 2018-CV-01015 to Mahoning County Court, State of Ohio* entered by the Bankruptcy Court on June __, 2019. As such, this action remains in the jurisdiction of this Court.

Under the terms of the May Settlement, the Rucci Parties are required to pay Pender Fund $4,050,000 (the "Discounted Payoff")[2] in full and final settlement of Pender Fund's Note and the Rucci Judgment entered by this Court on May 21, 2019. The Discounted Payoff is due on or before August 15, 2019 at 5:00 PM EDT (the "Payment Deadline"). If the Rucci Parties fail to timely satisfy the Settlement Conditions, including paying the Discounted Payoff to Pender by the Payment Deadline, or otherwise default under the May Settlement, then Pender is authorized to take any and all steps necessary to cause this Court to again enter the (a) Judgment, (b) Receiver Order, or (c) both, which have been revised and updated. Each of the agreed Judgment and stipulated Receiver Order are attached to the May Settlement as **Exhibits G and H**, respectively.

Further, and upon stipulation of Pender Fund and the State Court Rucci Parties, each by and through undersigned counsel, and the Court otherwise being fully advised in the premises:

THE COURT FINDS THAT:

A.    The Rucci Parties and Pender have entered into the May Settlement that provides the Rucci Parties until August 15, 2019 at 5:00 PM EDT (the "*Payment Deadline*") to perform agreed-upon terms, including, but not limited to, payment of the Discounted Payoff to Pender by the Payment Deadline. If the Rucci Parties do so, the Counterclaim for Foreclosure will be dismissed without prejudice, which Pender will seek to amend to "with prejudice" and will file a satisfaction and release of the Rucci Judgment ninety-five (95) days after the date the Discounted Payment is received from the Rucci Parties if, but only if, no insolvency proceeding has been commenced by or against any Rucci Party prior to the expiration of the ninety-five (95) day period, all as more fully described in the May Settlement.  If they do not, or otherwise default

---

[2] Unless otherwise indicated, all capitalized terms shall have the same meaning as set forth in the May Settlement.

under the May Settlement, then, in each case, the State Court Rucci Parties have agreed to entry of the Judgment, the Receiver Order or both, in this action and to cooperate with Pender in their submission to this Court.

B. Pender previously filed a Motion to Appoint Receiver on August 15, 2018 (the "*Receiver Motion*") to which the State Court Rucci Parties responded. Following a status conference on October 23, 2018, the Court required all parties to file supplemental briefing on the Motion to Appoint Receiver. In accordance with the Court's order at the status conference as modified on the request of the parties, Pender filed a supplemental brief on November 2, 2018. The State Court Rucci Parties supplemental brief was due on November 9, 2018, but was never filed. Subsequently, the Rucci Parties defaulted on their obligations under the State Court Settlement, Pender sought entry of the prior agreed judgment and stipulated receiver order and Borrower filed the Chapter 11 Case eventually culminating in the May Settlement described herein. Nevertheless, the Receiver Motion remains pending in this action.

C. On February 11, 2019, Pender Fund filed a motion requesting this Court enter an agreed judgment and decree of foreclosure and stipulated receiver order as provided in the State Court Settlement. On May 21, 2019, this Court granted, in part, such motion by entering the Rucci Judgment, individually, in the amount of $4,170,000.00, plus interest at 22.0% per annum from and after October 1, 2018. This Court otherwise stayed this action as to all other parties and claims. As a result of the May Settlement, the remaining requests in such motion are now moot and the Rucci Judgment is in full force and effect, but Pender Fund will not seek to collect on the Rucci Judgment unless and until the Rucci Parties default under the May Settlement.

- 4 -

D.     The Rucci Parties have further agreed and stipulated to the immediate dismissal of the Borrower Parties Complaint ***with prejudice*** and the continuation of the Counterclaim for Foreclosure as described herein.

NOW, THEREFORE, IT IS ORDERED THAT:

1.     The Receiver Motion shall be held in abeyance, and the Court will not issue a ruling on it, until after the Payment Deadline, unless the Parties jointly request a further extension of the Payment Deadline, which shall constitute good cause shown, and no further briefing will be required in light of the terms of the May Settlement. Notwithstanding this, the Payment Deadline shall not be extended after August 15, 2019, except by joint stipulation of the parties and further order of this Court.

2.     The Borrower Parties Complaint is hereby dismissed ***with prejudice***. All costs associated with the Borrower Parties Complaint are assessed against Borrower and Guarantor.

IT IS SO ORDERED.

_____
Judge Durkin/Magistrate DeLaurentis

Submitted and Stipulated and Agreed to by:     Stipulated and Agreed to by:

_____     _____
Nancy A. Valentine (0069503)          Jeffrey A. Kurz (75498)
Scott R. Lesser (0095403)             42 N. Phelps St.
Miller Canfield Paddock & Stone, PLC  Youngstown, OH 44503
1100 Superior Avenue East, Suite 1750 (330) 747-5879 (Phone)
Cleveland, Ohio 44114                 (330) 743-2536 (Fax)
(216) 716-5040 (Direct Phone)         JeffKurz@hotmail.com
(248) 879-2000 (Company)              Attorney for Plaintiffs/Counter-Defendants
(248) 879-2001 (Fax)
valentinen@millercanfield.com
lesser@millercanfield.com             _____
Attorneys for Defendant/Counter-Plaintiff   James A. Vitullo (15388)
                                      5232 Nashua Drive
                                      Austintown, OH 44515-5122
                                      330-207-8571
                                      jamesavitullo@gmail.com
                                      Attorney for Plaintiffs/Counter-Defendants


                                      _____
                                      Sebastian Rucci

                                      California Palms, LLC,
                                      an Ohio limited liability company

                                      By:     _____
                                      Print:  _____
                                      Title:  _____

                                      California Palms Addiction Recovery Campus,
                                      Inc.,
                                      an Ohio corporation

                                      By:     _____
                                      Print:  _____
                                      Title:  _____

- 6 -

## CERTIFICATE OF SERVICE

Pursuant to the Ohio Rules of Civil Procedure, copies of the foregoing and this Certificate of

Service have been served by first-class U.S. mail, postage paid, upon the following this ___ day of June,

2019:

**OHIO DEPARTMENT OF JOB AND FAMILY
SERVICES**
c/o Office of Legal and Acquisition Services
30 East Broad Street, 31st Floor
Columbus, OH 43215

I further certify that on June ___, 2019, copies of the foregoing and this Certificate of Service

were served upon the following persons via e-mail, pursuant to the Ohio Rules of Civil Procedure and

agreement of the parties, at the following email addresses:

CALIFORNIA PALMS LLC, SEBASTIAN RUCCI,
AND CALIFORNIA PALMS ADDICTION RECOVERY
CAMPUS, INC.
c/o Jeffrey A. Kurz
jeffkurz@hotmail.com

CALIFORNIA PALMS LLC, SEBASTIAN
RUCCI, AND CALIFORNIA PALMS
ADDICTION RECOVERY CAMPUS, INC.
c/o James A. Vitullo
jamesavitullo@gmail.com

CALIFORNIA PALMS, LLC, Bankruptcy
Counsel
Richard G. Zellers, Esq.
3695 Boardman-Canfield Road
Bldg. B, Suite 300
Canfield, OH 44406
zelllersesq@gmail.com

/s/ *Nancy A. Valentine*

Nancy A. Valentine (#0069503)
*Attorneys for Defendant Pender Capital Asset
Based Lending Fund I, L.P.*

33778740.2\157569-00001

## IN THE COURT OF COMMON PLEAS
## FOR MAHONING COUNTY, OHIO

**CALIFORNIA PALMS, LLC**, *et al.*,

      Plaintiffs and Counter-Defendants,

*v.*

**PENDER CAPITAL ASSET BASED LENDING FUND I, LP**,

      Defendant and Counter-Plaintiff;

*and*

**OHIO DEPARTMENT OF JOB AND FAMILY SERVICES**, *et al.*,

      Third-Party Defendants.

Case No. 2018-cv-01015

Judge John M. Durkin

Magistrate Dominic DeLaurentis

**AGREED JUDGMENT AND DECREE OF FORECLOSURE**

---

Pender Capital Asset Based Lending Fund I, LP, a Delaware limited partnership ("Pender"), California Palms, LLC, an Ohio limited liability company ("Borrower"), Sebastian Rucci ("Guarantor"), and California Palms Addiction Recovery Center, an Ohio corporation ("CaliParc") by and through undersigned counsel, hereby agree and stipulate to this agreed judgment and decree of foreclosure.

The Parties hereby agree, and this Court finds, as follows:

1. That Borrower, Guarantor, and CPARC were each served with Pender's Counterclaim, and filed their answer on July 19, 2018.

2. That Third-Party Defendant Ohio Department of Job and Family Services was served by Federal Express on June 8, 2018, and is in default for answer.

3. That this judgment pertains to the premises described in attached **Exhibit A** (the "Mortgaged Property").

2

4. That the Note, Mortgage, Guaranty, and other loan documents attached to the Verified Counterclaim for Foreclosure and Other Relief are authentic copies of the respective documents.

5. That Pender is the holder of the Note.

6. That the Note is in default by Borrower having failed to pay the monthly payment due on May 1, 2018 and each month thereafter, and Borrower's failure to pay late charges when this payment was not made within ten days of its due date, along with other defaults.

7. That as of May 31, 2019, the amount due on the loan was as follows:[1]

| Principal | $ | 4,000,000.00 |
|---|---|---|
| Interest | | 700,000.00 |
| Default interest | | 400,000.00 |
| Attorneys' Fees and Costs (thru and including April 30, 2019) | | 342,009.25 |
| Credit - Holdbacks | | (420,000.00) |
| Credit - Tax Escrow | | (25,000.00) |
| Credit - Insurance Escrow | | (20,000.00) |
| Credit - Deposit | | (10,000.00) |
| Total | $ | 4,967,009.25 |
| | | |

*plus* additional attorneys' fees incurred from and after April 30, 2019, *plus* property protection advances and costs to be expended through confirmation, *plus* interest at the rate of 22% per annum (equal to $2,444.44 per diem) accruing from and after May 31, 2019.

8. That the Note is secured by Pender's Mortgage and the Mortgage constitutes a valid first lien on the Mortgaged Property, subject to any lien for unpaid taxes and assessments owed to the Mahoning County Treasurer.

---

[1] The credits listed for Holdbacks, Tax Escrow, and Insurance Escrow consist of funds that this Court previously authorized Pender to take possession of and apply against the Loan balance. They are restated here for clarity, and are not intended to provided double-credit to Borrower and Guarantor (i.e., the "Total" above is after applying those funds based on this Court's prior order, and is not further reduced by that application).

19-40267-jpg    Doc 117    FILED 06/18/19    ENTERED 06/18/19 10:24:41    Page 62 of 104

9. That the Mortgage was recorded on March 15, 2018 as Instrument No. 201800005457 of the Mahoning County records and that the conditions of the Mortgage have been broken, the Mortgage has become absolute, and Pender is entitled to have the equity of redemption of the Borrower foreclosed.

10. That, because the note is in default, the Mortgage is in default and has become absolute and that Pender is entitled to foreclose on its Mortgage and security interest and to apply the proceeds of the sale to its debt.

11. That Defendant/Counter-Plaintiff is entitled to a judgment and decree of foreclosure.

12. That the Court entered Judgment against Guarantor on May 21, 2019 (the "Rucci Judgment") on the Guaranty and such Judgment remains in full force and effect.

THE COURT THEREFORE ENTERS JUDGMENT AS FOLLOWS:

1. In favor of Pender and against Borrower for $4,967,009.25, plus interest at the rate of 22% per annum (equal to $2,444.44 per diem) from and after May 31, 2019.

2. Pender's Mortgage secures payment of the Note, and Pender's Mortgage is a first lien encumbering the Mortgaged Property, subject only to the lien of the Mahoning County Treasurer for unpaid taxes and assessments, if any.

3. Unless Borrower and Guarantor shall, within three days from the date of entry of this judgment, pay or cause to be paid to the Clerk of Courts the cost of this action and to Pender the amount found due to Pender as set forth above, then:

   a. The Borrower's equity of redemption shall be foreclosed.

   b. The Mortgaged Property shall be sold, free of the interest of all parties named in this action or otherwise bound by *lis pendens*.

4

    c.  An Order of Sale shall issue to the Sheriff of this county, directing him to appraise, advertise, and sell all of the Mortgaged Property, real or personal, tangible or intangible, described in the Mortgage.

4.      That there is no just reason for delay.

5.      The Clerk is hereby ordered to serve this judgment entry on all parties pursuant to Civ. R. 58(B).

_____
Judge John M. Durkin, Court of Common Pleas

Approved and Agreed to by:

_____     _____

Nancy A. Valentine (0069503)             Jeffrey A. Kurz (75498)
Scott R. Lesser (0095403)                    42 N. Phelps St.
Miller Canfield Paddock & Stone, PLC    Youngstown, OH 44503
1100 Superior Avenue East, Suite 1750    (330) 747-5879 (Phone)
Cleveland, Ohio 44114                  (330) 743-2536 (Fax)
(216) 716-5040 (Direct Phone)         JeffKurz@hotmail.com
(248) 879-2000 (Company)             Attorney for Plaintiffs/Counter-Defendants
(248) 879-2001 (Fax)
valentinen@millercanfield.com
lesser@millercanfield.com             _____
Attorneys for Defendant/Counter-Plaintiff   James A. Vitullo (15388)
                              5232 Nashua Drive
                              Austintown, OH 44515-5122
                              330-207-8571
                              jamesavitullo@gmail.com
                              Attorney for Plaintiffs/Counter-Defendants

California Palms, LLC,
an Ohio limited liability company

By:     _____
Print:  _____
Title:   _____


_____
Sebastian Rucci

California Palms Addiction Recovery Campus, Inc.,
an Ohio corporation

By:     _____
Print:  _____
Title:   _____

6

## EXHIBIT A
## LEGAL DESCRIPTION

Situated in the Township of Austintown, County of Mahoning and State of Ohio;

And known as being Lot No.4 in Clarkins at Youngstown Plat No.1 as shown in Mahoning County Records of Plats Volume 61 Page 122, and more fully described as follows:

Beginning at the Southwest corner of Lot No.16 in the Oakwood Allotment as recorded in Record Volume 27 Page 43; thence South 2 Degrees 29 Minutes West along the East line of Lot 18 in the Young and Webb Plat No. 1 a distance of 60.00 feet to a point; thence North 87 degrees 31 minutes West along the South line of said Lot 18 a distance of 203.00 feet to a point on the East right-of-way of State Route 46; thence South 0 degrees 24 minutes East along said right-of-way a distance of 180.38 feet to a point; thence South 87 degrees 31 minutes East along said right-of-way a distance of 78.67 feet to a point; thence South 1 degree 57 minutes East along said right-of-way a distance of 271. 40 feet to a point and the true place of beginning of the tract to be described; thence South 87 degrees 35 minutes East a distance of 237.36 feet to a point; thence North 52 degrees 25 minutes East a distance of 89.00 feet to a point on the South line of a 60 foot street known as Clarkins Drive; thence along said South line on an arc of a curve to the left in a Southeasterly direction with a central angle of 50 degrees 0 minutes a radius of 244.45 feet and a total arc length of 213.32 a distance of 80.00 feet to a point; thence South 3 degrees 55 minutes 56 seconds West a distance of 433.38 feet to a point on the North right-of-way line of Interstate Route 80; thence North 78 degrees 26 minutes West along said North line a distance of 182.00 feet to a point; Thence North 51 degrees 56 minutes West along said North line a distance of 102.85 feet to a point; thence North 2 degrees 29 minutes East along said North line a distance of 60.00 feet to a point; thence North 87 degrees 31 minutes West along said North line a distance of 65.00 feet to a point on the East right-of-way line of State Route 46; thence North 21 degrees 19 minutes West along the said East line a distance of 22.58 feet to a point; thence North 1 degree 57 minutes West along said East line a distance of 249.60 feet to the true place of beginning and containing 3.009 acres of land more or less.

Commonly known as:  5455 Clarkins Dr., Youngstown, OH 44515
Tax Parcel No.:          48-042-0-063.000
33769063.2\157569-00001

## EXHIBIT H – STIPULATED ORDER APPOINTING RECEIVER

[See following page(s) for form of *STIPULATED ORDER APPOINTING RECEIVER*]

**IN THE COURT OF COMMON PLEAS
FOR MAHONING COUNTY, OHIO**

CALIFORNIA PALMS, LLC,
a Delaware limited liability company, *et al.*,

      Plaintiffs/Counter-Defendants,

         vs.

PENDER CAPITAL ASSET BASED LENDING
FUND I, LP, a Delaware limited partnership,

      Defendant/Counter-Plaintiffs.

Case No: 2018-cv-01015

Judge John M. Durkin

Magistrate Dominic DeLaurentis

**STIPULATED ORDER APPOINTING
RECEIVER**

Parcel No. 48-042-0-063.000

This matter is before the Court on the Motion of Defendant/Counter-Plaintiff Pender Capital Asset Based Lending Fund I, LP (the "Pender") for the Appointment of a Receiver (the "Motion"). The Court has reviewed the pleadings. Based upon the pleadings and the evidence, the Court finds as follows:

A.     Pender filed its Defendant's Verified Answer and Affirmative Defenses to Plaintiff's Verified Complaint and Counter-Plaintiff's Verified Counterclaim and Third-Party Complaint for Foreclosure and Other Relief filed June 6, 2018 (the "Answer and Counterclaim") and its Motion.

B.     Plaintiff/Counter-Defendant California Palms, LLC ("Borrower") granted Pender a certain mortgage (the "Mortgage"), as more fully set forth in Pender's Answer and Counterclaim. Plaintiff/Counter-Defendant California Palms, LLC, Borrower's property manager(s), and all agents, employees, members, managers, officers and other agents and representatives of any of Borrower, Guarantor, Third-Party Defendant California Palms Addiction Recovery Campus, Inc., and Borrower's property manager(s) are collectively "Borrower's Agents."

- 1 -

C.     The Mortgage granted Pender a mortgage lien against certain real property located at 1051 N. Canfield Niles Rd., Austintown, Ohio 44515, as more particularly described in EXHIBIT A to the Mortgage (the "Real Estate"). Borrower further granted Pender a security interest in certain personal property described in the Mortgage and other loan documents (the "Personal Property").

D.     Within the Mortgage, Borrower also granted Pender an assignment of all Leases and Rents (the "Assignment of Rents"), as more fully set forth in the Answer and Counterclaim.

E.     Pender is the current holder of the Note and Mortgage.

F.     The Court has reviewed Pender's Motion, its verified Answer and Counterclaim, affidavit in support of the Motion, the attached exhibits and any responses.

G.     Borrower entered into that certain Settlement Agreement and Release dated May 31, 2019 (the "Settlement Agreement") that the U.S. Bankruptcy Court for the Northern District of Ohio approved by an order entered June _, 2019, wherein Borrower, Guarantor and California Palms Addiction Recovery Campus, Inc. ("CaliParc"), the tenant at the Real Estate, conceded the findings contained in this Receiver Order and other terms and conditions affecting the Receivership Property.

H.     The Court finds that and the Borrower has conceded that Borrower has defaulted on the loan, that Borrower consented to the appointment of a receiver (including by stipulating to entry of this Order), and that Borrower signed an enforceable assignment of rents and leases, as more fully set forth in the Answer and Counterclaim.

I.     The proposed Receiver, John Lane of Inglewood Associates, LLC, is a disinterested and experienced receiver who has served as a receiver in many other Ohio Courts

- 2 -

of Common Pleas. He is a Lake County resident and maintains a principal place of business in the State of Ohio.

J.        There is good cause to appoint Inglewood Associates, through its agent John Lane, as receiver, even though his principal place of business is not in Mahoning County.

K.        Pender's proposed receivership is a limited receivership over the Receivership Property (defined below) and not over Borrower. Its purpose is to enforce a contractual assignment of rents and leases, to maintain the uninterrupted operation if practicable of the Receivership Property, and to sell the Receivership Property. The receivership is not for the purpose of liquidating Borrower.

L.        Having considered the pleadings and statements of counsel, and based on the stipulation of the parties and their respective counsel, the Court finds the Motion to be well taken.

Pursuant to O.R.C. §2735.01(A)(2), (3), (6) and (7), the Court therefore orders as follows:

## 1.        Appointment of Receiver.

1.1        Inglewood Associates, LLC, by and through its agent John Lane (the "Receiver") hereby is appointed receiver of the Receivership Property (defined below) pursuant to section 2735.01 of the Ohio Revised Code, to take possession of (but not title to), manage, control, and protect the Receivership Property, effective upon the Receiver's posting of the bond required below and filing an Oath of Receiver with this Court in accordance with section 2735.03 of the Ohio Revised Code in the form attached to this Order as Exhibit B (the "Effective Date"). The Receiver's duty to act as receiver is subject to the terms of this Order.

- 3 -

1.2    As of the Effective Date, the Receiver is authorized and directed to take immediate possession and full control of the Receivership Property and to take such other actions as the Receiver deems reasonable and appropriate to take possession of, to exercise full control over, to prevent waste, and to preserve, manage, secure, and safeguard the Receivership Property. Neither Borrower nor any of Borrower's Agents shall have possession or control of, or any right to, the Receivership Property or any Income (as defined below) derived from it.

1.3    The Receiver shall take possession of and receive from all depositories, banks, brokerages, and otherwise (collectively, "Financial Institutions"), any money on deposit in all such Financial Institutions belonging to or arising from the operation of the Receivership Property, whether such funds be in accounts titled in the name of the entity or not. All Financial Institutions are directed to deliver such deposits to the Receiver and such records as the Receiver may reasonably request with respect to such accounts. The Receiver may indemnify the Financial Institution upon whom such demand is made, and is empowered to open or close any such accounts. The Receiver may use the tax identification number of Borrower, if and as appropriate.

1.4    The Borrower, Borrower's Agents, and all other Defendants to this action are ordered to cooperate with the Receiver in the transition of the management of the Receivership Property to the Receiver, and, on the Effective Date, to turn over to the Receiver all of the following pertaining to the Receivership Property:

(a)    All keys.

(b)    Year-end 2017 operating statements and year-to-date 2018 operating statements.

(c)    All on-site employee payroll records and employee files and applications.

(d)    An inventory of all equipment, furniture, vehicles and supplies.

- 4 -

(e)     All information about residents (that does not violate HIPAA or other privacy laws), customers, patients or other service recipients, current orders, any services performed in the preceding ten (10) months, and accounts receivable.

(f)     All existing service contracts.

(g)     All pending bids for contractor work.

(h)     All insurance policies on the Receivership Property and their terms.

(i)     Information regarding all insurance claims submitted in the past three (3) years.

(j)     Site plans, specifications, floor plans, drawings, measurements, etc.

(k)     Documents identifying and summarizing all pending litigation (excluding this action).

(l)     All documents, books, records and computer files, computer equipment, software, management files, equipment, furniture, supplies, and all passwords needed to access all software and computer files, and e-mail accounts maintained by the Borrower both at the offices of the Borrower and off-site including, but not limited to, all records concerning the Income, licenses and certifications of Borrower, the Mortgaged Property and its employees and the operation and management of the businesses of the Borrower.

(m)     All documents containing formulas, trade secrets, methods, and processes necessary to the manufacturing of any products made by the Borrower.

(n)     All documents reflecting payables and vendor information.

(o)     All information concerning real estate taxes and personal property taxes.

(p)     A list of all utilities and utility accounts, along with copies of the most recent and any unpaid utility bills.

(q)     All permits, licenses, regulatory approvals, provider agreements, or other documents or information pertaining to or necessary or useful in connection with the operations of the Receivership Property as a Health Facility, including all communication/correspondence files, applications, and other material relating thereto.

(r)     All leases including all communication/correspondence files.

(s)     Documents pertaining to all pending new leases/renewals.

(t)     Certificates of Occupancy.

(u)     A current rent roll.

(v)     Tenant contact names and telephone numbers.

(w)     The occupant ledgers.

- 5 -

(x)     All security deposits, security deposit accounts, advance payments, advance payment accounts, other deposits, and other deposit accounts, including an accounting for all such amounts and accounts.

(y)     The petty cash, if any.

(z)     A current aged accounts receivable/delinquency report.

(aa)     An aged listing of all trade payables and other payables.

(bb)     A list of all historical operating expenses for the Property.

(cc)     Such other records pertaining to the management of the Receivership as may be reasonably requested by the Receiver.

1.5     The Borrower and Borrower's Agents are under a continuing obligation to turn over all items listed in Section 1.4 after the Effective Date.

1.6     The Borrower and Borrower's Agents are prohibited from removing any personal property belonging to the Borrower, or diverting any Income.

1.7     Borrower and Borrower's Agents shall fully cooperate with Receiver and shall take all steps necessary to comply with this Order and other orders of the Court, and with all applicable law and/or rules and are enjoined from interfering with the use, management, possession, control, and liquidation of the Receivership Property by the Receiver.

1.8     The Borrower and Borrower's Agents shall fully cooperate with the Receiver in adding the Receiver and Pender as additional insureds and Pender as the loss payee on all insurance relating to the operation and management of the Receivership Property including, but not limited to, fire, extended coverage, auto and van coverage, property damage, liability, fidelity, errors and omissions, and workers compensation, and modifying the policies if deemed appropriate by the Receiver. The Borrower and Borrower's Agents are prohibited from canceling, reducing or modifying any and all insurance coverage in existence with respect to the Receivership Property.

- 6 -

1.9    The Borrower and its tenant, CaliParc shall cooperate in vacating the Receivership Property in accordance with paragraph 15 of the Settlement Agreement and shall not remove any Personal Property or other Receivership Property from the Mortgaged Property that constitutes Receivership Property and without first notifying Receiver and confirming in a manner satisfactory to the Receiver that such property is the personal property of CaliParc. Receiver may make reasonable accommodations to CaliParc and, with the Approval, of Pender extend CaliParc's deadline to exit the Receivership Property, and/or make reasonable accommodations for CaliParc to remove its personal property, including any medical equipment, if same cannot be removed within the timeframe provided in the Settlement Agreement.

## 2.    **Receiver's Duties and Authority.**

2.1    The Receiver shall be vested with and shall discharge the following authority, powers and duties:

(a)    To maintain, secure, manage, operate, repair and preserve the Receivership Property in such condition as may be deemed advisable by the Receiver in its reasonable discretion.

(b)    To change any and all locks to the Receivership Property and limit access to some or all of the Receivership Property as the Receiver deems appropriate.

(c)    To assume control over the Receivership Property and to collect and receive all Income.

(d)    To make routine repairs and incidental alterations to the Receivership Property, as may be necessary, including, but not limited to, electrical, plumbing, carpentry, masonry, and any other routine repairs or incidental alterations as may be required in the course of the ordinary maintenance and repair of the Receivership Property.

(e)    To take such action as deemed appropriate in the Receiver's discretion to comply with any orders or notices of violation affecting the Receivership Property issued by any federal, state, county, or municipal authority having jurisdiction thereof.

(f)    To prepare and maintain complete books, records, and financial reports of the Receivership Property in a form acceptable to the Court.

- 7 -

(g)     To allow Pender, its counsel and appraisers and other independent third party consultants engaged by Pender access to the Receivership Property at all reasonable times to inspect the Receivership Property and all books and records, and to cooperate with Pender, its counsel, appraisers, and other independent third-party consultants to evaluate the Receivership Property.

(h)     To retain, hire, or discharge employees of the Borrower or Borrower's Agents (none of whom are, or shall be deemed to be, employees of Pender or the Receiver).

(i)     To establish pay rates for any employees, officers, or directors of the Borrower or Borrower's Agents who perform services or duties in connection with the Receivership Property after the Effective Date.

(j)     To review existing worker's compensation, disability, general liability, and "all risks" hazard insurance and to retain, modify, or purchase such insurance, and name Pender and the Receiver as additional insureds, as the Receiver deems appropriate for the Receivership Property's preservation and protection.

(k)     To open and maintain a separate account with a federally insured banking institution or savings association with offices in this State from which the Receiver shall disburse all authorized payments as provided in this Order. The Receiver may use the Borrower's tax identification number to open the account.  All funds received by the Receiver pertaining to the Receivership Property shall be held in trust in said account, and shall not be comingled with other funds collected by the Receiver for its own account or as an agent for others, until disbursed as provided by this Order.

(l)     To receive and endorse checks pertaining to the Receivership Property either in the Receiver's name or in the Borrower's name.

(m)     To pay all appropriate real estate taxes, personal property taxes, and any other taxes or assessments against the Receivership Property, if the Receiver deems appropriate in its discretion.  The Receiver shall not be liable for any commercial activity tax owed by the Borrower.

(n)     To prepare and file any tax returns necessary to the operation of the Receivership Property as may be required by law.  The Receiver shall not be responsible for the preparation and filing of any tax returns for the Borrower or its affiliates, (including income, personal property, commercial activity, gross receipts, sales and use, or other tax returns) other than to reasonably cooperate in providing the Borrower with information in the Receiver's possession that may be reasonably necessary for the Borrower or its affiliates to prepare and file its returns.  The Borrower shall provide to the Receiver any information needed to file any tax returns for the Receivership Property.

- 8 -

<table>
<tr><td>(o)</td><td>To operate the Receivership Property under any existing name or trade name (or a new name, if the Receiver deems it appropriate to do so).</td></tr>
<tr><td>(p)</td><td>To determine as soon as reasonably possible and report to the Court whether any Income previously received by the Borrower has been used for purposes other than for the maintenance, management, and expenses of the Receivership Property.</td></tr>
<tr><td>(q)</td><td>To open and review mail directed to the Borrower and its representatives pertaining to the Receivership Property. The Receiver may also take exclusive possession and control, by demand to the U.S. Postal Service in the name of the Receivership, of any postal boxes that are or were being used by the Borrower for the receipt of rent or other mail pertaining to the Receivership Property.</td></tr>
<tr><td>(r)</td><td>To seek assistance of law enforcement officials as necessary to preserve the peace and protect the Receivership Property.</td></tr>
<tr><td>(s)</td><td>To employ attorneys, accountants, agents, and other professionals as the Receiver may from time to time deem appropriate and on such terms and conditions as the Receiver deems appropriate. The Receiver is specifically authorized to retain the law firm of Wickens, Herzer, Panza, Cook & Batista Co. for general legal representation.</td></tr>
<tr><td>(t)</td><td>To initiate, prosecute, defend, compromise, adjust, intervene in, or become party to such actions or proceedings in state or federal court as may, in its opinion and discretion, be necessary or proper for the protection, maintenance and preservation of the Receivership Property or carrying out the terms of this Order.</td></tr>
<tr><td>(u)</td><td>To execute, cancel, or modify lease agreements or extensions of leases.</td></tr>
<tr><td>(v)</td><td>To reject any leases or unexpired contracts of the Borrower that are burdensome on the Receivership Property, including but not limited to any leases or unexpired contracts with any of Borrower's Agents.</td></tr>
<tr><td>(w)</td><td>To enforce any valid covenant of any existing lease.</td></tr>
<tr><td>(x)</td><td>To take any and all actions not specifically enumerated herein that are, in the Receiver's judgment, necessary to properly and adequately manage, control, operate, maintain, and protect the Receivership Property.</td></tr>
</table>

2.2     Any security or other deposit which any tenant or occupant may have paid to

Borrower or any of Borrower's Agents, and which is not paid to the Receiver, shall be an

obligation of Borrower or the Borrower's Agent to whom it was paid, and may not be refunded

by the Receiver without Pender's Approval. Any other security or other deposit that tenants or

occupants have paid or may pay to the Receiver shall be refundable by the Receiver in accordance with the leases or agreements.

## 3. Receiver's Duties and Authority – Healthcare - Addiction Related

3.1 While Borrower or their assigns retain title to the Real Estate and other Receivership Property, the Receiver is authorized and directed:

(a) To take all reasonable measures necessary to operate and maintain the California Palms Addiction Recovery Campus (the "Health Facility"), subject to Section 6.4 and in accordance with all federal, state, and local laws and regulations.

(b) To secure the continuation or renewal of any license agreements that affect the Receivership Property or Health Facility, including any licensure or provider agreement which affects the Health Facility, all subject to Section 6.4.

(c) To take all reasonable measures necessary to maintain compliance under, and secure the continuation or renewal of, any agreements with providers, or to enter into agreements with providers, affecting the Receivership Property and/or the Health Facility.

(d) To take all reasonable measures necessary to protect any and all patients of the Health Facility, all subject to Section 6.4 and subject to any federal, state, and local laws and regulations that may require certain protective measures relative to any residents of the Health Facility.

## 4. Receiver's Authority Subject to Approval.

4.1 In carrying out the duties contained in this Order, the Receiver is authorized upon Approval, but is not required:

(a) To execute, cancel, modify, renegotiate or abrogate all service, maintenance, or other contracts relating to the operations of the Receivership Property, but subject to Approval for contracts in excess of $5,000. All such contracts are to be terminated upon a sale or disposition of the Receivership Property or termination of the Receivership.

(b) To engage contractors and skilled trades on a competitive bid basis to maintain the Receivership Property, and to execute such contracts for such purposes as the Receiver deems appropriate, if the aggregate amount will exceed $5,000, but without Approval for a life-threatening or other health or safety emergency.

- 10 -

(c)     To borrow funds for purposes relating to the operation of the Receivership Property. The Receiver shall not borrow funds without first providing Pender, by advance written notice, a reasonable opportunity to elect to advance funds required by the Receiver.

(d)     To contest, protest, or appeal any ad valorem tax or assessment, real estate tax, personal property tax, or other tax or assessment pertaining to the Receivership Property. (Any refund or reimbursement of taxes, whether paid by the Receiver or the Borrower, shall be deemed "Income" to be applied as provided herein.)

## 5.     Sale of Receivership Property.

5.1     Pursuant to O.R.C. § 2735.04, the Receiver is authorized, and the Court appoints the Receiver as the Borrower's attorney-in-fact, to sell all or any portion of the Receivership Property on behalf of, and in the name of, the Borrower. This authorization and appointment is subject to the following conditions precedent, which the Court has determined to be fair to Borrower and the parties to this action:

(a)     The Receivership Property has not been sold at a foreclosure sale.

(b)     The sale shall be a commercially reasonable sale to a bona fide third-party purchaser as determined by the Receiver in its reasonable business judgment.

(c)     No sale shall be made to the Receiver, or to any person or entity with a beneficial interest in the Receiver, or to any person or entity in which the Receiver has a beneficial interest.

(d)     All real estate taxes shall be current at the time of the sale or shall be paid current from the sale proceeds.

(e)     The other terms and conditions of the sale shall be appropriate in the reasonable business judgment of the Receiver.

5.2     The Receiver and the Receivership Property shall not be bound by any existing brokerage or listing agreement affecting the Receivership Property. The Borrower is enjoined from retaining a brokerage firm for the Receivership Property or otherwise interfering with the Receiver's retention of a brokerage firm for the Receivership Property.

- 11 -

5.3    The Receiver may select and retain a real estate broker to market the Property for sale, but subject to Pender's Approval for the retention of any broker and such broker's listing agreement and commission amount. The sale, and any contract for sale, is subject to Pender's Approval. The sale, and any contract for sale, is further subject to approval by later order of the Court, as further described below. Such Court Approval may be sought by either Pender or Receiver as further described below, but only after Pender's Approval has been given for the sale and contract for sale.

5.4    The procedures to be followed for any sale of the Receivership Property by the Receiver shall be as follows:

(a)    The sale, and contracts for sale, shall be subject to approval by further order of the Court.

(b)    The Receiver or Pender shall move the Court for approval of any contract for the sale of the Receivership Property by motion filed per the Local Rules of the Mahoning County, Ohio Court of Common Pleas and the Ohio receivership statute, with at least ten (10) days' prior written notice to all owners of the Receivership Property, all parties to this action, and all other persons with a recorded or filed lien encumbering the Receivership Property to be sold (as identified in the commitment for an owner's policy of title insurance previously field with the Court). If no party or person objects to the proposed sale or requests a hearing within that ten (10) day period, the Court may proceed without a hearing; provided, however, Borrower, Guarantor and CaliParc have waived their right to object or otherwise challenge any such sale in the Settlement Agreement.

(c)    Any resulting order approving such sale (a "Sale Approval Order") shall be a final order unless (i) a timely motion for rehearing or timely appeal as of right is filed, and (ii) the order is stayed within such period upon posting a bond in the amount of the purchase price and such other conditions deemed appropriate by the Court. Notwithstanding anything contained herein, Borrower, Guarantor and CaliParc have waived their right to appeal or otherwise challenge any Sale Approval Order in the Settlement Agreement.

(d)    If this Court finds in the Sale Approval Order that it is in the best interests of the Receivership Property, the sale may be free and clear of all liens, other than the lien of the treasurer of the county in which the Receivership Property is located for real estate taxes and assessments.

- 12 -

(e)     Borrowers and all other persons possessing an equity of redemption in the Receivership Property shall have seven (7) days after the date the Sale Approval Order is entered, which the Court deems to be reasonable, to pay to the Receiver, by cashier's check or other form of immediately available funds, the greater of (i) the sale price set forth in the Sale Approval Order; and (ii) an amount equal to the total of all liens upon the Receivership Property that were to be cancelled as liens by virtue of the sale, including all principal, interest, costs, and other amounts secured by those liens through the date of payment (the greater of those amounts being the "Redemption Amount"), which include the amounts due and owing to Pender as set forth in the Agreed Judgment and Decree of Foreclosure and as provided in the Settlement Agreement. If the Redemption Amount is not paid as and when described in this subsection, the equity of redemption shall be extinguished without further order of the Court.

(f)     Pursuant to R.C. 2735.04(D)(8), the statutory right to redeem set forth in R.C. 2329.33 does not apply to a sale by the Receiver.

(g)     The closing on the sale of the Receivership Property shall take place in person or by escrow at the offices of a title company of the Receiver's choosing in its discretion, or at any other location deemed appropriate in the Receiver's discretion.

(h)     Within thirty (30) days after closing of the sale of any of the Receivership Property, the Receiver shall file with the Clerk of Courts and serve on the parties a certificate and report of sale setting out the following with respect to the property that was sold:

> (i)     That the sale was conducted in accordance with this Order and the Sale Approval Order;
>
> (ii)    The date of sale;
>
> (iii)   The name of the purchaser;
>
> (iv)    The purchase price;
>
> (v)     The Net Proceeds of the Receivership Property (defined below); and
>
> (vi)    A copy of the closing statement, if one was prepared.

5.5     Subject to sections the foregoing subsections of this article, the Receiver has the authority with respect to the sale of Receivership Property to do and perform all and every act desirable, proper or necessary with respect to the Receivership Property including, without limitation, the authority to execute and deliver deeds of conveyance, bills of sale, any mortgage loan assumption and/or modification agreement, the closing statement, and all other documents

- 13 -

necessary or desirable in connection with the sale of the Receivership Property, all on behalf of and in the name of the Borrower.

5.6     The "Net Proceeds of Sale of the Receivership Property" shall be the gross sales price of the Receivership Property less customary closing costs, pro rations, sales commissions and other adjustments reasonably approved by the Receiver in writing.

5.7     The Net Proceeds of Sale of the Receivership Property shall be disbursed as ordered by the Court.

5.8     Nothing in this order shall enlarge or restrict the claims and defenses of Pender, other mortgage lien claimants, mechanic's lien claimants, judgment lien claimants, and other parties with respect to the Receivership Property.

## 6.     Extent of Receiver's Authority.

6.1     Although the Receiver shall have possession and control of the Receivership Property, the Receiver shall not take title to the Receivership Property.  Title to the Receivership Property shall remain in the name of Borrower (other than Income and other Receivership Property distributed to Pender as provided in this Order), unless foreclosed upon by Pender or sold by the Receiver as provided above, in which cases title to the Receivership Property will remain in the name of the Borrower until the delivery of the Sheriff's Deed or the deed from the Receiver, as the case may be.

6.2     Without limiting or expanding the foregoing, the Receiver is authorized to exercise all powers generally available and shall be subject to all the duties of a receiver under the laws of the State of Ohio that may be incidental to the management of the Receivership Property as described in this Order.  The Receiver shall have any additional powers that are provided by law and that the Court may from time to time direct or confer.

- 14 -

6.3     The Receiver shall, during the pendency of this action, have the right to apply to this Court for further instructions or directions.

6.4     The authority granted to the Receiver is self-executing, unless the action requires Approval. The Receiver is authorized to act on behalf of, and in Borrower's name (or the Receiver's name), as the Receiver deems appropriate without further order of this Court and without personal recourse against the Receiver (subject to the General Provisions).

6.5     The Receiver is authorized to accept advances from Pender for operating expenses, working capital, or improvements. All advances to the Receiver by Pender for the benefit of the Receivership Property, including any advances for working capital or improvements, and any other costs and expenses incurred by the Receiver under this Order, shall be deemed protective future advances under the Borrower's mortgage and security agreements with Pender. Any such protective future advances shall be fully secured by Pender's priority liens and security interests against the Receivership Property. Without derogating from the foregoing, any and all funds advanced by Pender to the Receiver pursuant to this Order shall: (a) be deemed made pursuant to contract; (b) be added to the amount of the indebtedness owed, jointly and severally, by the Borrower to Pender; (c) be deemed secured by the liens and security interests in favor of Pender on the Receivership Property to the same extent and with same priority as the other indebtedness secured by all existing liens and security interests in favor of Pender; and (d) accrue interest at the highest rate chargeable against the Borrower under any existing loan between the Borrower and Pender. All such funds advanced, including interest on advances, shall be deemed a prior lien before the repayment of any and all other claims against the Receivership Property (except for taxes and assessments having first priority as a matter of law) or proceeds of either of them. The Receiver is authorized to issue receivership certificate(s)

to secure any such protective future advances by Pender, but subject to Approval. Notwithstanding the foregoing, Pender shall have the right to loan funds to the Receiver, as receiver, on terms which are different that the terms under any existing loan between the Borrower and Pender. Nothing in this section shall be construed to require Pender to advance or loan funds to the Receiver for any reason.

7. **Receivership Property and Income.**

      7.1    "Receivership Property" means and includes:

      (a)    The Mortgaged Property, as described in the attached **Exhibit A**.

      (b)    All tangible and intangible personal property located at the Mortgaged Property.

      (c)    All Income.

      (d)    All permits, licenses, leases, other contracts, and other intangible property pertaining to the operation of the Mortgaged Property.

      (e)    All trade names, trademarks and intellectual property owned or used by the Borrower pertaining to the operation of the Mortgaged Property.

      (f)    Any refund or reimbursement of taxes, whether for taxes paid by the Receiver or the Borrower, and whether pertaining to any tax period before or after the entry of this order, and the right to institute or continue any contest, protest, or appeal of any ad valorem tax or assessment, real estate tax, personal property tax, or other tax or assessment pertaining to the Mortgaged Property.

      (g)    Any fixtures, trade fixtures, and tenant improvements or every kind or nature located in or upon or attached to, or used or intended to be used in connection with the operation of the Mortgaged Property and any buildings, structures or improvements located on the Mortgaged Property (to the full extent of the Borrower's interest in such).

      (h)    All permits, licenses, other contracts, and other intangible property pertaining to the Mortgaged Property and the operations of the Mortgaged Property.

      (i)    All other property, estate, right, title, and interest as described in the Mortgage, Assignment of Rents, Note, and other loan documents.

      (j)    All books, records, accounts, and documents that in any way relate to the Receivership Property or Income.

- 16 -

7.2     The term "Income" means, collectively, all cash, cash on hand, checks, cash equivalents, credit card receipts, demand deposit accounts, bank accounts, cash management or other financial accounts, bank or other deposits, and all other cash collateral (all whether now existing or later arising); current and past-due earnings, rents, prepaid rents, revenues, issues and profits, common area maintenance charges, accounts, and accounts receivable (all whether unpaid, accrued, due, or to become due); all lease termination, assumption, assignment and rejection claims in any bankruptcy action, and all amounts paid in partial or full satisfaction of any bankruptcy claim; all tax refunds and reimbursements; and all claims to issues, profits, income, cash collateral, and all other gross income derived from the business operations of the Borrower related to the Receivership Property, regardless of whether earned before or after entry of this Order, and regardless of whether received directly from tenants or occupants, from third parties on behalf of tenants or occupants, from insurance companies or pursuant to any state or federal program, or from any other source.

7.3     Income shall be applied and disbursed no less frequently than a monthly basis as follows (but subject to the lien rights granted to Pender):

> (a)     to the Receiver's approved fees and expenses;
>
> (b)     to the current post-receivership operating expenses including, but not limited to, any on-site employee payroll expenses, any real estate taxes, and any other taxes arising from normal business operations incurred during the Receivership. The Receiver shall not make disbursements of more than $5,000.00 toward post-receivership operating expenses without Approval except for life-threatening or other health or safety issues;
>
> (c)     to the repayment of any receivership certificate securing any protective advances made by Pender to the Receiver;
>
> (d)     except for a reasonable Receiver's reserve of $30,000, to Pender for application against the outstanding expenses, interest, principal, and other amounts owed under the Loan Documents, with such amounts to be applied by Pender in such order and manner as Pender elects in its sole discretion; and

- 17 -

(e)     any surplus to be held pending further order of the Court.

7.4     The Receiver may make interim distributions of Income to Pender after payment of current operating expenses, if the Receiver's "cash on hand" exceeds $10,000.00 and if he otherwise deems appropriate in his discretion.

## 8.     Property Management Company.

8.1     The Receiver and the Receivership Property shall not be bound by any existing property management agreement affecting the Receivership Property.   The Receiver is specifically authorized to retain a property management company, with Approval, Notice as provided in Section 10.7, and as may be necessary to manage the Receivership Property.   The Borrower is enjoined from retaining a management firm for the Receivership Property or from otherwise interfering with the Receiver's retention of a management firm for the Receivership Property.

## 9.     Utility Accounts.

9.1     The Receiver and the Receivership Property shall not be liable for the payment of utility charges of any kind (including, but not limited to, gas, electric, water, telephone, cable television, and satellite) incurred prior to the date of this Order.

9.2     Utility companies providing service to the Receivership Property shall, upon request by the Receiver, start new accounts in the name of the Receiver, as receiver, at a zero balance.

9.3     Any individual or entity receiving a copy of this Order is hereby enjoined and restrained from discontinuing service to the Receiver or the Receivership Property based upon non-payment of such utilities prior to the date of this Order and from attempting to collect utility charges from the Receiver pre-dating the date of this Order.

- 18 -

9.4 Each utility company or entity providing service to the Receivership Property shall forthwith transfer any deposits which it holds to the exclusive control of the Receiver and shall be prohibited from demanding that the Receiver deposit additional funds in advance to maintain or secure such service.

## 10. Receiver Compensation, Reports, Accounting, and Bond.

10.1 The Receiver shall be compensated as set forth in Exhibit C. The Receiver is authorized to pay his compensation and all ordinary and reasonable fees, costs, and expenses of the Receivership, including legal fees and expenses, as they become due.

10.2 The Receiver's Reports (as defined below) shall include an itemized statement setting forth the compensation paid to the Receiver for the services rendered and costs incurred by it as receiver during the preceding three months, reflecting the dates of service, time spent, and the nature of the services rendered and costs incurred. Unless any party entitled to receive said Receiver's Report as provided in Section 10.7 files with the Court and serves on the Receiver and all other parties an objection to said Receiver's Report within ten (10) days following service of the Receiver's Report, the compensation set forth in the Receiver's Report shall be approved, subject to the Court's review of all compensation paid to the Receiver in connection with the Court's review and approval of the Receiver's final accounting.

10.3 The Receiver's compensation shall be paid: (1) first from the Income from the Receivership Property, and (2) next, by Pender as a protective advance, but only to the extent that the Income is insufficient to pay the Receiver's compensation. The Receiver shall be permitted to deduct its fees directly from the Receivership Property Income or other proceeds of the Receivership Property. The Receiver is authorized to issue receivership certificate(s) to

- 19 -

secure any protective advances made by Pender to pay the Receiver's compensation, but subject to Approval.

10.4    Nothing in this Order shall require the Receiver to advance funds other than from Income without a bond or security for payment satisfactory to the Receiver. The Receiver shall not advance funds other than from Income without Approval.

10.5    By the 20th day after the end of the preceding three month period the Receiver shall prepare a Receiver's Report (including a detailed accounting report and other appropriate information relative to the administration of the receivership and as required by law) pertaining to the operations of the Receivership Property.

10.6    The Receiver's Reports shall be filed with the Clerk of the Court and served upon the parties as provided in Section 10.6.

10.7    The Receiver shall furnish the Receiver's Reports to the following by regular First Class U.S. Mail, postage prepaid:

Jeffrey A. Kurz
Law Office of Jeffrey Kurz
42 N. Phelps Street
Youngstown, OH 44503

Nancy A. Valentine
Scott R. Lesser
Miller Canfield Paddock & Stone, PLC
840 W. Long Lake Road, Suite 150
Troy, MI 48098-6358

All other counsel of record.

10.8    The Receiver shall post a surety bond from an insurance company licensed to do business in this State in an amount not less than $75,000. The cost of the bond is an expense of the Receivership.

**11. Confidentiality.**

11.1 "Confidential Information" means any non-public information.

11.2 The parties to this action, their counsel, and all those in active concert or participation with them, who receive actual notice of this Order, or otherwise, shall keep all Confidential Information provided by the Receiver confidential, and all such persons are prohibited from disclosing any Confidential Information to anyone other than the parties to this action and their counsel without specific order of this Court.

**12. Approval.**

12.1 Whenever this Order uses the term "subject to Approval" or "Approval," the Approval shall not be deemed given except by (1) a specific "Order of Approval" from this Court; or (2) the consent of Pender or its counsel given in writing.

**13. Term and Final Accounting.**

13.1 This Receivership shall continue until further order of the Court.

13.2 The Receiver can only be removed in the Court's equitable discretion upon a motion for cause. If the Receiver is removed, the Court may appoint a successor receiver.

13.3 Immediately upon termination of the Receivership, the Receiver shall turn over to Pender or its designee(s), all of the Receivership Property unless otherwise ordered by the Court.

13.4 Neither the termination of the Receivership nor the Receiver's removal will discharge the Receiver or the Receiver's bond.

13.5 The Receiver shall submit a final accounting (with copies to the recipients of Receiver's Reports as identified above) for approval by the Court within thirty (30) days after the termination of the Receivership or the Receiver's removal.

- 21 -

13.6     Only after the Court approves the Receiver's final accounting may the Receiver be discharged and the Receiver's bond will be cancelled.

## 14.     General Provisions.

14.1     The Receiver is only the receiver of the Receivership Property (as defined above), and not of any other assets, activities, business, or operations of the Borrower.  The Receiver's responsibilities, duties, and liabilities are expressly limited to those stated in this Order as the same are related to the Receivership Property.

14.2     No person or entity may file suit against the Receiver, its employees, agents, or its attorneys, or take other action against the Receiver or the Receiver's bond, without first obtaining an order of this Court permitting the suit or action upon motion and an evidentiary hearing; provided, however, that no prior court order is required to file a motion in this action to enforce the provisions of this Order or any other order of this Court in this action.

14.3     The Receiver and its employees, agents, and attorneys shall have no personal liability in connection with any liabilities, obligations, liens, citations, code violations, or amounts owed to any of the Borrower's creditors, taxing authorities, or bodies politic because of its duties as Receiver, whether arising before or after the Receiver's appointment.  The Receiver and Receiver's employees, agents and attorneys shall have no personal liability with respect to any environmental matters arising out of or relating to the Receivership Property.  Nothing in this Order shall grant any rights to trade creditors or general unsecured creditors, whose rights shall be solely determined in accordance with Ohio law.

14.4     The Receiver and the Receivership Property shall not be liable for the payment of goods or services provided to the Borrower prior to the date of this Order.  Any individual or entity receiving a copy of this Order is hereby enjoined and restrained from discontinuing service

- 22 -

to the Receiver or the Receivership Property based upon non-payment of such goods or services prior to the date of this Order and from attempting to collect taxes, assessments, and invoices from the Receiver pre-dating the date of this Order.

14.5    All creditors, claimants, bodies politic, parties in interest, and their respective attorneys, agents, employees, and all other persons, firms, and corporations, hereby are, jointly and severally, enjoined and stayed from commencing or continuing any action at law or suit or proceeding in equity to foreclose any lien or enforce any claim against the Receivership Property, the books, records, revenues, profits, and related assets associated with the Receivership Property, or against the Receiver in any Court. These parties are further stayed from executing or issuing or causing the execution or issuance out of any Court of any writ, process, summons, attachment, subpoena, replevin, execution or other process for the purpose of impounding or taking possession of or interfering with, or enforcing any claim or lien upon any of the Receivership Property or the books, records, revenues, profits and related assets associated with the Receivership Property, or upon the Receiver, and from doing any act or thing whatsoever to interfere with the Receiver in the discharge of its duties in this proceeding or within the exclusive jurisdiction of this Court over the Receivership Property and the books, records, revenues, profits and related assets associated with the Receivership Property.

14.6    The Receiver and its employees, agents, and attorneys shall have no personal liability and they shall have no claim asserted against them or the Receiver's bond relating to the Receiver's duties under this Order regarding any action taken or not taken by them in good faith. The Receiver and its employees, agents, and attorneys shall not be liable for any mistake of fact or error of judgment or for any acts or omissions of any kind, unless caused by gross negligence, gross or willful misconduct, malicious acts, or the failure to comply with this Court's orders.

- 23 -

The Borrower, through the value of the Receivership Property, shall indemnify, hold harmless, and defend the Receiver, its employees, agents, and attorneys from and against any and all liabilities, costs, and expenses including, but not limited to, the cost of any bond required by this Order and legal and other fees and expenses incurred by them arising from or in any way connected to the performance of the Receiver's duties.

14.7    Nothing in this Order shall be construed such that the Receiver is considered to be in a fiduciary relationship with Pender, any of the Defendants, or all of them collectively.

14.8    The Borrower, its employees, agents and representatives, and all those in active participation or concert with them who receive notice of this Order, and all those having claims against the Receivership Property who receive notice of this Order, are enjoined from, and shall not:

(a)    **Commit Waste.**  Commit or permit any waste on all or any part of the Receivership Property, or suffer or commit or permit any act on all or any part of the Receivership Property in violation of law, or remove, transfer, encumber, or otherwise dispose of any of the Receivership Property.

(b)    **Collect Income.**  Demand, collect, receive, discount, or in any other way divert or use any of the Income.

(c)    **Terminate any Utility Service.**  Terminate or withhold any electric, gas, water, sewer, telephone, or other utility service supplying the Receivership Property, require any utility deposit, or otherwise interfere with the continued operations of the Receivership Property. This provision does not apply to utilities under the exclusive jurisdiction of the Ohio Public Utilities Commission.

(d)    **Interfere with the Receiver.**  Directly or indirectly interfere in any manner with the discharge of the Receiver's duties under this Order or the Receiver's possession of and operation, management, marketing, or sale of the Receivership Property.

(e)    **Transfer or Encumber the Receivership Property.**  Expend, disburse, transfer, assign, sell, convey, devise, pledge, mortgage, create a security interest in, encumber, conceal, or in any manner whatsoever deal in or dispose of the whole or any part of the Receivership Property including, but not limited to, the Income, without prior court order.

- 24 -

(f) **Impair the Preservation of the Receivership Property.** Do any act that will, or that will tend to, impair, defeat, divert, prevent, or prejudice the preservation of the Receivership Property, including the Income, or the preservation of Pender's' interest in the Receivership Property and the Income.

14.9 The Receiver shall faithfully perform and discharge the Receiver's duties and obey the Court's orders.

14.10 The Receiver is subject to the personal jurisdiction of the Court.

14.11 The Receiver and its counsel are permitted to communicate *ex parte* with the Court and any magistrate referred to this matter, as well as their staff, on any matters related to the Receivership Property.

14.12 This Order and its terms shall be considered compliant with the Local Rules of the Mahoning County, Ohio Court of Common Pleas and this Order shall take precedence in the event of a conflict between them.

14.13 The Receiver's duty to act as Receiver is subject to the Receiver's written acceptance and approval of the terms of this Order. Upon acceptance, the Receiver shall be bound by each and every term contained in this Order and each and every obligation of the Receiver imposed by this Order.

## 15. Amendment of Order.

15.1 This Order may be amended for cause after a motion or hearing.

## 16. No Prejudice to Foreclosure/Final Order.

16.1 This Order shall not prejudice Pender's foreclosure of any mortgage lien or security interest, or any action by Pender under any loan documents, or any of Pender's other claims as set forth in its Complaint or any amendments thereto.

## 17. Final Appealable Order.

- 25 -

16.1    This is a final appealable order and there is no just cause for delay in its entry.

**17.    Service of Order.**

17.1    Pursuant to Civ. R. 58(B), the Clerk shall serve notice of the entry of this Order Appointing Receiver.

ALL OF WHICH IS HEREBY APPROVED AND ORDERED THIS _____ DAY OF _____, 2019.

_____
Judge

SUBMITTED, APPROVED AND AGREED TO BY:

_____

Nancy A. Valentine (0069503)
Scott R. Lesser (0095403)
Miller Canfield Paddock & Stone, PLC
1100 Superior Avenue East, Suite 1750
Cleveland, Ohio 44114
(216) 716-5040 (Direct Phone)
(248) 879-2000 (Company)
(248) 879-2001 (Fax)
valentinen@millercanfield.com
lesser@millercanfield.com
Attorneys for Defendant/Counter-Plaintiff

_____

Jeffrey A. Kurz (75498)
42 N. Phelps St.
Youngstown, OH 44503
(330) 747-5879 (Phone)
(330) 743-2536 (Fax)
JeffKurz@hotmail.com
Attorney for Plaintiffs/Counter-Defendants

_____

James A. Vitullo (15388)
5232 Nashua Drive
Austintown, OH 44515-5122
330-207-8571
jamesavitullo@gmail.com
Attorney for Plaintiffs/Counter-Defendants

California Palms, LLC,
an Ohio limited liability company

By:     _____
Print:   Sebastian Rucci_____
Title:   Managing Member_____

- 27 -

_____
Sebastian Rucci

California Palms Addiction Recovery Campus, Inc.,
an Ohio corporation

By: _____
Print: Sebastian Rucci
Title: Pres.

- 28 -

## EXHIBIT A
## (LEGAL DESCRIPTION)

Situated in the Township of Austintown, County of Mahoning and State of Ohio;

And known as being Lot No.4 in Clarkins at Youngstown Plat No.1 as shown in Mahoning County Records of Plats Volume 61 Page 122, and more fully described as follows:

Beginning at the Southwest corner of Lot No.16 in the Oakwood Allotment as recorded in Record Volume 27 Page 43; thence South 2 Degrees 29 Minutes West along the East line of Lot 18 in the Young and Webb Plat No. 1 a distance of 60.00 feet to a point; thence North 87 degrees 31 minutes West along the South line of said Lot 18 a distance of 203.00 feet to a point on the East right-of-way of State Route 46; thence South 0 degrees 24 minutes East along said right-of-way a distance of 180.38 feet to a point; thence South 87 degrees 31 minutes East along said right-of-way a distance of 78.67 feet to a point; thence South 1 degree 57 minutes East along said right-of-way a distance of 271. 40 feet to a point and the true place of beginning of the tract to be described; thence South 87 degrees 35 minutes East a distance of 237.36 feet to a point; thence North 52 degrees 25 minutes East a distance of 89.00 feet to a point on the South line of a 60 foot street known as Clarkins Drive; thence along said South line on an arc of a curve to the left in a Southeasterly direction with a central angle of 50 degrees 0 minutes a radius of 244.45 feet and a total arc length of 213.32 a distance of 80.00 feet to a point; thence South 3 degrees 55 minutes 56 seconds West a distance of 433.38 feet to a point on the North right-of-way line of Interstate Route 80; thence North 78 degrees 26 minutes West along said North line a distance of 182.00 feet to a point; Thence North 51 degrees 56 minutes West along said North line a distance of 102.85 feet to a point; thence North 2 degrees 29 minutes East along said North line a distance of 60.00 feet to a point; thence North 87 degrees 31 minutes West along said North line a distance of 65.00 feet to a point on the East right-of-way line of State Route 46; thence North 21 degrees 19 minutes West along the said East line a distance of 22.58 feet to a point; thence North 1 degree 57 minutes West along said East line a distance of 249.60 feet to the true place of beginning and containing 3.009 acres of land more or less.

Commonly known as:    5455 Clarkins Dr., Youngstown, OH 44515
Tax Parcel No.:    48-042-0-063.000

**EXHIBIT B**
**(OATH OF RECEIVER)**

| | |
|---|---|
| **CALIFORNIA PALMS, LLC,**<br>a Delaware limited liability company, *et al.*, | : **CASE NO.** 2018- cv-01015<br>: |
| | : |
| Plaintiffs/Counter-Defendants, | : |
| | : Judge Durkin |
| vs. | : |
| | : |
| **PENDER CAPITAL ASSET BASED LENDING**<br>**FUND I, LP**, a Delaware limited partnership, | : Magistrate Dominic DeLaurentis<br>: |
| | : |
| Pender. | : |
| | : **OATH OF RECEIVER** |

The undersigned, being first duly sworn upon its oath, hereby states that it will faithfully and honestly discharge the duties of Receiver in the above-captioned action to the best of its abilities and will obey the orders of this Court.

Inglewood Associates, LLC

_____
By: John K. Lane

_____
Dated

STATE OF OHIO )
 ) SS:
COUNTY OF _____ )

Before me, the undersigned, a Notary Public in and for said County and State, personally appeared John K. Lane, of Inglewood Associates, LLC, and acknowledged his execution of the foregoing Oath of Receiver on behalf of Inglewood Associates LLC.

Signed and sealed this _____ day of _____, 2018.

_____
Notary Public

My Commission Expires:

_____

_____
Printed

County of Residence:

_____

**EXHIBIT C**
**(RECEIVERSHIP FEE SCHEDULE)**

1.      John K. Lane - $295 per hour (receiver)

2.      Nancy D. Terrill - $295 per hour (healthcare specialist)

3.      James R. Myers - $295 per hour (real estate)

4.      Additional Resources - $225 - $295 per hour

5.      Administrative Support - $90 per hour

33799368.1\157569-00001

## EXHIBIT I – MUTUAL RELEASE

[See following page(s) for form of Mutual Release.]

## MUTUAL RELEASE

This *Mutual Release* ("***Release***") is effective as of _____, 2019 (the "***Release Date***") by and between California Palms, LLC ("***Borrower***"), Sebastian Rucci ("***Guarantor***"), CALIFORNIA PALMS, INC. FKA CALIFORNIA PALMS HOTEL, INC. FKA HOTEL CALIFORNIA, INC. ("***California Hotel***") and California Palms Addiction Recovery Campus, Inc. ("***CaliParc***") and together with Borrower, Guarantor and California Hotel, "***Borrower Parties***") and Pender Capital Asset Based Lending Fund I, LP and Pender Capital, Inc. (collectively, "***Lender***"), pursuant to the terms of a certain *Settlement Agreement and Release* dated as of May 31, 2019 (the "***Agreement***").

     1.     **DEFINITIONS**. Capitalized terms used but not otherwise defined in this Release have the meanings given in the Agreement. Additionally:

     (a)  "***Borrower Released Parties***" means, collectively, (i) Borrower; (ii) Guarantor; (iii) California Hotel, (iv) CaliParc, and (iv) each of their parents, subsidiaries, other affiliates, predecessors, successors, heirs, trustees and assigns; and (v) each of their officers, directors, employees, agents, attorneys, and other representatives.

     (b)  "***Claims***" means any and all claims (as such term is defined in section 101(5) of the Bankruptcy Code), any and all manner of debts, accounts, warranties, representations, covenants, contracts, agreements, liabilities, obligations, expenses, damages, actions, claims, liabilities, counterclaims, demands, causes of action, suits, defenses, setoffs, sums of money, including attorneys' fees, offsets against obligations of any nature whatsoever, known or unknown, vested or contingent, alleged or unalleged, either now accrued or later maturing, in contract or in tort, at law or in equity, by reason of any matter, cause or thing, from the beginning of the world to and including the date of this Agreement.

     (c)  "***Lender Released Parties***" means, individually and collectively, (i) Lender; (ii) Lender's parents, subsidiaries, and other affiliates; (iii) all predecessors, successors, and assigns of any of the foregoing; (iv) all servicers acting on behalf of any of the foregoing; and (v) each of their respective officers, directors, employees, agents, attorneys, and other representatives.

     (d)  "***JAW***" means (i) John A. Wise & Assoc., PLLC; (ii) its affiliates, parents, and subsidiaries; (iii) each of their predecessors, successors, and assigns; and (v) each of their respective officers, directors, employees, agents, attorneys, and other representatives, including, without limitation, Amy Fryar.

     2.     **BORROWER PARTIES' RELEASE**. Borrower Parties, for themselves and on behalf of their affiliates, parents and subsidiaries; each of their predecessors, successors, heirs, trustees and assigns; and their officers, directors, employees, agents, attorneys and other representatives, release and forever discharge the Lender Released Parties and JAW from any and all Claims arising out of or relating to, in whole or in part, directly or indirectly, (a) the Loan; (b) the Loan Documents; (c) the amount due in connection with the Loan and the Loan Documents; (d) the Real Estate; (e) the State Court Settlement, (f) the Agreement; (g) the Foreclosure Action (whether such Claims actually were or could have been asserted in the Foreclosure Action); (h) the Chapter 11 Case (whether such Claims actually were or could have been asserted in the Chapter 11 Case); (i) the Adversary Proceeding (whether such Claims actually were or could have been asserted in the Adversary Proceeding); (j) the Title Company Funds; (k) the Escrows; and (l) Pender's Fees. Each of the Borrower Parties agrees to indemnify and hold harmless each of the Lender Release Parties for any Claims arising or related to any breach of this paragraph 2 by any of the Borrower Parties.

3. **EXCLUSIONS FROM BORROWER PARTIES' RELEASE**. Borrower Parties' release of Lender Released Parties *specifically excludes* any Claim that Lender breached the Agreement after the Release Date.

4. **LENDER'S RELEASE**. Lender releases and forever discharges Borrower Released Parties from any and all Claims arising out of or relating to, in whole or in part, directly or indirectly, (a) the Loan; (b) the Loan Documents; (c) the amount due in connection with the Loan and the Loan Documents; (d) the Real Estate; (e) the State Court Settlement, (f) the Agreement; (g) the Foreclosure Action (whether such Claims actually were or could have been asserted in the Foreclosure Action); (h) the Chapter 11 Case (whether such Claims actually were or could have been asserted in the Chapter 11 Case); (i) the Adversary Proceeding (whether such Claims actually were or could have been asserted in the Adversary Proceeding); (j) the Title Company Funds; (k) the Escrows; and (l) Pender's Fees.

5. **EXCLUSIONS FROM LENDER'S RELEASE**. Lender's release of Borrower Released Parties *specifically excludes* any Claims (1) pertaining exclusively to any loans or indebtedness other than the Loan and the Indebtedness; (2) that any Borrower Party breached the Agreement; or (3) arising out of or pertaining to the Environmental Indemnity or any other indemnification or guaranty provisions pertaining to environmental matters or hazardous substances contained in the Mortgage or any other Loan Document.

6. **VOIDING OF LENDER'S RELEASE**. Lender's release of Borrower Released Parties will be null and void and of no further force or effective if any of the following occurs:

   (a) Any Borrower Released Party institutes, causes to be instituted, continues prosecution of, or participates in: (i) any suit or other form of action or proceeding, against any Lender Released Party or otherwise in breach of Borrower Parties' release set forth in this Agreement; or (ii) any state, federal, or other bankruptcy, dissolution, liquidation, or insolvency proceeding or other proceeding pursuant to laws providing for the relief of debtors, including but not limited to any proceeding under Title 11 of the United States Code, *other than* an involuntary proceeding that is dismissed within 30 days of filing;

   (b) A court of competent jurisdiction, or any trustee or receiver for any Borrower Released Party, determines that the Discounted Payoff or any other payments or transfers contemplated by the Agreement constitutes a preference or fraudulent conveyance, or otherwise sets aside or holds ineffective any of the transfers contemplated by the Agreement; or

   (c) The Borrower Parties' release of Lender set forth in this Release is determined to be void and of no force and effect.

7. **COUNTERPARTS**. This Release may be signed in any number of counterparts as if the signatures were on the same instrument, and all separate documents signed shall be deemed an original. This Release may be signed by electronic, scanned, or facsimile signature, and each such signature will be deemed an original.

8. **GOVERNING LAW**. This Release is governed by Ohio law.

[Signature Page to Mutual Release follows on the next page.]

19-40267-jpg    Doc 117    FILED 06/18/19    ENTERED 06/18/19 10:24:41    Page 103 of 104

**PENDER:**

PENDER CAPITAL ASSET BASED LENDING FUND
I, LP, a Delaware limited partnership

By: _____
Name:  Zachary Murphy
Its: _____

**DEBTOR:**

CALIFORNIA PALMS, LLC, an Ohio limited
liability company

By: _____
      Sebastian Rucci
Title:  Manager_____

**GUARANTOR**:

_____
SEBASTIAN RUCCI, INDIVIDUALLY

CALIFORNIA PALMS ADDICTION RECOVERY
CAMPUS, INC., an Ohio corporation

By: _____
      Sebastian Rucci
Title: _____

California Palms, Inc. fka California Palms
Hotel, Inc., an Ohio corporation

By: _____
      Sebastian Rucci
Title: _____

Signature Page to Mutual Release